**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES E. SLAUGHTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. 3:07-cv-366-MHT** |
| | ) | |
| **RONALD W. HILYER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW Lee County, Alabama Sheriff Jay Jones, Chief Jail Administrator Major Cary Torbert, Lieutenant Corey Welch, Dr. John McFarland, and Nurse Linda Stewart, Defendants in the above-styled cause, and submit their Special Report to the Court. Defendants also move for a Dismissal of Plaintiff's Complaint based on the Prison Litigation Reform Act ("PLRA"), Title 42, United States Code § 1997e(c). Should this Court deny Defendants' Motion to Dismiss, Defendants move that this Special Report be treated as a Motion for Summary Judgment, based on Defendants' arguments and the attached documentary evidence and affidavits.

## INTRODUCTION

On April 30, 2007, Plaintiff James E. Slaughter (hereafter "Plaintiff") filed two Complaints against the Defendants. However, the two Complaints were filed on the same date and appear to rest on the same "factual" basis. If there exists a valid claim under Rule 12 of the Federal Rules of Civil Procedure in either, they are certainly not distinct complaints for legal purposes. Therefore, in this Special Report Defendants treat them as one. On May 2, 2007, the Magistrate Judge ordered Defendants to file a Special Report and Answer within forty (40) days of its Order, making them due by June 11, 2007. On June 7, 2007, Defendants requested a thirty

(30) day extension of time to file their Special Report, which was granted the same day, making the Special Report due by July 11, 2007.  Defendant Dr. Ron Hilyer filed his Special Report on June 11, 2007.

Having been charged with resisting arrest and public intoxication, Plaintiff was originally arrested and placed in the Lee County Detention Center on August 13, 2006 and was later released on August 17, 2006.  (Exhibit A, Plaintiff's Booking Documents, "Booking Docs"; Exhibit E, Affidavit of Lieutenant Corey Welch, "Welch aff.," ¶ 2.)  He was booked in at 3:50 a.m. on August 13, 2006, and booked out at 5:17 p.m. on August 17, 2006.  (Ex. A, Booking Docs; Ex. D, Welch aff., ¶ 4.)  Plaintiff was rearrested on September 9, 2006 for public intoxication, resisting arrest, and robbery in the third degree and booked in at 2:16 a.m.  (Ex. A, Booking Docs; Ex. D, Welch aff., ¶ 4.)

## PLAINTIFF'S ALLEGATIONS

Although difficult to make out just what Plaintiff alleges, it appears that he is complaining that while incarcerated at the Lee County Detention Center, he should have received better or more timely medical treatment for a dislocated/broken finger.  He states in his Complaint that he "would like to be justly rewarded for my pain and suffering, both mentally and physically."  (Plaintiff's Complaint, § VI.)  However, Plaintiff makes no constitutional, statutory, or other legally based claims.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants are uncertain as to what federal claim Plaintiff has made against them. Construing Plaintiff's Complaint in the most generous light possible, it appears that he is making a claim for deliberate indifference with respect to medical treatment for his dislocated/broken finger.  If Plaintiff is claiming that he was treated with deliberate indifference with respect to his medical care while incarcerated or any other constitutional or statutory claim, then Defendants

deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Defendants also raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, and additional defenses presented below. (Ex. A, "Booking Docs;" Exhibit B, Lee County Detention Center Policy and Procedure Manual, "Manual," Section 11, "Healthcare Services" & Section 14, "Inmate Requests & Grievances;" Exhibit C, Affidavit of Sheriff Jay Jones, "Jones aff.;" Exhibit D, Affidavit of Administrator Cary Torbert, "Torbert aff.;" Ex. E, "Welch aff.;" Exhibit F, Affidavit of Dr. McFarland, "McFarland aff.;" Exhibit G, Affidavit of Nurse Linda Stewart, "Stewart aff.;" Exhibit H, Affidavit of Kelly Griffith, "Griffith aff.;" Exhibit I, Plaintiff's Jail Medical Records, "Med. Rec.") Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

Based on 42 U.S.C. § 1997e(c), Defendants move this Honorable Court to dismiss Plaintiff's Complaint as frivolous on its face for the following reasons. Plaintiff's Complaint is not only frivolous; it is deceitful. Plaintiff's deceit hides the frivolous nature of his Complaint. In one of Plaintiff's Complaints, he states that after Dr. Hilyer had said that Plaintiff needs another operation, "Nurse Stewart took it upon herself to cancel my appointment." (Plaintiff's Complaint, p. 3, "Ground Two, Supporting Facts.") Plaintiff then stated: "Now there [sic] saying I may not be able to bend or move my finger again." (Plaintiff's Complaint, p. 3, "Ground Three, Supporting Facts.") Nowhere in his Complaint or any other filing with this Court, did Plaintiff mention the fact that he had his second operation on April 20, 2007, ten (10) days before his Complaint was filed with this Court, nor did Plaintiff mention that he has been receiving physical rehabilitation to enable him to use the prosthetic knuckle inserted into his

finger during the second surgery by a licensed Orthopedic Surgeon.  (Ex. I, Med. Rec.; Ex. F,

McFarland aff., ¶ ; Ex. G, Stewart aff., ¶ ; Defendant Dr. Hilyer's Special Report.)

In his Complaint, Plaintiff has implied to this Court that a Nurse working for the Lee

County Detention Center canceled an appointment for a second surgery on his pinky finger, thus

causing him permanent injury.  But for that implication and accusation, Plaintiff's Complaint

would on its face contain no possible claim of a violation of any constitutional, statutory, or

common law right under federal or state law.[1]  Thus, Plaintiff has committed a fraud upon this

Court in order to file a frivolous complaint and should be sanctioned.  Also, the PLRA, 42

U.S.C. § 1997e(c) states:

> (1) *The court shall* on its own motion or *on the motion of a party dismiss* any
> action brought with respect to prison conditions under section 1983 of this title, or
> any other Federal law, by a prisoner confined in any jail, prison, or other
> correctional facility if the court is satisfied that the action is *frivolous*, malicious,
> fails to state a claim upon which relief can be granted, or seeks monetary relief
> from a defendant who is immune from such relief.
>
> (2) *In the event that a claim is, on its face, frivolous,* malicious, fails to state a
> claim upon which relief can be granted, or seeks monetary relief from a defendant
> who is immune from such relief, *the court may dismiss the underlying claim
> without first requiring the exhaustion of administrative remedies.*

42 U.S.C. § 1997e (emphasis added).

Plaintiff has received extensive medical care, totaling more than fifteen thousand dollars,

for an injury sustained before his incarceration and which the Plaintiff himself neglected to have

treated for weeks before he was incarcerated.  (Ex. D, Torbert aff., ¶ 12.)  Contrary to what he

alleges in his Complaint, Plaintiff has received a second operation on his finger.  Plaintiff has

deceived this Court, either intentionally or by allowing a false impression created by his

Complaint to remain without correction, and that deceit has allowed his Complaint to escape

possible dismissal *ex mero motu* by this Court.  Therefore, Defendants, having demonstrated the

---

[1] Even if Plaintiff's Complaint was factually correct, the Complaint contains no accusation of a violation of any law,
state or federal, as pointed out in Defendant Dr. Hilyer's Special Report.

falsity of Plaintiff's Complaint by affidavits and other relevant documents attached to this Special Report, request that this Court dismiss Plaintiff's Complaint as frivolous under the PLRA and issue sanctions against Plaintiff for perpetrating a fraud upon this Court, wasting this Court's time, and wasting the time and resources of the Defendants in this case.

## I.      FACTS

### A.      Policy and Procedure Regarding Medical Treatment

The Lee County Detention Center has policy and procedures governing inmates' and detainees' access to medical care.  (Ex. B, Manual, Section 11, "Health Care Services" and Lee County Detention Center Medical Protocol; "Ex. C, Jones aff., ¶ 4; Ex. D, Torbert aff. ¶ 3; Ex. E, Welch aff. ¶ 4.)   The Center's Manual states:   "It is the policy of the Lee County Sheriff's Department that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotion[al] well-being."  (Ex. B, Manual, Section XI, "Health Care Services," § 11.01.)   The Detention Center's Manual also states:   "Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively."   (Ex. B, Manual, Section XI, "Health Care Services," § 11.01.)  Lee County Detention Center Policy allows Inmates to make verbal or written requests for medical services at any time.

1.      Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services:

a.      Verbal Request:  An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.

b.      Written Request:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.

1.    Requests for medical treatment will be accepted by members of the Detention Center staff at any time.

(Ex. B, Manual, Section XI, "Health Care Services," ¶¶ 1, 2.)

When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request. It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner. Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.

(Ex. B, Manual, Section XI, "Health Care Services," § 11.04, ¶ 3.) Further, the Manual states that "facility staff and medical personnel will consult regarding any disposition of inmates with diagnosed and/or suspected medical problems. . . ." (Ex. B, Medical Services Directive, ¶ 6.)

The Lee County Detention Center employs a full-time nurse, Nurse Stewart, and has contracted with a physician, Dr. McFarland, to provide medical services to inmates. (Ex. E, Welch aff., ¶ 7; Ex. F, McFarland aff., ¶ 1; Ex. G, Stewart aff., ¶¶ 1, 10; Ex. H, Griffith aff., ¶ 1.) If necessary to provide proper treatment to an inmate, the nurses contact a physician, Dr. McFarland, for other than routine care, and Dr. McFarland is responsible for referring an inmate to a specialist if necessary. (Ex. G, Stewart aff., ¶ 10, 16; Ex. F, McFarland aff., ¶ 6.)

B.    **Medical Treatment of Plaintiff**

The main events involving the treatment of the Plaintiff was as follows: In August 2006, Plaintiff was arrested with a finger dislocation/break, for which Plaintiff had not sought medical care and which was several weeks old. (Ex. I, Med. Rec.; Defendant Dr. Hilyer's Special Report) Nurse Griffith referred Plaintiff to Dr. McFarland, who decided that Plaintiff needed an x-ray, which he received and which showed a broken finger. (Ex. I, Med. Rec.) The Lee County Detention Center medical personnel set up an appointment with an Orthopedic physician, Dr. Ronald W. Hilyer, but Plaintiff was released before he could keep that appointment. (Ex. B, Med. Rec.)

Approximately three weeks after his release, Plaintiff was again arrested. (Ex. A, Booking Docs.) During that three-week period between incarcerations, Plaintiff had done nothing to treat his finger or see a medical professional for treatment. (Ex. I, Med. Rec.) The Lee County Detention Center again set up an appointment for Plaintiff to see Dr. Hilyer, who after spending several weeks treating Plaintiff for an E-coli infection in his finger, performed an operation to repair his finger on November 3, 2006. (Ex. I, Med. Rec.) In January 2007, Plaintiff began complaining about the status of his finger and that he needed another x-ray of the finger, and medical personnel at the Detention Center encouraged Plaintiff to continue his rehabilitation exercises to improve his finger's movement. (Ex. I, Med. Rec.) On January 3, 2007, Dr. McFarland noted that contact should be made with Dr. Hilyer's office regarding Plaintiff's finger. (Ex. I, Med. Rec.)

On February 28, 2007, Plaintiff contacted Lee County Detention Center medical staff, saying he may have done something more to injure his right hand; therefore, the staff contacted Dr. Hilyer's office about a follow-up appointment, which Dr. Hilyer's office set for March 14, 2007. (Ex. I, Med. Rec.) The appointment was later changed to March 21, 2007, when Dr. Hilyer saw Plaintiff, evaluated Plaintiff's finger, and determined he needed a second surgery. (Ex. I, Med. Rec.) Records contained in Dr. Hilyer's  Report indicate his office initially thought it could obtain a surgery date of March 30, 2007, but Plaintiff's second surgery did not occur until April 20, 2007. (Dr. Hilyer's Special Report, March 21, 2007 document; "Standard Admission/Pre-Op Orders for Orthopedics" form for East Alabama Medical Center ("EAMC").) The March 30th date was changed because of a conflict in schedule at the Detention Center. (Ex. H, Griffith aff., ¶ 20.) Nurse Griffith noted on April 5, 2007 that Plaintiff's second surgery was rescheduled for April 20, 2007. (Ex. I, Med. Rec.) On April 20, 2007, Dr. Hilyer performed the second surgery, giving Plaintiff a prosthetic knuckle. (Ex. I, Med. Rec.) Since that time,

Plaintiff has been seeing Dr. Hilyer for rehabilitation of his hand. (Ex. I, Med. Rec.) Plaintiff also received pain medication during his treatment and rehabilitation. (Ex. I, Med. Rec.; Ex. H, Griffith aff., ¶ 22; Ex. G, Stewart aff., ¶ 31.) There is no indication in any of the records or affidavits by medical personnel that Plaintiff's second surgery was urgent or that any permanent injury would result from any delay. (Ex. F, McFarland aff., ¶¶ 11, 12.)

Neither Sheriff Jones nor Administrator Torbert nor Lieutenant Welch had any contact with, knowledge of, or participation in Plaintiff's injury or the treatment he received. (Ex. C, Jones aff., ¶ 5; Ex. D, Torbert aff., ¶ 4; Ex. E, Welch aff., ¶ 3.) Sheriff Jones, Administrator Torbert, Lieutenant Welch, Dr. McFarland, Nurse Griffith, and Nurse Stewart ensure that the policy and procedures are followed by Lee County Detention Center personnel and medical personnel, and they have no reason to believe that any such personnel did not follow proper procedures. (Ex. C, Jones aff., ¶ 4; Ex. D, Torbert aff., ¶ 4; Ex. E, Welch aff., ¶ 4; Ex. F, McFarland aff., ¶ 3, 5; Ex. G, Stewart aff., ¶¶ 3-17, 32; Ex. H, Griffith aff., ¶¶ 3-17, 26.) All physician instructions were followed with respect to Plaintiff's medical treatment for his finger. (Ex. C, Jones aff., ¶ 5; Ex. D, Torbert aff., ¶ 6; Ex. E, Welch aff., ¶ 4; Ex. F, McFarland aff., ¶ 3; Ex. G, Stewart aff., ¶ 32; Ex. H, Griffith aff., ¶ 26.) During this entire period of time, Plaintiff was seen by either the lee County Detention Center medical staff or at Dr. Hilyer's office at least once a week regarding his finger, Plaintiff received rehabilitation after each surgery, and Plaintiff received pain medication when needed. (Ex. I, Med. Rec.,; Ex. G, Stewart aff., ¶¶ 26, 28, 29, 31.)

## C.    Grievance Procedure

The Lee County Detention Center has a Grievance Procedure for inmate complaints. (Ex. B, Manual, Section 14, "Inmate Requests and Grievances;" Ex. C, Jones aff., ¶ 6; Ex. D, Torbert aff., ¶ 6; Ex. E, Welch aff., ¶ 6.) The inmate may informally state a Grievance or may

file a written form entitled "INMATE REQUEST FORM." (Ex. B, Manual, Section 14.04, "Inmate Requests and Grievances," ¶¶ B. 1, 2; Ex. E, Welch aff., ¶ 6.) An inmate may turn that form in to any correction officer at the Lowndes County Jail, who signs and notes the time of receipt and date of response on the Request Form. (Ex. B, Manual, Section 14.04, "Inmate Requests and Grievances," ¶ B. 4.) If it is a simple request that a corrections officer can handle, that officer answers the inmate's complaint. (Ex. B, Manual, Section 14.04, "Inmate Requests and Grievances," ¶¶ B. 3, 4; Ex. E, Welch aff., ¶ 6.) A response should be made to the Grievance within 72 hours of receipt, holidays and weekends excluded. (Ex. B, Manual, Section 14.04, "Inmate Requests and Grievances," ¶ B. 5.) If the Grievance is not within that officer's authority or competence, or if the inmate is dissatisfied with the corrections officer's answer, that inmate may appeal the decision to the next higher level of authority in the chain of command of the Center. (Ex. B, Manual, Section 14.04, "Inmate Requests and Grievances," ¶ B. 7; Ex. E, Welch aff., ¶ 6.) "No negative sanction may be taken against any inmate for filing a grievance." (Ex. B, Manual, § 14.04, ¶ B. 9.) Plaintiff did not at any time file any type of Grievance or Complaint with the officers of the Lee County Detention Center or Lieutenant Welch or Major Torbert, the Jail Administrator. (Ex. C, Jones aff., ¶ 6; Ex. E, Welch aff., ¶ 6; Ex. D, Torbert aff., ¶ 6.)

In addition to the frivolous and fraudulent character of Plaintiff's Complaint, Defendants are entitled, based on several other legal principles, to a Dismissal of Plaintiff's Complaint or, at least, a Summary Judgment in their favor.

## II.    LAW

### A.    All Claims By Plaintiff Against Defendant are Due to be Dismissed because Plaintiff Failed to Set Forth a Claim in his Pleading in "a short and plain statement of the claim showing that the pleader is entitled to relief" in Violation of Fed. R. Civ. P. 8, and Plaintiff's Complaint does not meet the heightened pleading standard imposed by Eleventh Circuit precedent.

Under the heightened pleading standard, "the plaintiff must provide a greater degree of factual specificity than is ordinarily necessary under the notice pleading approach of the Federal Rules of Civil Procedure. Hunter v. Dist. of Columbia, 943 F.2d 69, 75 (D.C. Cir. 1991) (citation omitted)."

> "[T]his circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim.  Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims."

Swann v. S. Health Partners, Inc., 388 F.3d 834, 838 (11th Cir. 2004) (citing Laurie v. Ala. Court of Crim. App., 256 F.3d 1266, 1275-76 (11th Cir. 2001), and Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000), for the proposition that "the heightened pleading standard is only applicable in § 1983 suits against individuals for whom qualified immunity is available.").

### 1.    Plaintiff's Complaint Alleges No Constitutional, Statutory, or Common Law Violation of Federal or State law.

Plaintiff's Complaint states that a second surgery scheduled to repair his pinky finger was canceled.  (Plaintiff's Complaint, pp. 2-3.)  Plaintiff alleges no constitutional, statutory, or common law violation of federal or state law.  He did not allege that he filed a Grievance with the Lee County Detention Center, nor did he explain with specificity how Defendants would know that he needed more medical care or what they should have done to provide such care, something that is absolutely essential for a claim of deliberate indifference.  (Plaintiff's Complaint, pp. 2-3.)  Plaintiff does not contend that Defendants were deliberately indifferent to his medical condition, nor does he contend that his injury was so serious that it would be obvious

to the Defendants that he needed more medical care than he was provided. (Plaintiff's Complaint, pp. 2-3.) Nor does he explain how Defendants would have known that their conduct was deliberately indifferent to Plaintiff's condition. (Plaintiff's Complaint, pp. 2-3.)

The Plaintiff's allegations plainly illustrate the reason that the heightened pleading standard demands that a plaintiff set out his contentions as specifically as possible when qualified immunity is asserted, which all Defendants assert, infra. See GJR Investments, Inc., 132 F.3d at 1368 ("Some factual detail in the pleadings is necessary to the adjudication of [federal] claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right."); Gonzalez, 325 F.3d at 1235 ("The complaint must allege the relevant facts 'with some specificity.'"). In discussing the heightened pleading standard, the Eleventh Circuit has condemned pleadings in which the plaintiff uses "broad pejorative words to describe the defendants' intentions without giving any specifics." Id. at 1368.

At the motion to dismiss stage, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined….If a plaintiff has not sufficiently alleged a violation of *any* constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right." Id. at 1366-67. Regardless of which pleading standard is used to analyze the Plaintiff's claim, federal or Alabama, the result is the same: a failure to state a claim upon which relief may be granted. See Warden v. Thigpen, 563 So. 2d 1021, 1022 (Ala. 1990) (affirming dismissal of *pro se* inmate's complaint where inmate did not state a cause of action, "even under our liberal pleading standards"). The Plaintiff's allegation is particularly deficient, however, under the heightened pleading standard applicable to cases involving qualified immunity. Id. at 1368 ("Accordingly, when reviewing a district court's disposition of a motion to dismiss a…claim on qualified immunity grounds, we are guided both by the regular 12(b)(6)

11

standard and by the heightened pleading requirement.").  Consequently, this allegation fails to satisfy the heightened pleading standard and is due to be dismissed; alternatively, Defendants, Jones, Torbert, Welch, McFarland, and Stewart, are entitled to qualified immunity as the Plaintiff has failed to state a constitutional violation or demonstrate that his rights were "clearly established."

2.  **Plaintiff's failure to Exhaust all Administrative Remedies does not comply with the Prison Litigation Reform Act and bars the Complaint.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  Plaintiff did not pursue the Grievance Procedure at all.  (Ex. E, Welch aff., ¶ 6.)  Even if Plaintiff had fulfilled the requirement as to all the steps in the grievance procedure provided at the Lowndes County Jail and been denied relief, it was incumbent upon Plaintiff to proceed further with the State Board of Adjustment procedure.  Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.  The State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.  A claimant "shall have the right to file and prosecute his claim before the board in person or by counsel or agent of his own choice, whether such agent be licensed to practice law or not." Ala. Code § 41-9-63.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies), and on that basis alone, these Defendants are entitled to have Plaintiff's claims against them dismissed.

**B.     All Claims by the Plaintiff against the Corrections Officer Defendants[2] in their Official Capacities must fail based on Eleventh Amendment Immunity and because they are not "persons" under 42 U.S.C.A. § 1983.**

The Plaintiff has not stated in his Complaint whether his claims against these Defendants are in their official capacity or individual capacity.  Therefore, out of an abundance of caution, these Defendants analyze the Plaintiff's claims in light of both individual and official capacities.

The Plaintiff's claims against these Defendants in their official capacity are due to be dismissed for lack of subject matter jurisdiction, as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419,

---

[2] This Special Report is filed on behalf of Sheriff Jones, Major Torbert, Lieutenant Welch, Dr. McFarland, and Nurse Stewart.  Any reference in this Special Report to corrections officer defendants or the defendants necessarily includes Dr. McFarland and Nurse Stewart because Dr. McFarland was acting under contract on behalf of the Lee County Detention Center and Nurse Stewart is is a full-time employee of the lee County Detention Center.  Such medical professionals act under color of state law, when performing their duties for a corrections facility.  See West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250 (1988) (physician under contract with state to provide medical services to inmates at state prison hospital on part-time basis acted under color of state law within meaning of § 1983, and when he treated inmate, it was fairly attributable to state); Gary v. Modena, 2006 WL 3741364, *4 (11th Cir. 2006) (unpublished opinion) (whether an independent contractor such as a prison physician has acted under color of law for the purposes of § 1983 liability depends on the medical provider's function within the state system rather than the precise details of his employment status); Carswell v. Bay County, 854 F.2d 454, 457 (11th Cir. 1988) (function of physicians while working for the state, not the amount of time the physicians spend in performance of their duties or the fact that they may be employed by others to perform similar duties, . . . determines whether they are acting under color of state law").  If specific Defendants are being referenced in this Special Report, they will be named specifically; otherwise, all five defendants are the intended reference of the word "Defendants."

1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Sheriff Jones, Major Torbert, or Lieutenant Welch in their official capacity should therefore be dismissed because they are not "persons" under § 1983; therefore, claims against them in their official capacity fail to state a claim upon which relief can be granted.  Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n. 3 (11th Cir. 1990).  A nurse or doctor employed by a correctional institution is also entitled to Eleventh Amendment immunity.  Felder v. Puetzer, 1999 WL 569006, *2 (7th Cir. 1999) (affirming district court holding that "Eleventh Amendment barred Mr. Felder's suit against Nurse Puetzer in her official capacity").  See also Biggs v. Meadows, 66 F.3d 56 (4th Cir. 1995) (holding that Eleventh Amendment immunity would have applied to defendant nurse if sued in official capacity); Moreida v. Heibel, 2007 WL 1456007, *5 (S.D. Tex. 2007) (holding that "[t]o the extent plaintiff is suing [prison] Nurse Heibel in her official capacity for money damages, those claims are barred by the Eleventh Amendment"); Rainey v. Herrera, 2006 WL 3694509, *5 (S.D. Tex.  2006) (for same reason as in Moreida, claims against prison doctor and nurse barred by Eleventh Amendment); Ortiz v. Reed, 2006 WL 1626617, *1 (M.D. Pa. 2006) ("claims against the Defendants [including prison nurse] in their official capacities were deemed to be barred by the Eleventh Amendment"); Miner v. New York State Dept. of Health, 2004 WL 1152491, *3 (S.D. N.Y. 2004) (holding that state prison doctor and nurse "have Eleventh

Amendment immunity to the extent that they are being sued in their official capacities because such suits are barred by the Eleventh Amendment").

The status of Dr. McFarland, a contract physician is somewhat different from that of the other Defendants, but his work for the Lee County Detention Center indicates he also is entitled to immunity. West, supra. Dr. McFarland has contracted with the Lee County Detention Center, and based on that contract, he supplies the need for a physician to accomplish referrals of inmates to specialists, when the nurses employed by the Lee County Detention Center are unable to treat an inmate. (Ex. F, McFarland aff., ¶¶ 1-3.) Dr. McFarland is also authorized to treat inmates but only to the extent of his medical competence. Therefore, his contracted-for work with the Lee County Detention Center was under color of state law, and he also is entitled to immunity. Id.

Also, Plaintiff has not alleged that Dr. McFarland had any supervisory responsibility for the actions of the nurses working fulltime for the Lee County Detention Center or for the policies thereof, and even if he had, such an allegation could not subject Dr. McFarland, as a doctor under contract with the Detention Center, to any further liability. Dr. McFarland was a referral physician, not the supervisor of the nurses at the Lee County Detention Center. And to properly allege and prove supervisory liability for a detention center's policies regarding medical care on the part of a contract physician, a plaintiff must "show that [the contractor] had final authority to establish the policy or custom in question." Gary, supra at *9, citing Manor Health Care Corp. v. Lomelo, 929 F.2d 633, 637 (11th Cir. 1991). (Ex. B, Manual, Section 11, "Healthcare Services.")

Therefore, the above principles apply in the case of Dr. McFarland and Nurse Stewart also. The Plaintiff's official capacity claims are due to be dismissed for lack of subject matter jurisdiction. By virtue of their positions, Nurse Stewart and Dr. McFarland are executive officers

of the State of Alabama.  See art. V, § 112 of the Alabama Constitution of 1901; see also

McMillian v. Monroe County, 520 U.S. 781 (1997) (holding that an Alabama sheriff represents

the State of Alabama when executing law enforcement duties); Carr v. City of Florence, 916

F.2d 1521, 1525-26 (11th Cir. 1990) (holding that Alabama deputy sheriffs are legally extensions

of their sheriffs and are likewise considered officers of the State of Alabama); Hereford, 586 So.

2d at 210 (finding that deputy sheriffs enjoy immunity from suit as an extension of sheriff's

immunity).  Therefore, a suit against Nurse Stewart in her official capacity and Dr. McFarland in

his official capacity is a suit against the State of Alabama.  See Hafer v. Melo, 502 U.S. 21, 25

(1991); Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1997); see also Kentucky

v. Graham, 473 U.S. 159, 165-66 (1985).

Because this suit is, in effect, a suit against the State of Alabama, the Plaintiff's claims

against the above two medical professionals working for the Lee County Detention Center are

also barred by the Eleventh Amendment to the United States Constitution.  See Free, supra at

1557; Dean v. Barber, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992); Carr, supra at 1525 (citing

Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) and upholding the proposition that a

deputy sued in his official capacity is entitled to Eleventh Amendment immunity).  Thus, this

Court lacks subject matter jurisdiction over the Plaintiff's official capacity claims.

C.     **Plaintiff has failed to allege any personal involvement by Sheriff Jones, Administrator Torbert, or Lieutenant Welch in the allegations against them; therefore, those Three Defendants have not been sued under 42 U.S.C. § 1983 in their individual capacities.**

In order to present a cognizable claim against a public official in his individual capacity, the

language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the

actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51

F.3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal

participation of the defendant, a policy established by the defendant resulting in indifference to

16

constitutional rights, or a breach of a duty imposed by state or local law which results in constitutional injury. <u>Zatler v. Wainwright</u>, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has alleged no actions in which these three Defendants were personally involved with respect to the alleged lack of adequate medical treatment; therefore, he has made a claim against them only for acts committed by them in their official capacity. <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990). For the Sheriff and these Corrections Officers to face liability as defendants in a § 1983 action, Plaintiff must allege actions against them in their personal, not their official, capacity. Plaintiff has offered no allegation demonstrating that these Defendants were in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts – in fact, the Complaint is completely devoid of any allegation of personal involvement or even knowledge of the various conditions complained of on the part of these three Defendants – to show that they personally participated in the claims made the basis of the Plaintiff's Complaint, nor does the Plaintiff allege specifically how these three Defendants violated his constitutional rights. As such and on this basis alone, Plaintiff's claims against these three Defendants are due to be dismissed.

Plaintiff must show a causal connection between the Defendants and the alleged deprivation but may not do so using "respondeat superior." <u>Brown</u>, <u>supra</u>, at 671. To the extent that Plaintiff's claim against these three Defendants is an attempt to hold them liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

17

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).  There are no facts that show a causal connection between any action or inaction by these three Defendants and the alleged constitutional violations.  Therefore, Plaintiff's claims against these three Defendants are due to be dismissed.

Plaintiff may still show a causal connection between the alleged deprivation, even when there exists no personal involvement by a supervising official, like a sheriff or administrator of a corrections facility, but the abuse "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Brown, supra, at 671.  Not only does the Plaintiff not allege that these three Defendants knew about the injury to his finger, Plaintiff also does not explain any other incidents of treatment or non-treatment to Plaintiff or any other inmate that they knew about or should have known about, nor does he allege that his injury or any indifference to Plaintiff or any other inmate was so obvious and blatant that these three Defendants should have known about it.  Therefore, Plaintiff has failed to show a causal connection and resulting cognizable injury based on these Defendants' supervision of the Lee County Detention Center. In their affidavits, the Defendants deny that they had any personal involvement with the Plaintiff or any of the actions that form a part of the claims in his Complaint.  (Ex. C, Jones aff., ¶ 3; Ex. D, Torbert aff., ¶ 2; Ex. E, Welch aff., ¶ 3.)  Because Plaintiff has failed to causally connect any of these Defendants to a constitutional injury that forms the basis for the Complaint and has failed to show a causal connection between these Defendants' actions and any of the treatment or alleged non-treatment of Plaintiff's finger, Plaintiff has only sued them in their official capacity. Defendants have previously shown that they are entitled to Eleventh Amendment immunity based on a § 1983 action against them in their official capacities.  Therefore, even if Plaintiff's Complaint was adequate, which it is not, these Defendants are still entitled to judgment on the Complaint.

**1.     Except in cases of emergencies that are obvious even to laypersons, medical professionals, not the Sheriff and his Deputies, are to make decisions regarding medical treatment for inmates.**

With respect to the medical claims by Plaintiff, he has alleged no facts showing that Sheriff Jones, Major Torbert, or Lieutenant Welch had any type of personal involvement or that they set any type of policy that would encourage poor medical treatment or that they neglected any obvious and flagrant abuses which occurred. Any claim by Plaintiff regarding medical care fails against the Sheriff and the Corrections Officers because the Lee County Detention Center Manual requires that professional medical personnel provide care to detainees and inmates. (Ex. B, Manual, "Healthcare Services," ¶ 1.) Plaintiff has failed to allege any specific failing on the part of any corrections officer at the Lee County Detention Center for any medical treatment or non-treatment of his pinky finger. Therefore, Plaintiff's Complaint should be dismissed.

Even if Plaintiff could show some type of personal involvement by or jail policy set by Sheriff Jones, Administrator Torbert, or Lieutenant Welch that caused or contributed to the non-treatment of Plaintiff's injury or condition, in order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

<u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence.").  Furthermore, the Eleventh Circuit requires four things for a viable claim for denial of medical care.

> As we have held, to make out a case for denial of medical care in violation of the Eighth Amendment, requires four things: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11th Cir. 2000). Mere negligence or medical malpractice is insufficient to prove a constitutional violation.  <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991).  "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." <u>Id.</u>

<u>Hilton v. McHugh</u>, 178 Fed. Appx. 866, 871, unpub'd (11th Cir. 2006).  Therefore, where the Plaintiff has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown.  <u>Id.</u>; <u>see also</u> <u>Beamon v. Georgia</u>, 2007 WL 842053, *2, slip op. (S.D. Ga. 2007) ("a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment").

As explained above, an inmate does not have a right to a ***specific*** kind of treatment.  <u>City of Revere v. Mass. Gen'l Hosp.</u>, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff.  "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." <u>Beamon</u>, <u>supra</u>, 2007 WL 842053 at *2, quoting <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985); <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care,

courts hesitate to find an Eighth Amendment violation"); Hamm, supra at 1575 (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

Based on the attached affidavits, more than once Plaintiff neglected the care of his own dislocated/broken finger for weeks at a time, but upon incarceration demanded the Lee County Detention Center repair his finger to his specifications. (Ex. I, Med. Rec.; Ex. F, McFarland aff., ¶¶ 11; Ex. G, Stewart aff., ¶¶ 21, 22.) Plaintiff also was reluctant to follow instructions for rehabilitation after his first surgery. (Ex. F, McFarland aff., ¶ 11, 12.) Plaintiff claims that his second surgery was canceled. (Plaintiff's Complaint, p. 3.) But it was not; at most, it was rescheduled for three weeks later, and that rescheduling did not affect the outcome of the surgery or cause any permanent damage to Plaintiff's pinky finger. (Ex. I, Med. Rec.; Ex. F, McFarland aff., ¶ 11, 12; Ex. G, Stewart aff., ¶¶ 18-20; Ex H, Griffith aff., ¶¶ 18-21.)

Furthermore, the Defendant Corrections Officers do not have any kind of medical education, training or experience, nor should such education or training be required of a sheriff and his corrections officers. Sheriff Jones and his staff must rely upon the professional judgment of medical professionals who have been retained to provide care to injured inmates and detainees. It is the stated policy of the Lee County Detention Center. (Ex. B, Manual, Section 11, "Healthcare Services.") Similarly, Nurse Stewart had to rely upon the instructions of Dr. McFarland and Dr. Hilyer. While Nurse Stewart, Nurse Griffith, and Dr. McFarland have far more medical training and experience than the other Defendants, they were still required to

follow the instructions of a specialist like Dr. Hilyer. When the Plaintiff informed her of his condition, Nurse Stewart immediately got the Plaintiff to Dr. McFarland, who referred Plaintiff to Dr. Hilyer. Nurse Stewart and Nurse Griffith ensured that Plaintiff's prescriptions were filled, ensured that the Plaintiff was given his medications in accordance with Dr. Hilyer's instructions, contacted Dr. McFarland or Dr. Hilyer when necessary and instructed Plaintiff as to his rehabilitation.

Under these undisputed facts, Dr. McFarland and Nurse Stewart were anything but indifferent to the Plaintiff's condition. Even if Dr. McFarland and Nurse Stewart could somehow be construed as acting negligently in any aspect of the actions they took, such negligence does not amount to a constitutional violation. Estelle, 429 U.S. at 105-06. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106.

The evidence shows that Plaintiff was treated by medical professionals, nurses and doctors, to determine the seriousness of Plaintiff's injury to his finger and the proper treatment. Even if they had had some personal involvement with the treatment of Plaintiff's finger, Defendants, Sheriff Jones, Major Torbert, and Lieutenant Welch, who are not trained and licensed as medical providers, are in no way responsible for second-guessing the judgments of trained medical professionals, like doctors and nurses. In fact, Defendant medical professionals, Dr. McFarland and Nurse Stewart, are not trained or licensed as Orthopedic Specialists and had to rely upon the instructions and treatment performed by Dr. Hilyer, an Orthopedic Surgeon. They did so, and they should not be sued for doing so. The employees of Sheriff Jones relied upon the opinion of medical professionals in all that they did in Plaintiff's case. Therefore, Defendants are entitled to qualified immunity from Plaintiff's medical care claims. Hilton v. McHugh, 178 Fed. Appx. 866, n.1 (11th Cir. 2006) (dismissing complaint involving medical

care claim against warden); Taylor v. Adams, 221 F.3d 1254, 1256 (11th Cir. 2000) (holding that summary judgment was appropriate in deliberate indifference claim against Sheriff because status as a state officer entitled sheriff to Eleventh Amendment Immunity).

> **2.      Plaintiff has failed to allege that he has suffered a serious injury sufficient to satisfy the requirements for an Eighth or Fourteenth Amendment Claim of Deliberate Indifference.**

As discussed in Hudson, supra, a serious medical need is one that a physician has prescribed as mandating medical care. However, it is questionable whether a dislocated pinky finger is in fact a "serious" medical need because "the medical need must be 'one that, if left unattended, "pos[es] a substantial risk of serious harm."'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003), quoting Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (alteration in original), quoting Farmer, supra, 511 U.S. at 834. The only entity that sought treatment for Plaintiff's finger in the last ten months has been the Lee County Detention Center. Plaintiff himself did not consider his finger injury serious enough to seek treatment for it when he was not incarcerated – twice. Therefore, it would be difficult for Plaintiff to argue that his finger injury was serious or that the Lee County Detention Center treated his finger inadequately after two surgeries, rehabilitation, and the other treatment he has received. From the time of Plaintiff's incarceration in August until now, the Lee County Detention Center has spent more than $15,000.00 for Plaintiff's treatment. (Ex. D, Torbert aff., ¶ 7.)

> **D.      Defendants are Entitled to Qualified Immunity and Plaintiff's Claims are Due to be Denied Because the Defendants did not Violate a Constitutional Right Belonging to the Plaintiff, nor was there Pre-existing "*Clearly Established* Law."**

As explained above, Defendant Jones, as Sheriff of Lee County, and Defendants, Administrator Torbert, Lieutenant Welch, Dr. McFarland, and Nurse Stewart, as employees of the Sheriff at the Lee County Detention Center are entitled to immunity for acts performed in the

line and scope of their employment.  Free, supra; Carr, supra; Lancaster, supra.  The Complaint

contains no allegation by the Plaintiff that any Defendant was acting outside the line and scope

of his or her employment.  (Plaintiff's Complaint.)

Because all these Defendants are entitled to qualified immunity, Plaintiff must meet two

prongs in order to satisfy the Eleventh Circuit's standard for determining whether Plaintiff has

made out a claim sufficient to overcome the qualified immunity to which Sheriff Jones, Major

Torbert, Lieutenant Welch, Dr. McFarland, and Nurse Stewart are entitled.

### 1.   Plaintiff's Claims are Due to be Denied Because he has not Stated a Constitutional Violation within his Complaint Sufficient to Overcome Defendants' Entitlement to Qualified Immunity.

Based on U.S. Supreme Court precedent, the Eleventh Circuit has stated a two-part

inquiry in determining whether a Plaintiff has overcome the qualified immunity to which a

public official is entitled in the face of a § 1983 claim.

> The defendants having established their eligibility for qualified immunity, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. Lee[ v. Ferraro,] 284 F.3d [1188,] at 1194 [(11th Cir. 2002)]. This next step consists of a two-part inquiry, set forth in Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *First we ask, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' Id. If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete.* However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine 'whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law.' Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir. 2004) (citing Saucier, 533 U.S. at 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272).

Harris v. Coweta County, Ga.,406 F.3d 1307, 1312-13 (11th Cir. 2005), (emphasis added).  Even

assuming that Plaintiff's allegations are true, he has not demonstrated in those allegations that he

was actually denied any appropriate medical treatment while at the Lee County Detention Center

– quite the opposite.  In fact, the evidence from Plaintiff's medical records illustrate that once the

Lee County Detention Center knew about Plaintiff's finger, obtained x-rays, and scheduled Plaintiff for an appointment with an Orthopedic Surgeon.  After Plaintiff returned to the Detention Center and still had done nothing to treat his finger, the Detention Center again scheduled an appointment with an Orthopedic Surgeon, who not only scheduled Plaintiff for an operation but also treated the infection that he had in his finger.  After going through a period of rehabilitation, Plaintiff again complained about the condition of his finger, and Dr. Hilyer scheduled him for a second surgery.  The only actual allegation in Plaintiff's Complaint is that Nurse Stewart canceled the appointment for his second surgery, but Nurse Stewart denies that she did such.  In any event, Plaintiff had his second surgery, merely a little later than he had originally expected.

Plaintiff's condition was not an emergency, and his opinion as to the appropriate date for a second surgery on his finger is a mere disagreement with the opinion of the professional medical providers, which does not establish any type of deliberate indifference.  Therefore, there was no action or inaction by the Defendants that thereby denied Plaintiff "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Based on Plaintiff's Complaint and the affidavits, jail and medical records, and the Detention Center Manual issued by Sheriff Jones and Major Torbert, Plaintiff's finger was adequately treated by professional medical personnel, inside and outside the Detention Center.  Such a complaint is not an adequate basis for a constitutional challenge.  Therefore, none of these Defendants, Sheriff Jones, Major Torbert, Lieutenant Welch, Dr. McFarland, or Nurse Stewart, violated any constitutional right of the Plaintiff and are entitled to have Plaintiff's claim against them dismissed.

**2.     Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Even if Plaintiff had met his burden with respect to the first prong, he still has not met his burden under the second prong of the analysis required for overcoming a public official's qualified immunity.  Public officials are protected in their individual capacities by qualified immunity as long as "a reasonable officer could have believed [his actions] to be lawful, in light of *clearly established law* and the information [that the officer] possessed."  Anderson v. Creighton, 483 U.S. 635, 636 (1987) (emphasis added).  The Eleventh Circuit Court of Appeals has observed "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*."  Lassiter v. Ala. A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).

The Eleventh Circuit has divided consideration of qualified immunity into two "prongs" of analysis as articulated in Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983).

> First, "the defendant government official must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"  Sammons v. Taylor, 967 F.2d 1533, 1539 (11th Cir. 1992) (quoting Zeigler, 716 F.2d at 849).  "[T]hen the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law."  Id. (quoting Zeigler, 716 F.2d at 849).

Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994).  Once it is established that the Plaintiff has stated a claim and that the Defendant was acting within his discretionary authority, the Court then considers whether the contours of the constitutional right allegedly violated were "clearly established."  In making this assessment, the reviewing court must examine the state of law *at the time the alleged deprivation occurred*.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994); Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1578 (11th Cir. 1992)

(Edmondson, J., dissenting), rev'd and reasoning of original dissent adopted, 998 F.2d 923 (11th Cir. 1993) (en banc).

The Plaintiff must show that clearly established law provided all these Defendants with fair warning that their conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The law must be relatively "fact specific" and "so particularized" that it would have been obvious or "apparent" to the defendant that his actions were unlawful. See Rodgers, 39 F.3d at 311; Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994) (both reversing denial of qualified immunity). As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show that a right is clearly established. . . . '[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1992)). While the facts of prior cases establishing the law in a particular context need

not be identical, "the salient question that the Court of Appeals ought to have asked is whether the state of the law in 1995 gave respondents fair warning that their alleged treatment of [Plaintiff] was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002). This case law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000) (quoting Lassiter, at 28 F.3d 1150).

It was difficult to decide just what type of injury or denial of medical treatment to search for amongst the cases that might provide clearly established law to these Defendants. The only treatment that Plaintiff alleges that he was denied was the second surgery, which, in fact, occurred ten days before he filed his Complaint. Defendants would contend that there is no precedent indicating that the steps taken by the Lee County Detention Center – obtaining x-rays of Plaintiff's finger, orthopedic surgery by an expert Orthopedic Surgeon, rehabilitation, a second orthopedic operation by an expert Orthopedic Surgeon, and accompanying rehabilitation – were somehow unconstitutional or put Defendants on notice that their actions were obviously unlawful.

If Plaintiff is contending that delay of medical treatment for his finger constituted deliberate indifference, then he has not met that burden because Plaintiff received regular, at least weekly, treatment and rehabilitation from both Dr. Hilyer and the Lee County Detention Center staff. "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." Ciccone v. Sapp, 2007 WL 1841079, *2 (11th Cir. 2007). See also Farrow v. West, 320 F.3d 1235 (11th Cir. 2003) (holding

that defendants' 15-month delay in providing dentures to inmate and nurse telling others to not treat inmate because of his complaints constituted deliberate indifference); Wellman v. Faulkner, 715 F.2d 269, 274 (7th Cir. 1983) (holding there was evidence of deliberate indifference when inmate died because five hours passed from time that inmate went into obvious cardiovascular shock and the time he was finally taken to the hospital); Aldridge v. Montgomery, 753 F.2d 970, 972 (11th Cir. 1985) (holding that deliberate indifference was evident when for two and a half hours prison officials ignored inmate's two and a half inch long bleeding cut, which eventually required six stitches).

Plaintiff's medical need was not an emergency, and there was no purposeful delay in obtaining the second surgery. Whether his second surgery was on March 30th or April 20th made no difference to the ultimate outcome or prognosis. Also, any discomfort that Plaintiff experienced was due to the rehabilitation he had to endure, which would have been uncomfortable whether he received a second surgery or not. At most, there existed a difference of opinion regarding what course of treatment to follow – rehabilitation versus x-rays and the like. However, such determinations are for medical professionals to make, not the inmate, and courts also will not step in to substitute their judgment of proper medical procedure for that of physicians and other licensed medical personnel like nurses. See Beamon, supra; Waldrop, supra; Hamm, supra; and Westlake, supra.

In the case of the Plaintiff's Complaint, all the corrections staff were receptive to all requests of Plaintiff for medical care, they contacted a physician regarding matters they were unable to handle, they gave Plaintiff his prescribed pain medication when he needed it, and they transferred him to appointments with an Orthopedic Surgeon and for surgery to the EAMC. Dr. McFarland also assisted Plaintiff with his rehabilitation and referred Plaintiff to Dr. Hilyer for

specialized orthopedic care. There is no basis, either factually or legally, to any potential claim by Plaintiff that he was denied medical care or that it was unduly delayed.

Qualified immunity recognizes the need for public officials to be immune not only from liability but from the litigation process itself. The Eleventh Circuit began applying the heightened pleading standard in qualified immunity cases against government officials "to weed out nonmeritorious claims." See <u>GJR Inv., Inc. v. County of Escambia</u>, 132 F.3d 1359, 1367 (11th Cir. 1998). The evidence clearly shows that these Defendants have not violated a constitutional right of the Plaintiff. However, even if any of their actions or inactions acts could be construed as violating a right of the Plaintiff, these Defendants have done nothing to cross any bright line of clearly established constitutional law. Therefore, they are entitled to qualified immunity.

### E.    Based on Plaintiff's Complaint, and the facts and law governing this case, no Defendant, including Dr. McFarland, was deliberately indifferent to Plaintiff's medical condition

Plaintiff received abundant, regular, and adequate treatment for his finger from the Lee County Detention Center medical staff, including Dr. McFarland. As explained above, <u>Beamon v. Georgia</u>, 2007 WL 842053, *2, slip op. (S.D. Ga. 2007) ("a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment"). An inmate does not have a right to a *specific* kind of treatment. <u>City of Revere v. Mass. Gen'l Hosp.</u>, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. "Where a prisoner has received . . . medical attention and the dispute is over the

adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." Beamon, supra, 2007 WL 842053 at *2, quoting Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

Dr. McFarland treated Plaintiff when referred to him by the Lee County Detention Center nursing staff. Dr. McFarland considered Plaintiff's efforts at rehabilitation to be half-hearted at best. (Ex. F, McFarland aff., ¶ 13.) When Plaintiff needed a specialist, specifically an Orthopedic Surgeon, Dr. McFarland referred him to Dr. Hilyer, and Dr. McFarland did so both before and after Plaintiff's first surgery. (Ex. F, McFarland aff., ¶ 3.) Because Plaintiff's finger bone would have mended rather quickly after the first surgery, there was no urgency to provide a second surgery, and Dr. McFarland's determination that Plaintiff should continue his rehabilitation did not cause any permanent injury by delaying a second surgery. (Ex. F, McFarland aff., ¶¶ 11, 12.) Also, any decision as to whether Plaintiff needed a second surgery would have been one for the Orthopedic Specialist to make, not Dr. McFarland. (Ex. F, McFarland aff., ¶ 12.)

As shown by abundant precedent, discussed supra, "deliberate indifference," requires proof of two things by Dr. McFarland – indifference and that such indifference was "intentional." When a medical professional has actually provided treatment to an inmate, it is difficult to prove that the medical professional was deliberately indifferent based on a difference of opinion as to that treatment. See Beamon, City of Revere, Hamm, and Westlake, supra. Although Plaintiff may have had a difference of opinion with Dr. McFarland about his treatment, e.g., whether he should have another x-ray soon after his first surgery and whether he required something more than rehabilitation, that disagreement is insufficient to prove deliberate indifference on the part of a medical professional like Dr. McFarland.

31

F.     **Summary Judgment Standard**

On a motion for summary judgment, the Court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[3]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc), quoting Mass. Sch. of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

III.     **CONCLUSION**

Defendants deny each and every allegation, if any, made by Plaintiff Slaughter in the Complaint.  Defendants have not acted in a manner so as to deprive the Plaintiff of any right to which he is entitled.  More importantly, the complaint is a fraud on the Court, and if it had stated the relevant facts, specifically the fact that Plaintiff has had a second surgery, the Complaint would be frivolous on its face.  Therefore, under the PLRA, the Complaint should be dismissed.  Otherwise, the PLRA bars Plaintiff's Complaint because it is not specific or clear enough to meet

---

[3] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

the requirements of the federal rules, he filed no Grievance with the Lee County Detention Center, he filed no claim with the State Board of Adjustment, and Plaintiff has not suffered a serious injury.  But, if the Plaintiff was able somehow to get past those arguments for dismissal by Defendants, then there are several bases for this Court to grant Summary Judgment to Defendants, particularly immunity.  Defendants are entitled to Eleventh Amendment Immunity and Qualified Immunity, and based on the Plaintiff's Complaint, the law in existence at the time of Plaintiff's injury, and the facts presented by Defendants, it is impossible for Plaintiff to overcome that immunity.

## IV.    MOTION TO DISMISS

Defendants respectfully request that this Honorable Court treat this Special Report as a Motion to Dismiss, and grant unto them the same.  In the alternative, should this Court deny Defendants' Motion to Dismiss, Defendants are entitled to Summary Judgment in their favor.

Respectfully submitted this the 11th day of July 2007.

<div style="margin-left:40%">

**s/Daryl L. Masters**
DARYL L. MASTERS, Bar No. MAS018
WINTHROP E. JOHNSON, Bar No. JOH086
Attorneys for Defendants Sheriff Jones, Administrator Torbert, Lieutenant Welch, Dr. McFarland, and Nurse Stewart
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  wjohnson@webbeley.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this the **11th day of July, 2007**, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Emily C. Marks and E. Ham Wilson, Jr., Attorneys for Defendant Dr. Hilyer**

I also hereby certify that on the **11th day of July, 2007** I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

**James E. Slaughter**
**Lee County Detention Center**
**P.O. Box 2407**
**Opelika, AL  36801**

<div align="center">

**s/Daryl L. Masters**
OF COUNSEL

</div>

# EXHIBIT  A

## BOOKING DOCUMENTS

```
                      LEE COUNTY SHERIFF'S OFFICE
09/09/2006    02:26:34          INMATE BOOKING SHEET                      PAGE   1
=================================================================================
BOOKING NO: 060004318

INMATE NAME: SLAUGHTER JAMES EVERETT
        ALIAS:                               RACE: B       SEX: M
        ALIAS:                                 HT: 5'11"  HAIR: BLK
      ADDRESS: 964 HOLMES AVE                  WT: 160    EYES: BRO
  CITY/ST/ZIP: AUBURN, AL 36830           COMPLEX:
   HOME PHONE: 334-502-3066                   SSN: 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
          DOB: 10/06/1963   AGE:  42        DL ST:         DLN:
   PLCE BIRTH: TUSKEGEE                        SID:
        STATE: AL                            LOCID: 32147
    M. STATUS:
     RELIGION: BAPT
    GANG ASSOC: N/A
SCARS/TATTOOS: SCAR ON NOSE
KNOWN ENEMIES: N/A
      REMARKS:
----------------------------- NEXT OF KIN -----------------------------
  NEXT OF KIN: BELINDA WALKER          RELATIONSHIP:
      ADDRESS: 964 HOLMES AVE                  PHONE: 334-502-3066
  CITY/ST/ZIP: AUBURN, AL 36830
      REMARKS:
----------------------------- EMPLOYER INFO -----------------------------
     EMPLOYED: Y
EMPLOYER NAME: MIKE CONST
      ADDRESS:
  CITY/ST/ZIP: OPELIKA, AL
        PHONE: 000-000-0000
----------------------------- MEDICAL -----------------------------
   HANDICAPPED: N   NEEDS:
       GLASSES: N   SMOKE: Y
 MEDICAL NEEDS: N   NEEDS:
     PHYSICIAN:                      PHONE: 000-000-0000
       REMARKS:

       REMARKS:
       REMARKS:
----------------------------- PROPERTY -----------------------------
         CASH:        $00.00
  DESCRIPTION:
ADD. PROPERTY: 1 BELT
ADD. PROPERTY:
ADD. PROPERTY:
   BIN NUMBER: 360
VEH IMPOUNDED:
  IMPOUND LOT:
      REMARKS:
      REMARKS:
=================================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE: _____  DATE: _____   TIME: _____

BOOK OFFICER: _____  DATE: _____   TIME: _____
```



LEE COUNTY SHERIFF'S OFFICE
MEDICAL SCREENING FORM                                    PAGE 2

09/09/2006    02:26:34
========================================================================
Booking No: 060004318  Date: 09/09/2006  Time: 02:16  Type: NORMAL
Agency to Bill: AUBURN PD                    Facility: COUNTY JAIL

Inmate Name: SLAUGHTER JAMES EVERETT              Race: B        Sex: M
    DOB: 10/06/1963 Age:  42  SSN: 234 66 6973  Height: 5'11"  Weight: 160
------------------------------------------------------------------------

_____  13.  Have you recently been hospitalized or treated by a doctor?

_____  14.  Do you currently take any non-prescription medication or medication
             prescribed by a doctor?

_____  15.  Are you allergic to any medication?

_____  16.  Do you have any handicaps or conditions that limit activity?

_____  17.  Have you ever attempted suicide or are you thinking about it now?

_____  18.  Do you regularly use alcohol or street drugs?

_____  19.  Do you have any problems when you stop drinking or using drugs?

_____  20.  Do you have a special diet prescribed by a physician?

_____  21.  Do you have any problems or pain with your teeth?

_____  22.  Do you have any other medical problems we should know about?

_____

_____

_____

_____

_____

_____

_____

I HAVE READ THE ABOVE ACCOUNTING OF MY MEDICAL ASSESSMENT AND I FIND IT TO BE
TRUE AND ACCURATE.

INMATE: _____  DATE:_____  TIME:_____

BOOK OFFICER:  Ofc. Tucker 040          DATE:_____  TIME:_____

```
                         LEE COUNTY SHERIFF'S OFFICE
 09/09/2006     02:26:34         INMATE BOOKING SHEET                   PAGE     2
 ===================================================================================
 BOOKING NO: 060004318       INMATE NAME: SLAUGHTER JAMES EVERETT
 ===================================================================================
            COURT: AUBURN               ATTORNEY ON REC:
            JUDGE:                            PHONE: 000-000-0000
          REMARKS:
          REMARKS:
 ----------------------------------------------------------------------------------
      BOOK DATE: 09/09/2006  BOOK TIME: 02:16  BOOK TYPE: NORMAL

    ARREST DATE: 09/09/2006          BOOKING OFFICER: TUCKER
    ARREST DEPT: APD                 CELL ASSIGNMENT: HC3
  ARRST OFFICER: CARVER                    MEAL CODE: 05   AUBURN PD
  PROJ. RLSDATE: 00/00/0000                 FACILITY: 01   COUNTY JAIL
   SEARCH OFFCR: HILL               CLASSIFICATION:
    TYPE SEARCH: STRIP                 WORK RELEASE: N
  INTOX RESULTS:

          HOLDS: N
         AGENCY:                  REASON:
         AGENCY: APO              REASON: INV. Pugh.
         AGENCY:                  REASON:
         AGENCY:                  REASON:

          NOTES:
          NOTES:
          NOTES:
```

```
                              LEE COUNTY SHERIFF'S OFFICE
 09/09/2006    02:26:34         INMATE CHARGE SHEET                    PAGE     3
===============================================================================
 BOOKING NO: 060004318     INMATE NAME: SLAUGHTER JAMES EVERETT
===============================================================================
   CHARGE NO:   1  DISPOSITION: OPEN              HOLD: N

 ALA STATUTE: 13A-11-14                 # OF COUNTS:    1
     OFFENSE: PUBLIC INTOX.               WARRANT #:
      CASE #:
    BOND AMT: $200                              FINE:      $0.00
    BAIL AMT: $200
 INIT APPEAR: 00/00/0000              SENTENCE DATE: 00/00/0000
 RELEASE DTE: 00/00/0000
 ARREST DATE: 09/09/2006               ARST AGENCY: AUBURN
 ARST OFFICR: CARVER                        COUNTY: LEE
       COURT: AUBURN                          JUDGE:
 DEF ATTORNY:                         DIST ATTORNEY:
    COMMENTS:
    COMMENTS:
    COMMENTS:
 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
   CHARGE NO:   2  DISPOSITION: OPEN              HOLD: N

 ALA STATUTE: 13A-14-39                 # OF COUNTS:    1
     OFFENSE: RESISTING ARREST           WARRANT #:
      CASE #:
    BOND AMT: $500                              FINE:      $0.00
    BAIL AMT: $500
 INIT APPEAR: 00/00/0000              SENTENCE DATE: 00/00/0000
 RELEASE DTE: 00/00/0000
 ARREST DATE: 09/09/2006               ARST AGENCY: AUBURN
 ARST OFFICR: CARVER                        COUNTY: LEE
       COURT: AUBURN                          JUDGE:
 DEF ATTORNY:                         DIST ATTORNEY:
    COMMENTS:
    COMMENTS:
    COMMENTS:
 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

Rob III        5,000

LEE COUNTY SHERIFF'S OFFICE

09/09/2006    02:26:34    MEDICAL SCREENING FORM    PAGE 1
===================================================================

Booking No: 060004318  Date: 09/09/2006  Time: 02:16  Type: NORMAL
Agency to Bill: AUBURN PD              Facility: COUNTY JAIL

Inmate Name: SLAUGHTER JAMES EVERETT        Race: B      Sex: M
    DOB: 10/06/1963 Age:  42  SSN: 234 66 6973  Height: 5'11"  Weight: 160
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____  1.  Is inmate unconscious?

_____  2.  Does inmate have any visible signs of trauma, illness, obvious pain
             and bleeding, requiring immediate emergency or doctor's care?

_____  3.  Is there obvious fever, swollen lymph nodes, jaundice or other
             evidence of infection that might spread through the facility?

_____  4.  Any signs of poor skin condition, vermin, rashes or needle marks?

_____  5.  Does inmate appear to be under the influence of drugs or alcohol?

_____  6.  Any visible signs of alcohol or drug withdrawal?

_____  7.  Does inmate's behavior suggest the risk of suicide or assault?

_____  8.  Is inmate carrying any medication?

_____  9.  Does the inmate have any physical deformities?

_____  10. Does inmate appear to have psychiatric problems?

         11. Do you have or have you ever had or has anyone in your family
             ever had any of the following?

         _____ a. Allergies   _____ f. Fainting Spells   _____ k. Seizures

         _____ b. Arthritis   _____ g. Hearing Condition  _____ l. Tuberculosis

         _____ c. Asthma      _____ h. Hepatitis         _____ m. Ulcers

         _____ d. Diabetes    _____ i. High Blood Pressure  _____ n. Venereal Disease

         _____ e. Epilepsy    _____ j. Psychiatric Disorder  _____ o. Other (Specify)

    Other: _____

           _____

           _____

         12. For females only:

             _____ a. Are you pregnant?

             _____ b. Do you take birth control pills?

             _____ c. Have you recently delivered?

```
                              LEE COUNTY SHERIFF'S OFFICE
08/17/2006   17:18:38              INMATE RELEASE SHEET                      PAGE    1
===============================================================================
BOOKING NO: 060003849

INMATE NAME: SLAUGHTER JAMES EVERETT
       ALIAS:                                    RACE: B      SEX: M
       ALIAS:                                     HT: 5'11"  HAIR: BLK
     ADDRESS: 964 HOLMES AVE                      WT: 160    EYES: BRO
CITY/ST/ZIP: AUBURN, AL 36830              COMPLEX:
  HOME PHONE: 334-502-3066                     SSN: 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
         DOB: 10/06/1963  AGE:  42          DL ST:          DLN:
 PLCE BIRTH: TUSKEGEE                          SID:
       STATE: AL                             LOCID: 32147
   M. STATUS:
    RELIGION: BAPT
   GANG ASSOC: N/A
SCARS/TATTOOS: SCAR ON NOSE
KNOWN ENEMIES: N/A
       REMARKS:
------------------------------ NEXT OF KIN -----------------------------------
  NEXT OF KIN: BELINDA WALKER              RELATIONSHIP:
      ADDRESS: 964 HOLMES AVE                  PHONE: 334-502-3066
  CITY/ST/ZIP: AUBURN, AL 36830
      REMARKS:
------------------------------ EMPLOYER INFO ---------------------------------
    EMPLOYED: Y
EMPLOYER NAME: MIKE CONST
      ADDRESS:
  CITY/ST/ZIP: OPELIKA, AL
        PHONE: 000-000-0000
------------------------------ MEDICAL ---------------------------------------
  HANDICAPPED: N   NEEDS:
      GLASSES: N   SMOKE: Y
MEDICAL NEEDS: N   NEEDS:
    PHYSICIAN:                      PHONE: 000-000-0000
      REMARKS:

      REMARKS:
      REMARKS:
------------------------------ PROPERTY --------------------------------------
         CASH:       $00.00
  DESCRIPTION:
ADD. PROPERTY: LIGHTERS, BELT, COMB, LAZZER POINTER
ADD. PROPERTY:
ADD. PROPERTY:
   BIN NUMBER: 314
VEH IMPOUNDED:
  IMPOUND LOT:
      REMARKS:
      REMARKS:
===============================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.
```

INMATE: _James Slaughter_    DATE: 8/17/06    TIME: _____

BOOK/OFFICER: _____ 43P57    DATE: ___/___/06    TIME: 5:18

```
                         LEE COUNTY SHERIFF'S OFFICE
 08/17/2006    17:18:38          INMATE RELEASE SHEET                    PAGE    2
================================================================================
 BOOKING NO: 060003849    INMATE NAME: SLAUGHTER JAMES EVERETT
================================================================================
          COURT:                        ATTORNEY ON REC:
          JUDGE:                             PHONE: 000-000-0000
        REMARKS:
        REMARKS:
--------------------------------------------------------------------------------
    BOOK DATE: 08/13/2006   BOOK TIME: 03:50   BOOK TYPE: NORMAL

    ARREST DATE: 08/13/2006          BOOKING OFFICER: COWHICK
    ARREST DEPT: APD                 CELL ASSIGNMENT:
  ARRST OFFICER: FORBUS                    MEAL CODE: 05   AUBURN PD
  PROJ. RLSDATE: 00/00/0000                 FACILITY: 01   COUNTY JAIL
  SEARCH OFFCR: HILL               CLASSIFICATION:
  TYPE SEARCH: STRIP                  WORK RELEASE: N
 INTOX RESULTS:

        HOLDS: N
       AGENCY:                    REASON:
       AGENCY:                    REASON:
       AGENCY:                    REASON:
       AGENCY:                    REASON:

        NOTES:
        NOTES:
        NOTES:
================================================================================
  RELEASE DATE: 08/17/2006   RELEASE TIME: 17:16    # DAYS SERVED:     5

 RELEASE OFFICER: BROWN N
    RELEASE TYPE: ORDER OF RELEASE
        REMARKS: NCIC CLEARED BY VALARIE
        REMARKS: COURT DATE 5 OCT 06 @ 8:00A
        REMARKS:
================================================================================
 I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
 INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.
```

INMATE: _James D. Slaughter_    DATE: 8/    TIME: _____

BOOK OFFICER: _____    DATE: _____    TIME: 5:18

```
                          LEE COUNTY SHERIFF'S OFFICE
08/17/2006     17:18:38           INMATE CHARGE SHEET                    PAGE    3
==================================================================================
BOOKING NO: 060003849     INMATE NAME: SLAUGHTER JAMES EVERETT
==================================================================================
    CHARGE NO:   1  DISPOSITION: RELEASED          HOLD: N

ALA STATUTE: 13A-11-10              # OF COUNTS:    1
     OFFENSE: PUBLIC INTOX            WARRANT #:
      CASE #:
     BOND AMT: 200.00                      FINE:        $0.00
     BAIL AMT:
INIT APPEAR: 00/00/0000         SENTENCE DATE: 00/00/0000
RELEASE DTE: 00/00/0000
ARREST DATE: 08/13/2006          ARST AGENCY: APD
ARST OFFICR: FORBUS                   COUNTY: LEE
       COURT:                          JUDGE:
 DEF ATTORNY:                   DIST ATTORNEY:
    COMMENTS:
    COMMENTS:
    COMMENTS:
----------------------------------------------------------------------------------
```

INMATE BOOKING SHEET
PAGE

================================================================
BOOKING NO: 060003849

INMATE NAME: SLAUGHTER JAMES EVERETT
        ALIAS:
        ALIAS:
      ADDRESS: 964 HOLMES AVE                    RACE: B      SEX: M
  CITY/ST/ZIP: AUBURN, AL 36830                  HT: 5'11"   HAIR: BLK
   HOME PHONE: 334-502-3066                      WT: 160     EYES: BRO
          DOB: 10/06/1963   AGE: 42        COMPLEX:
  PLCE BIRTH: TUSKEGEE                           SSN: 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
        STATE: AL                            DL ST:           DLN:
    M. STATUS: SINGLE                            SID:
     RELIGION: BAPT                            LOCID: 32147
  GANG ASSOC: N/A
SCARS/TATTOOS: SCAR ON NOSE
KNOWN ENEMIES: N/A
      REMARKS:                                          P:1/2
---------------------------                TO:97373574.   Case Number
    NEXT OF



ORDER OF RELEASE
FROM JAIL

                                                        _____ COUNTY

IN THE  Auburn City Court  COURT OF _____
                                  James Slaughter

STATE OF ALABAMA                v. _____

TO THE JAILER WITH CUSTODY OF THE DEFENDANT

You are ordered to release from your custody the above named defendant, charged with the offense of
    Public  Intoxication           per Judge

Reason for Release _____ By: _____

Date    8-17-06                          Judge/Clerk

================ PROPERTY ================================
ADD. PROPERTY: LIGHTERS, BELT, COMB, LAZZER POINTER
ADD. PROPERTY:
ADD. PROPERTY:
   BIN NUMBER: 314
VEH IMPOUNDED:
 IMPOUND LOT:
     REMARKS:
     REMARKS:
================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE:                        DATE:              TIME:

BOOK OFFICER:                  DATE:  8/13/06     TIME:

```
08/13/2006    03:55:31           LEE COUNTY SHERIFF'S OFFICE                PAGE    2
                                  INMATE BOOKING SHEET
===================================================================================
BOOKING NO: 060003849         INMATE NAME: SLAUGHTER JAMES EVERETT
===================================================================================
             COURT:                   ATTORNEY ON REC:
             JUDGE:                         PHONE: 000-000-0000
           REMARKS:
           REMARKS:
-----------------------------------------------------------------------------------
         BOOK DATE: 08/13/2006  BOOK TIME: 03:50  BOOK TYPE: NORMAL

       ARREST DATE: 08/13/2006          BOOKING OFFICER: COWHICK
       ARREST DEPT: APD                 CELL ASSIGNMENT: HC3
     ARRST OFFICER: FORBUS                    MEAL CODE: 05  AUBURN PD
     PROJ. RLSDATE: 00/00/0000               FACILITY: 01   COUNTY JAIL
     SEARCH OFFCR: HILL                  CLASSIFICATION:
       TYPE SEARCH: STRIP                WORK RELEASE: N
     INTOX RESULTS:

             HOLDS: N
            AGENCY:              REASON:
            AGENCY:              REASON:
            AGENCY:              REASON:
            AGENCY:              REASON:

             NOTES:
             NOTES:
             NOTES:
```

LEE COUNTY SHERIFF'S OFFICE
MEDICAL SCREENING FORM                                    PAGE 1

08/13/2006    03:55:31
===================================================================
Booking No: 060003849  Date: 08/13/2006  Time: 03:50  Type: NORMAL
Agency to Bill: AUBURN PD          Facility: COUNTY JAIL

Inmate Name: SLAUGHTER JAMES EVERETT         Race: B      Sex: M
     DOB: 10/06/1963 Age:  42  SSN: 234 66 6973  Height: 5'11"  Weight: 160
-------------------------------------------------------------------

N    1.  Is inmate unconscious?

N    2.  Does inmate have any visible signs of trauma, illness, obvious pain
         and bleeding, requiring immediate emergency or doctor's care?

N    3.  Is there obvious fever, swollen lymph nodes, jaundice or other
         evidence of infection that might spread through the facility?

N    4.  Any signs of poor skin condition, vermin, rashes or needle marks?

Yes  5.  Does inmate appear to be under the influence of drugs or alcohol?

N    6.  Any visible signs of alcohol or drug withdrawal?

N    7.  Does inmate's behavior suggest the risk of suicide or assault?

N    8.  Is inmate carrying any medication?

N    9.  Does the inmate have any physical deformities?

N   10.  Does inmate appear to have psychiatric problems?

    11.  Do you have or have you ever had or has anyone in your family
         ever had any of the following?

N   a. Allergies      N   f. Fainting Spells      N   k. Seizures

    b. Arthritis          g. Hearing Condition         l. Tuberculosis

    c. Asthma             h. Hepatitis                 m. Ulcers

    d. Diabetes           i. High Blood Pressure       n. Venereal Disease

N   e. Epilepsy       N   j. Psychiatric Disorder  N   o. Other (Specify)

Other:  Rt hand swollen _____

         _____

         _____


    12.  For females only:

         _____ a. Are you pregnant?

         N/A   b. Do you take birth control pills?

         _____ c. Have you recently delivered?

```
                              LEE COUNTY SHERIFF'S OFFICE
07/10/2007     08:49:32       INMATE CHARGE SHEET                          PAGE    3
================================================================================
BOOKING NO: 060004318    INMATE NAME: SLAUGHTER JAMES EVERETT
================================================================================
    CHARGE NO:   1  DISPOSITION: OPEN                 HOLD: N

ALA STATUTE: 13A-11-14                     # OF COUNTS:   1
     OFFENSE: PUBLIC INTOX.                  WARRANT #:
      CASE #:
   BOND AMT: $200                                 FINE:        $0.00
   BAIL AMT: $200
INIT APPEAR: 00/00/0000                  SENTENCE DATE: 00/00/0000
RELEASE DTE: 00/00/0000
ARREST DATE: 09/09/2006                    ARST AGENCY: AUBURN
ARST OFFICR: CARVER                            COUNTY: LEE
      COURT: AUBURN                              JUDGE:
DEF ATTORNY:                              DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    CHARGE NO:   2  DISPOSITION: OPEN                 HOLD: N

ALA STATUTE: 13A-14-39                     # OF COUNTS:   1
     OFFENSE: RESISTING ARREST              WARRANT #:
      CASE #:
   BOND AMT: $500                                 FINE:        $0.00
   BAIL AMT: $500
INIT APPEAR: 00/00/0000                  SENTENCE DATE: 00/00/0000
RELEASE DTE: 00/00/0000
ARREST DATE: 09/09/2006                    ARST AGENCY: AUBURN
ARST OFFICR: CARVER                            COUNTY: LEE
      COURT: AUBURN                              JUDGE:
DEF ATTORNY:                              DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    CHARGE NO:   3  DISPOSITION: OPEN                 HOLD: N

ALA STATUTE: 13A-8-43                      # OF COUNTS:   1
     OFFENSE: ROB III                       WARRANT #:
      CASE #: 13A-8-43
   BOND AMT: 5,000.00                             FINE:        $0.00
   BAIL AMT: 5,000.00
INIT APPEAR: 00/00/0000                  SENTENCE DATE: 00/00/0000
RELEASE DTE: 00/00/0000
ARREST DATE: 09/09/2006                    ARST AGENCY: APD
ARST OFFICR: PUGH                              COUNTY: LEE
      COURT: CIRCUIT                             JUDGE:
DEF ATTORNY:                              DIST ATTORNEY:
   COMMENTS: BOND REDUCED ON 11-29-06
   COMMENTS:
   COMMENTS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

```
                          LEE COUNTY SHERIFF'S OFFICE                PAGE    2
07/10/2007    08:49:32    INMATE BOOKING SHEET
======================================================================================
BOOKING NO: 060004318     INMATE NAME: SLAUGHTER JAMES EVERETT
======================================================================================
          COURT: AUBURN            ATTORNEY ON REC:
          JUDGE:                        PHONE: 000-000-0000
        REMARKS:
        REMARKS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    BOOK DATE: 09/09/2006  BOOK TIME: 02:16  BOOK TYPE: NORMAL

   ARREST DATE: 09/09/2006        BOOKING OFFICER: TUCKER
   ARREST DEPT: APD               CELL ASSIGNMENT: 203A
 ARRST OFFICER: CARVER                  MEAL CODE: 01  LEE COUNTY
 PROJ. RLSDATE: 00/00/0000              FACILITY: 01  COUNTY JAIL
  SEARCH OFFCR: HILL              CLASSIFICATION:
  TYPE SEARCH: STRIP                WORK RELEASE: N
INTOX RESULTS:

         HOLDS: N
        AGENCY:               REASON:
        AGENCY:               REASON:
        AGENCY:               REASON:
        AGENCY:               REASON:

         NOTES:
         NOTES:
         NOTES:
```

JUL-10-2007 10:45 FROM:LEE CO SHERIFF    334 749 4835    TO:334 262 1889    P.5??

Case 3:07-cv-00366-MHT-TFM    Document 12-2    Filed 07/11/2007    Page 15 of 31

```
07/10/2007    08:49:32      |  LEE COUNTY SHERIFF'S OFFICE      PAGE    1
                            |  INMATE BOOKING SHEET
============================|===============================================
BOOKING NO: 060004318       |

INMATE NAME: SLAUGHTER JAMES EVERETT
        ALIAS:                              RACE: B      SEX: M
        ALIAS:                              HT: 5'11" HAIR: BLK
      ADDRESS: 964 HOLMES AVE               WT: 160    EYES: BRO
  CITY/ST/ZIP: AUBURN, AL 36830          COMPLEX:
   HOME PHONE: 334-502-3066                SSN: 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
          DOB: 10/06/1963  AGE:  43      DL ST:        DLN:
   PLCE BIRTH: TUSKEGEE                     SID:
        STATE: AL                         LOCID: 32147
    M. STATUS:
     RELIGION: BAPT
   GANG ASSOC: N/A
SCARS/TATTOOS: SCAR ON NOSE
KNOWN ENEMIES: N/A
      REMARKS:
```

------------------------- NEXT OF KIN ---------------------------------

```
  NEXT OF KIN: BELINDA WALKER          RELATIONSHIP:
      ADDRESS: 964 HOLMES AVE              PHONE: 334-502-3066
  CITY/ST/ZIP: AUBURN, AL 36830
      REMARKS:
```

------------------------- EMPLOYER INFO -------------------------------

```
     EMPLOYED: Y
EMPLOYER NAME: MIKE CONST
      ADDRESS:
  CITY/ST/ZIP: OPELIKA, AL
        PHONE: 000-000-0000
```

-------------------------- MEDICAL -----------------------------------

```
  HANDICAPPED: N   NEEDS:
      GLASSES: N   SMOKE: Y
MEDICAL NEEDS: N   NEEDS:
    PHYSICIAN:                      PHONE: 000-000-0000
      REMARKS:

      REMARKS:
      REMARKS:
```

-------------------------- PROPERTY -----------------------------------

```
         CASH:      $00.00
  DESCRIPTION:
ADD. PROPERTY: 1 BELT
ADD. PROPERTY:
ADD. PROPERTY:
   BIN NUMBER: 360
VEH IMPOUNDED:
  IMPOUND LOT:
      REMARKS:
      REMARKS:
```

============================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE:_____    DATE:_____    TIME:_____

BOOK OFFICER:_____    DATE:_____    TIME:_____

# EXHIBIT  B

# Lee County Detention Center Policy and Procedure Manual [Section 11 and 14]



# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| HEALTH CARE SERVICES | SECTION 11 |
| Medical Program Objectives | Title 11.01 |

*Policy*

It is the policy of the Lee County Sheriff's Department that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotion well-being.

*Procedure*

1. Medical care rendered to inmates in the Lee County Detention Center will be delivered under the direction of a licensed health care provider.

2. No health care personnel or Detention Center officer or other employee of the Sheriff's Department will ever summarily or arbitrarily deny an inmate's reasonable request for medical services.

3. Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.

4. Inmates will be guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** ___01-01-2000___

B

# LEE COUNTY
# SHERIFF'S DEPARTMENT



| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| <u>Consent for Medical Treatment</u> | **Title 11.02** |

## <u>Policy</u>

It is the policy of the Lee County Sheriff's Department that no inmate be given medical treatment without his authorization unless a life-threatening emergency exists or the inmate is considered mentally incompetent by the court and is in danger of harming himself or others.

## <u>Procedure</u>

1. During the booking process, each inmate will be requested to sign a medical authorization form.

2. If an inmate refuses to sign a medical authorization form, it will be noted on the form and no medical services, other than emergency life saving procedures, will be offered.

3. No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate. The responsibility for this explanation rests solely with the health care provider.

4. Inmates have a right to refuse medical treatment at any time.

5. If an inmate refuses to accept medication or medical treatment, the officer receiving such a refusal should cause the inmate to sign a Medication Refusal Form noting the refusal of medical care. Inmates who refuse medical treatment should be immediately referred to the Detention Center nurse. The consequences of their refusal will be explained to such inmates by the nurse, and the refusal and subsequent procedures documented. If the inmate refuses to sign a Medication Refusal Form, the member of the Detention Center staff receiving the refusal should record that action on the form and follow the same steps as if the inmate had signed. All documentation of refusals of treatment should be made a part of the appropriate inmate's Detention Center file.

**By Order of:**

_Jay M. Jones_

Jay M. Jones, Sheriff

**Effective Date:** ___01-01-2000___

| Reference Forms: | 2 | Booking Sheet |
|---|---|---|
| | 13 | Medication Refusal Form |

# LEE COUNTY
# SHERIFF'S DEPARTMENT



| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| <u>**Health Appraisal of Inmates**</u> | **Title 11.03** |

<u>*Policy*</u>

It is the policy of the Lee County Sheriff's Department that health appraisal data for each inmate be collected in order to properly classify inmates, promote awareness of and respond to their medical conditions and maintain adequate records of each inmate's health status.

<u>*Procedure*</u>

1.  The Booking Officer will conduct a health screening during the booking process and complete a health screening form.

2.  The completed form, after being signed by the inmate, will be placed in the inmate's file.

3.  An inmate incarcerated for seven days or longer will have a Health History taken by a member of the Detention Center staff. The completed form will be placed in the inmate's file.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**  01-01-2005

| **Reference Forms:** | 2 | **Booking Sheet** |
|---|---|---|
| | 9 | **Health History** |



# LEE COUNTY
# SHERIFF'S DEPARTMENT

---

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| **Inmate Requests for Health Care Services** | **Title 11.04** |

---

## Policy

It is the policy of the Lee County Sheriff's Department to allow inmates incarcerated in the Lee County Detention Center to request health care services at any time.

## Procedure

1. Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services:

   a. <u>Verbal Request</u>:  An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.

   b. <u>Written Request</u>:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.

2. Requests for medical treatment will be accepted by members of the Detention Center staff at any time.

3. When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request. It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner. Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.

4. Medical requests of an emergency nature will be handled immediately.

5. As part of the booking process, inmates will be informed of the methods by which they may maintain medical treatment during the booking process.





6.   The Detention Center nurse, under the direction of the Detention Center Administrator, is charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Center.

7.   All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Center official.  Should the physician request, a Detention Center officer will be present for any and all examinations the treating physician deems appropriate.

8.   A Detention Center officer will complete a Record of Medical Examination Form each time an inmate utilizes the services of a health care provider not affiliated with the Detention Center.  The officer should ensure that the form is reviewed by the provider, signed, and returned to the inmate's file.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____ 01-01-2000

| Reference Forms: | 8 | Inmate Request Form |
|---|---|---|
| | 11 | Record of Medical Examination |





# LEE COUNTY
# SHERIFF'S DEPARTMENT

| HEALTH CARE SERVICES | SECTION 11 |
|---|---|
| Emergency Medical Service | Title 11.05 |

*Policy*

It is the policy of the Lee County Sheriff's Department to utilize all available emergency medical services within the community on a 24-hour basis for the emergency medical needs of persons incarcerated in the Lee County Detention Center.

*Procedure*

1.     During an emergency situation, any member of the Detention Center staff is authorized to notify appropriate emergency medical services and requests treatment for an inmate.

2.     During a medical emergency, emergency medical technicians or other appropriate health care providers will be summoned to the Detention Center and, if they or the treating physician deem necessary, the inmate will be transported to the Emergency Room of the Lee County Hospital or other appropriate location for emergency care.

3.     An Incident Report and Record of Medical Examination Form should be completed reflecting the circumstances of each such occurrence.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**      01-01-2050

| Reference Forms: | 10 | **Incident Report** |
|---|---|---|
| | 11 | **Record of Medical Examination** |



# LEE COUNTY
# SHERIFF'S DEPARTMENT



| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| <u>**Non-Emergency Transportation**</u> | **Title 11.06** |

### *Policy*

It is the policy of the Lee County Sheriff's Department to transport inmates to appropriate medical facilities for non-emergency care in a manner which is safe and secure and does not endanger the inmate's health or medical condition.

### *Procedure*

1.  A Shift Supervisor may, at any time, order that an inmate be transported to a hospital, doctor's office, dentist's office, or other location where health care may be provided on a non-emergency basis.

2.  The Detention Center officer receiving the order to make arrangements for such transportation will contact a Shift Supervisor in order to have a transport officer take the inmate to the proper location.

3.  All medical records and forms within the Detention Center shall accompany the inmate to the health care provider and be made available to the provider.

4.  The name of the inmate transported and the time of leaving from and arriving back at the Detention Center should be noted on the Detention Center log.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** ___01 - 01 - 2000___



# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| Pharmaceutical Management | **Title 11.09** |

*Policy*

It is the policy of the Lee County Sheriff's Department that persons incarcerated in the Lee County Detention Center be entitled to safe dispensation and administration of prescription and non-prescription medication.

*Procedure*

A.   *Obtaining Medication*

1.   If an inmate is admitted to the Detention Center who states he is receiving prescribed medication but does not have that medication with him, he will be given the opportunity to have that medication brought to the Detention Center by a friend or family member.

2.   If an inmate being booked into the Detention Center states that he is receiving prescription medication but does not have his supply of medication with him or cannot obtain it from outside sources, the inmate's health care provider will be contacted by the Shift Supervisor in order to obtain a replacement prescription. If advised to do so by the health care provider, the inmate will be taken to the facility's health care provider in order to be examined.

3.   All medication which is prescribed for an inmate by his health care provider during the term of the inmate's incarceration will be obtained by the Sheriff's Department and distributed to the inmate according to his doctor's directions.

B.   *Medication Receipt*

1.   Upon receiving non-prescription medication, the officer purchasing that medication will deliver the invoice and/or receipt to the Shift Supervisor who will file it appropriately.

2.   For all prescription medications, a copy of the prescription label and a receipt or invoice from the pharmacy or a copy of these documents will be placed in the inmate's file for whom the prescription was ordered.



C.  *Storage*

1.  All medications, both prescription and non-prescription, as well as any dispensing devices, such as syringes, will be stored in a locked area of the Detention Center.

2.  The Shift Supervisor shall be the only Detention Center officer having access to the medication locker. Keys to the locker must be kept on the person of the Shift Supervisor during his or her shift and transferred to the oncoming Shift Supervisor or senior officer on duty for the next shift.

D.  *Distribution of Medication*

1.  No medication should be dispensed from any container that is not legibly labeled with a proper pharmaceutical label as set out in Procedure B set out above.

2.  No medication should be changed from one bottle to another.

3.  No medication should be left with an inmate. The Detention Center officer distributing the medication should observe ingestion.

4.  When distributing medications dispensed in pill or capsule form, the Detention Center officer should require the inmate to consume at least four ounces of water along with the medication to ensure ingestion. If the Detention Center officer is in doubt as to whether the inmate has actually ingested the medication, he should require the inmate to speak to him and to raise his tongue in order that the Detention Center officer may observe the inside of the inmate's mouth.

5.  A record should be kept reflecting the type of medication distributed to an inmate, the time the inmate received the medication, the initials of the Detention Center official dispensing the medication and the inmate's initials or signature acknowledging receipt. Such records should be placed in the inmate's Detention Center file. Non-prescription medication should be made available to inmates upon request and should be dispensed in the same manner as prescription medication, including recording dispensation on a medication log.

6.  The taking of medications by an inmate is strictly voluntary. Any inmate has the right to refuse to take medication for any reason and this refusal will be respected. When an inmate refuses to take a scheduled medication, it is to be noted on the medication log





# LEE COUNTY
# SHERIFF'S DEPARTMENT

| INMATE RIGHTS | SECTION 14 |
|---|---|
| **Inmate Requests and Grievances** | **Title 14.04** |

## *Policy*

It is the policy of the Lee County Sheriff's Department that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the Sheriff, Chief Deputy Sheriff, or Detention Center personnel.

## *Procedure*

A.   *Requests*

1.   Requests for medical attention, telephone calls, or other matters must be made in writing on an Inmate Request Form.

2.   An exception exists for requests of an emergency nature which will be handled immediately without a written request.

3.   All requests will be routed to the Chief Deputy Sheriff and, if necessary, forwarded by him to the proper authority.

4.   Inmates housed in the Lee County Detention Center will be furnished with Inmate Request Forms for the purpose of stating their requests or grievances in writing.

5.   Detention Center personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate.

B.   *Grievances*

1.   Inmates are encouraged to informally resolve grievances between themselves and members of the staff when possible. If this is not possible, the inmate may complete a request form stating his grievance.

2.   The staff member receiving the Inmate Request Form must sign it, date it, and note the-





time of day it is received.

3.  If possible, the member of the Detention Center staff receiving a grievance should answer it but, if he cannot do so, it should be forwarded to the Chief Deputy Sheriff for further action.

4.  The staff member answering the grievance must decide if a staff member or inmate has acted improperly, if an inmate's rights were violated, if privileges were unjustly denied, of if a crime was committed.  After reviewing the grievance, he must write his response on the Inmate Request Form, giving findings which substantiate or disprove the complaint and, if applicable, a remedy.  This person must also sign, date, and note the time of his response on the request form.

5.  After the above process is completed, a copy of the request form containing the response is made and delivered to the inmate.  This should be done within 72 hours of the time the grievance is received, excluding weekends and holidays.

6.  Grievances should be first answered by the appropriate staff member at the lowest level in the chain of command.

7.  If an inmate is dissatisfied with the response he receives, he may appeal, in writing, to the next higher level in the chain of command of the Sheriff's Department.

8.  The original copy of the inmate's grievance, containing the response by Detention Center officials, shall be placed in the inmate's Detention Center file.

9.  No negative sanction may be taken against any inmate for filing a grievance.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01-2000

**Reference Forms:**    8    **Inmate Request Form**

# EXHIBIT C

# Affidavit of Sheriff Jay Jones

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **JAMES E. SLAUGHTER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **V.** | ) **CIVIL ACTION NO. 3:07-cv-366-MHT** |
| | ) |
| **RONALD W. HILYER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## <u>AFFIDAVIT OF JAY JONES</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Jay Jones, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Jay Jones. I am over the age of nineteen and competent to make this affidavit. I am the Sheriff of Lee County.

2.     I am the duly elected Sheriff of Lee County, Alabama, and have served in such capacity since 1999.

3.     I had no personal involvement in any of the events surrounding the incident alleged in Plaintiff's Complaint. But for the fact of Plaintiff's incarceration in the Lee County Detention Center, I would not know of the Plaintiff.

4.     I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. I have no

C

reason to believe that any Lee County Detention Center personnel failed to follow the policies and procedure regarding health care in the case of Plaintiff.

5.    I am responsible for promulgating the policies and procedures of the Lee County Detention Center. The Lee County Detention Center Policy and Procedures Manual states the policy regarding Health Care Services in Section 11. According to Title 11.01, Lee County Detention Center Policy and Procedures Manual, all medical services at the Lee County Detention Center are to be delivered by a "licensed health care provider." According to Title 11.01, ¶ 2, Lee County Detention Center Policy and Procedures Manual, "No health care personnel or Detention Center officer or other employee of the Sheriff's Department will ever summarily or arbitrarily deny an inmate's reasonable request for medical services."

6.    As established in Title 14.04.B., an inmate may file a Grievance by filling out an Inmate Request Form (hereafter "IRF") explaining his complaint. Upon receipt by a corrections officer, the date, time, and officer's signature are noted on the IRF. If the officer can answer the Grievance, he or she does so. However, if not, the Grievance is given to the Chief Deputy Sheriff. The response and explanation for a denial of the Grievance should be noted on the IRF and returned to the inmate. All should be accomplished before the passage of 72 hours. If the inmate is dissatisfied with the response, he or she should appeal to the next level of the chain of command of the Sheriff's Department. "No negative sanction may be taken against any inmate for filing a Grievance." Title 14.04.B. ¶ 9. To my knowledge, Plaintiff did not file a Grievance with the Lee County Detention Center regarding his health situation.

7.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

JAY JONES

**SWORN TO** and **SUBSCRIBED** before me this 6 day of July 2007.

NOTARY PUBLIC
My Commission Expires:  MY COMMISSION EXPIRES FEB. 5, 2011

# EXHIBIT  D

# Affidavit of Cary Torbert

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JAMES E. SLAUGHTER,           )
                              )
    Plaintiff,                )
                              )
V.                            )    CIVIL ACTION NO. 3:07-cv-366-MHT
                              )
RONALD W. HILYER, et al.,     )
                              )
    Defendants.               )

## AFFIDAVIT OF CARY TORBERT, JR.

STATE OF ALABAMA        )
                        )
COUNTY OF LEE           )

    **BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Cary Torbert, who being known to me and being by me first duly sworn on oath deposes and says as follows:

    1.    My name is Cary Torbert, Jr. I am over the age of nineteen and competent to make this affidavit. I serve as Chief Deputy of Corrections of the Lee County Detention Facility and have obtained the rank of Major. I have worked with the Lee County Sheriff's Department for over 34 years.

    2.    I am familiar with the Plaintiff, James E. Slaughter, due to his incarceration in the Lee County Detention Facility. I do not, however, have any personal knowledge of the allegations made the basis of his Complaint. The Plaintiff's inmate jail file does not contain any written request or grievance concerning any of the allegations made by the Plaintiff in his Complaint.

3.    I had no personal involvement in any of the events surrounding the incident alleged in Plaintiff's Complaint.

4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. I have no reason to believe that any Lee County Detention Center personnel failed to follow the policies and procedure regarding health care in the case of Plaintiff.

5.    I am responsible for ensuring that the Detention Center's staff follows the policies and procedures of the Lee County Detention Center. The Lee County Detention Center Policy and Procedures Manual states the policy regarding Health Care Services in Section 11. According to Title 11.01, Lee County Detention Center Policy and Procedures Manual, all medical services at the Lee County Detention Center are to be delivered by a "licensed health care provider." According to Title 11.01, ¶ 2, Lee County Detention Center Policy and Procedures Manual, "No health care personnel or Detention Center officer or other employee of the Sheriff's Department will ever summarily or arbitrarily deny an inmate's reasonable request for medical services."

6.    As established in Title 14.04.B., an inmate may file a Grievance by filling out an Inmate Request Form (hereafter "IRF") explaining his complaint. Upon receipt by a corrections officer, the date, time, and officer's signature are noted on the IRF. If the officer can answer the Grievance, he or she does so. However, if not, the Grievance is given to me or Lieutenant Welch, my assistant. The response and explanation for a denial of the Grievance should be noted on the IRF and returned to the inmate. All should be accomplished before the passage of 72 hours. If the inmate is dissatisfied with the response, he or she should appeal to the next level of the chain of command of the

Sheriff's Department. "No negative sanction may be taken against any inmate for filing a Grievance." Title 14.04.B. ¶ 9. To my knowledge, Plaintiff did not file a Grievance with the Lee County Detention Center regarding his health situation.

7.      Since Plaintiff's incarceration in August of 2006, the Lee County Detention Center has spent well over $15,000 in the treatment, repair, and rehabilitation of Plaintiff's pinky finger.

8.      I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.


_____
CARY TORBERT, JR.

**SWORN TO and SUBSCRIBED** before me this ___ day of July 2007.


_____
NOTARY PUBLIC
My Commission Expires: _____
MY COMMISSION EXPIRES FEB. 9, 2011

# EXHIBIT  E

# Affidavit of Corey Welch

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **JAMES E. SLAUGHTER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **V.** | ) **CIVIL ACTION NO. 3:07-cv-366-MHT** |
| | ) |
| **RONALD W. HILYER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

<u>**AFFIDAVIT OF COREY WELCH**</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Corey Welch, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Corey Welch. I am over the age of nineteen and competent to make this affidavit.

2.    I am employed by the Lee County Sheriff's Office and assigned to serve as a corrections officer at the Lee County Detention Center. I have worked as a correctional officer for over ten years, having obtained the rank of Lieutenant in November 2004. I am both a graduate of the Police Academy and the Alabama Jail Management School. Half of Lee County Detention Center staff is assigned to the red team and half is assigned to the blue team. I am the red team supervisor. I am in charge of work-release inmates and am the SPORT team administrator. Lt. Roberson and I are the highest ranking jail officials under Major Torbert and Sheriff Jones. I am a Custodian of Jail

Records at the Lee County Detention Center and certify that the Booking Documents attached to Defendants' Special Report are the correct documents associated with the incarceration of Plaintiff James Slaughter and document his incarceration during the time relevant to this case.

3.    While not personally acquainted with Plaintiff, I am familiar with the Plaintiff due to his incarceration in the Lee County Detention Center. However, I was not personally involved in the treatment of Plaintiff's finger. Based on Lee County Detention Center records and his incarceration related to his present Complaint, Plaintiff was incarcerated at the Center from August 13 to 16, 2006 and from September 9, 2006 to the Present (for Public Intoxication and Resisting Arrest).

4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. I have no reason to believe that any Lee County Detention Center personnel failed to follow the policies and procedures regarding medical care for the Plaintiff.

5.    The Lee County Detention Center Policy and Procedures Manual states the policy regarding Health Care Services in Section 11. According to Title 11.01, Lee County Detention Center Policy and Procedures Manual, all medical services at the Lee County Detention Center are to be delivered by a "licensed health care provider." According to Title 11.01, ¶ 2, Lee County Detention Center Policy and Procedures Manual, "No health care personnel or Detention Center officer or other employee of the Sheriff's Department will ever summarily or arbitrarily deny an inmate's reasonable request for medical services."

6.     As established in Title 14.04.B., an inmate may file a Grievance by filling out an Inmate Request Form (hereafter "IRF") explaining his complaint. Upon receipt by a corrections officer, the date, time, and officer's signature are noted on the IRF. If the officer can answer the Grievance, he or she does so. However, if not, the Grievance is given to the Chief Deputy Sheriff. The response and explanation for a denial of the Grievance should be noted on the IRF and returned to the inmate. All should be accomplished before the passage of 72 hours. If the inmate is dissatisfied with the response, he or she should appeal to the next level of the chain of command of the Sheriff's Department. "No negative sanction may be taken against any inmate for filing a Grievance." Title 14.04.B. ¶ 9. To my knowledge, Plaintiff did not file a Grievance with the Lee County Detention Center regarding his health situation.

7.     I am the Supervisor for the professional medical personnel that attend to Lee County inmates and that are employed by the Lee County Detention Center. They are the personnel authorized to treat inmates and refer them for treatment when the necessary treatment surpasses their training and competence. They are familiar with the Lee County Detention Center Policy and Procedures and follow them, and they did so in the Plaintiff's case. Nurse Stewart and Nurse Griffith are full-time employees of the Lee County Detention Center, and Dr. John McFarland is a contract physician that provides medical services to inmates for the Lee County Detention Center. With respect to the Plaintiff and his finger treatment, all Detention Center personnel followed the orders of the doctors and nurses and the policy and procedures of the Lee County Detention Center.

8.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.


_____
COREY WELCH

SWORN TO and SUBSCRIBED before me this _6_ day of July 2007.


_____
NOTARY PUBLIC
My Commission Expires: _MY COMMISSION EXPIRES FEB. 5, 2011_



# EXHIBIT  F

# Affidavit of John McFarland

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JAMES E. SLAUGHTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) CIVIL ACTION NO. 3:07-cv-366-MHT |
| | ) |
| RONALD W. HILYER, et al., | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF JOHN MCFARLAND

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF LEE | ) |

BEFORE ME, the undersigned authority and Notary Public in and for said County and State at large, personally appeared John McFarland, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.         My name is John McFarland.  I am over the age of nineteen and competent to make this affidavit.  I am a doctor and have been an independent contractor with the Lee County Detention Center since 1994.

2.         I have complied with all policies and procedures of the Lee County Detention Facility.  I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

3.         I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.  I am not an Orthopedic Specialist; therefore, any decision as to Orthopedic work to be performed on an inmate's injured bones, like Plaintiff's finger, would be made by an Orthopedic

Specialist. When necessary, I referred Plaintiff to an Orthopedic Specialist, Dr. Ronald W. Hilyer, for evaluation and treatment. I did so both before and after Plaintiff's first and second surgeries. Also, while Plaintiff was incarcerated in the Lee County Detention Center, I followed all orders issued by any other doctor who provided care and treatment to Plaintiff's finger. I know of no other employee of the Detention Center or medical professional treating Plaintiff or corrections officer who did not follow my or any other doctor's orders or follow the policy and procedures of the Lee County Detention Center.

4.      It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Facility are entitled to a level of health care comparable to that available to citizens in the surrounding community, which will ensure their physical and emotional well-being.

5.      The Lee County Detention Center Policy and Procedures Manual states the policy regarding Health Care Services in Section 11. According to Title 11.01, Lee County Detention Center Policy and Procedures Manual, all medical services at the Lee County Detention Center are to be delivered by a "licensed health care provider." According to Title 11.01, ¶ 2, Lee County Detention Center Policy and Procedures Manual, "No health care personnel or Detention Center officer or other employee of the Sheriff's Department will ever summarily or arbitrarily deny an inmate's reasonable request for medical services." I follow these procedures with respect to every inmate that sees me for treatment, and I followed them with respect to Plaintiff and the treatment of his finger.

6.      Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively. If I must refer an inmate to a specialist, then I and the other

Detention Center personnel will follow the instructions of that specialist as to an inmate's treatment.

7.        Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.

8.        It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Facility to request health care services at any time.

9.        All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Facility official. Should the physician request, a Detention Facility officer will be present for any and all examinations the treating physician deems appropriate.

10.        To clarify the Plaintiff's present condition and contrary to the implication in his Complaint there that was any attempt by the Lee County Detention Center or any of its personnel to thwart his second operation, Plaintiff has received a second operation on his finger and now has a prosthetic knuckle. He is undergoing physical therapy with Dr. Hilyer, an Orthopedic Surgeon. Plaintiff's second surgery occurred on April 20, 2007. We do not tell inmates of such appointments ahead of time for security reasons; therefore, until the day before he was to go for the surgery, Plaintiff did not know when he would have the second operation. Doctors' offices that seek to set an appointment for a surgery with a medical facility, like the East Alabama Medical Center, may not be able to obtain the first choice as to a date. If the surgery is not of an urgent or emergency nature, the doctor's original choice of a date may be changed based on the medical facility's schedule. Or the doctor's own schedule could change, thereby affecting when

the surgery is performed. Or the jail's ability to meet the medical facility's schedule could affect the scheduling of an operation.

11.    Plaintiff's second surgery upon his finger was not of an emergency nature. In fact, Plaintiff himself neglected to have the finger treated during periods of time that he was not incarcerated in the Lee County Detention Center. While I treated Plaintiff, I was concerned about his attitude. He appeared dismissive of my opinion, when I explained the exercises he would need to perform in order to restore the use of his finger. He clearly did not care for my prescription of ROM (Range of Motion) exercises, meaning the bending and stretching of the finger and squeezing a ball to increase its use and ability.

12.    As for the second surgery, a delay of three weeks would have been inconsequential to the outcome. As of April 20, 2007, several months had passed since the date of Plaintiff's first surgery, November 3, 2006, and bones knit within days of being broken. Therefore, if there had been an original date for the surgery of March 30, 2007, a change to April 20, 2007 would not have affected the success of that surgery. There was no unreasonable delay in the treatment of Plaintiff's finger, nor did any personnel associated with the Lee County Detention Center and Plaintiff's treatment attempt to cause unreasonable delay in his treatment. Also, any decision to operate on Plaintiff a second time would have been a decision for a specialist, like Dr. Hilyer, the surgeon who performed the first operation.

13.    More important for Plaintiff's future use of his finger and the prevention of permanent problems with the finger is the physical rehabilitation prescribed for the Plaintiff, who appeared reluctant to perform it.

14.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

JOHN MCFARLAND

**SWORN TO** and **SUBSCRIBED** before me this _1 6_ day of June 2007.

NOTARY PUBLIC
My Commission Expires: MY COMMISSION EXPIRES FEB. 5, 2011

# EXHIBIT  G

# Affidavit of Linda Stewart

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **JAMES E. SLAUGHTER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **V.** | ) **CIVIL ACTION NO. 3:07-cv-366-MHT** |
| | ) |
| **RONALD W. HILYER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## AFFIDAVIT OF LINDA STEWART

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Linda Stewart, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Linda Stewart. I am over the age of nineteen and competent to make this affidavit. I have been employed as a nurse as a full-time employee of the Lee County Detention Facility for over five years. I am an L.P.N. and have been licensed for over twenty-years, having served as a nurse in the ICU and CCU in Cobb Hospital Emergency Room for fifteen-years. I am a Certified Correctional Health Professional by the National Commission on Correctional Health Care. I taught Nursing Assistance Clinicals for two years at Career Institute. I collected medical information for the law firm of Bellamy and Jones for three years, and I was employed as the personal nurse for Doctor Hoffman, in Phenix City, Alabama, for twelve-years, prior to my coming to the Lee County Detention Facility.

2.          I certify and state that the documents from Plaintiff's medical file provided to the Court which are attached to the Defendants' Special Report are true and correct copies of inmate records, kept at the Lee County Detention Center in the regular course of business. The records are in reverse chronological order. I am Custodian of these Records. I am familiar with the Plaintiff, James Slaughter, due to his incarceration in the Lee County Detention Facility.

3.          I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

4.          I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Also, while Plaintiff was incarcerated in the Lee County Detention Center, I followed all orders issued by doctors for the care and treatment of Plaintiff's finger. I know of no other employee or corrections officer of the Detention Center or medical professional treating Plaintiff who did not follow doctors' orders or follow the policy and procedures of the Lee County Detention Center.

5.          As a Detention Facility nurse, I have neither duty nor authority with regard to any non-medical issues. My sole duty and authority is with regard to medical care of inmates.

6.          It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Facility are entitled to a level of health care comparable to that available to citizens in the surrounding community, which will ensure their physical and emotional well-being.

7.         The Lee County Detention Center Policy and Procedures Manual states
the policy regarding Health Care Services in Section 11. According to Title 11.01, Lee
County Detention Center Policy and Procedures Manual, all medical services at the Lee
County Detention Center are to be delivered by a "licensed health care provider."
According to Title 11.01, ¶ 2, Lee County Detention Center Policy and Procedures
Manual, "No health care personnel or Detention Center officer or other employee of the
Sheriff's Department will ever summarily or arbitrarily deny an inmate's reasonable request
for medical services." I follow these procedures with respect to every inmate that sees me
for treatment, and I followed them with respect to Plaintiff and the treatment of his finger.

8.         Medical, dental, and mental health matters involving clinical judgments
are the sole province of the responsible physician, dentist, or psychiatrist or qualified
psychologist, respectively.

9.         Inmates are guaranteed access to all diagnostic, laboratory, or other
treatment services as directed by the responsible health care authority.

10.       It is the policy of the Lee County Sheriff's Office to allow inmates
incarcerated in the Lee County Detention Facility to request health care services at any
time. A nurse is present at the Detention Center and is available to assist inmates seven
days a week during normal business hours.  A nurse is on-call 24 hours during the week.
The contract physician, Dr. McFarland, is responsible for referring an inmate to a
specialist, should such specialized treatment be necessary.  For treatment other than
emergency treatment at a local hospital, a nurse may not refer an inmate to a specialist
without Dr. McFarland's evaluation of the inmate.

11.        Two methods may be utilized by inmates incarcerated in the Lee County

Detention Facility in order to secure health care services:

        a.        Verbal Request:    An inmate may make a verbal request for
emergency medical attention to any member of the Detention Center staff at any
time.

        b.        Written Request:  An inmate in need of any type of medical attention
may complete an Inmate Request Form seeking medical attention and forward it to
any member of the Detention Center staff.

12.        Requests for medical treatment will be accepted by members of the

Detention Facility staff at any time.

13.        When a request for medical treatment is made to a member of the Detention

Facility staff, the staff member receiving the request will notify the shift supervisor of the

inmate's request.  It is the shift supervisor's responsibility to ensure that the inmate's request

is attended to in a prompt and proper manner.  Any doubt as to whether an actual need exists

for medical treatment will be resolved in favor of the inmate and medical treatment will be

offered.

14.        Medical requests of an emergency nature are to be handled immediately.

15.        Lee County Sheriff's Office policy requires that inmates be informed of the

methods by which they may obtain medical treatment during the booking process.

16.        The Detention Facility nurses, under the direction of the Detention Facility

Administrator, are charged with the responsibility of obtaining appointments for inmates

with physicians in order that they may receive medical treatment or for scheduling times

when the treating physician may attend to health care needs at the Detention Facility.

17.        All health care rendered to inmates will, at the doctor's discretion, be

given privately to the inmate, outside the presence of a Detention Facility official.

Should the physician request, a Detention Facility officer will be present for any and all examinations the treating physician deems appropriate.

18.     To clarify the Plaintiff's present condition and contrary to the implication in his Complaint that I canceled his second operation, Plaintiff has received a second operation on his finger and now has a prosthetic knuckle. He is undergoing physical therapy with Dr. Ronald W. Hilyer, an Orthopedic Surgeon. Plaintiff's second surgery occurred on April 20, 2007. We do not tell inmates of such appointments ahead of time for security reasons; therefore, until the day before he was to go for the surgery, Plaintiff did not know when he would have the second operation. I do not know of any surgery for the Plaintiff that was scheduled for March 30, 2007, as contended by Plaintiff, nor did I cancel any such appointment.

19.     Treatment scheduling can change. The doctor's own schedule could change, thereby affecting when the surgery is performed. Or the jail's ability to meet the medical facility's schedule could affect the scheduling of an operation.

20.     A good example is the set of pre-surgery documents for Plaintiff's first surgery, which occurred on November 3, 2006. However, in the "Date of Procedure" blank on the pre-surgery form appears the date "10/13/06," which is crossed out and is replaced by the date ""11/1/06," which is handwritten above the crossed-out date. Neither date for the surgery is the correct one.

21.     As for the rest of Plaintiff's medical treatment of his finger that he received while at the Lee County Detention Center, it proceeded as follows. He was arrested and booked into the Lee County Detention Center on August 13, 2006, and I saw him the next day about a broken or dislocated finger (right pinky) that had been hit by a baseball bat

on July 4, 2006.  After I saw Plaintiff on August 14th about his finger, he saw

Dr. McFarland on August 15, 2006, when his finger was x-rayed.  After seeing the x-ray

results on August 16, 2006, I called Dr. McFarland who set up an appointment for

Plaintiff with an Orthopedic clinic.    However, before Plaintiff could go to that

appointment, he was released on August 17, 2006.  I informed Plaintiff that he needed to

get further treatment on his finger and that he had an appointment with an Orthopedic

clinic.    Plaintiff could have called the clinic to discover the date and time of the

appointment, he could have gone to the emergency room, and he could have gone to a

doctor or clinic of his own choice to have the finger treated.

22.    On September 9, 2006, Plaintiff was again arrested, and I discovered on

September 13, 2006 that nothing had been done to treat his finger.  On September 19,

2006, Plaintiff had a follow-up appointment with Dr. McFarland.      Because

Dr. McFarland has the duty of referring inmates of the Lee County Detention Center for

further treatment, I could not schedule a new appointment with Dr. Hilyer until Plaintiff

had seen Dr. McFarland.  At no time, did I tell Plaintiff that his medical treatment was

too expensive or costly.

23.    Dr. McFarland referred Plaintiff to Dr. Hilyer, an Orthopedic Surgeon with the

Orthopedic Clinic in Opelika, Alabama, who saw Plaintiff in early October 2006, and

determined that he required surgery on his finger.  Dr. Hilyer originally planned to

operate on Plaintiff's finger on a Friday, October 13, 2006.  However, before Plaintiff

could have that surgery, another finger was discovered to be infected, which precluded

surgery until that infection had been eliminated.  Dr. Hilyer performed the first surgery

on November 3, 2006.  Other than ensuring that Plaintiff prepared himself for the surgery

and that he was transported to the EAMC for the surgery, no Lee County Detention Center personnel had any involvement with that surgery.

24.     In October 2006, Plaintiff also had an incident in which he fell, but it did not involve his hand, and he did not hit his hand.

25.     After the surgery, Dr. Hilyer instructed Plaintiff in rehabilitation of his hand and finger, a process in which I and the other personnel at the Lee County Detention Center attempted to assist and encourage the Plaintiff. We also continued to send Plaintiff to Dr. Hilyer's Orthopedic Clinic for scheduled appointments during November and December of 2006 and into January 2007 for follow-up visits, physical rehabilitation, and treatment.

26.     Plaintiff complained of continued pain and inability to use his finger at the beginning of 2007. We advised him to continue with the rehabilitation that Dr. Hilyer had prescribed for him, like squeezing the foam ball that was given to him and other ROM (Range of Motion) exercises.

27.     Because of Plaintiff's continued complaints about his finger, I sent him to see Dr. McFarland, who on February 28, 2007 determined that he should see Dr. Hilyer again. Plaintiff was originally scheduled for an appointment with Dr. Hilyer to re-evaluate his finger on March 14, 2007, but that date was changed to March 21, 2007. On that date, Dr. Hilyer determined that Plaintiff needed another operation. Based on medical documents from Dr. Hilyer's office, it appears the original date scheduled for a second surgery was March 30, 2007; however, I do not have information as to whether the Lee County Detention Center was contacted by Dr. Hilyer's office to schedule Plaintiff for surgery on that date. I also do not know why it may have been changed;

however, unless an emergency is involved, it is not unusual for a scheduled treatment or surgery date to be changed from the original date planned.

28.    As discussed above, that date must have become impractical for some reason, and according to Lee County Detention Center medical records for Plaintiff, on April 5, 2007 Plaintiff was scheduled for surgery on April 20, 2007.  One of the "Notes" regarding Plaintiff's healthcare at the Detention Center has notations for two dates – April 19, 2007 and April 23, 2007.  I only have information as to the scheduling of Plaintiff's second surgery for April 20, 2007.  That document shows that his surgery was scheduled for the morning after April 19th and that he needed a follow-up appointment on April 23rd after the surgery.  Records from the East Alabama Medical Center also show that the surgery occurred on April 20, 2007.  Based on our security practice, we would not have told Plaintiff the date of his surgery until he needed to be medically prepared for that surgery, normally the day before.

29.    Plaintiff received a prosthetic knuckle in that surgery and has been undergoing rehabilitation with Dr. Hilyer at his Orthopedic Clinic since the surgery.  The Lee County Detention Center also aids and encourages Plaintiff in his rehabilitation, but rehabilitation requires Plaintiff to exercise his finger in a disciplined and consistent manner and his following Dr. Hilyer's instructions, like squeezing his foam ball and other hand exercises. When Plaintiff requires pain medication, we provide to him the medication prescribed by Dr. Hilyer or we provide him over-the-counter pain medication.

30.    Plaintiff was scheduled for a follow-up appointment with Dr. Hilyer on April 25, 2007; however, because on April 23, 2007, he complained that the tightness of his cast was causing him serious pain, I contacted Dr. Hilyer's office to obtain an earlier appointment for him, and he was able to be seen in Dr. Hilyer's office on the same day.

31.    Some of the terms and abbreviations in Plaintiff's medical records may not be familiar to laymen. For example, J-3 refers to Plaintiff, Hx = history, c/o = "complained of," Ultram is a pain medication, tx = treatment. To clarify a record for November 6, 2006, my reading of the written comments are that I went over all discharge instructions with Plaintiff & noted to check daily on Right Hand. His dressing was dry & intact and there was good capillary refill. Inmate has telephone while in corrections. Plaintiff is to take Lortab for pain. On a November 3, 2006 record, Dr. Hilyer wrote that Plaintiff's prognosis was "Clinically – good (poor R Hand)," and that he needed additional treatment. He wrote that Plaintiff was not to use his right hand and to keep the dressing clean, dry, and elevated. He also indicated that Lortab 5 was prescribed for Plaintiff's pain.

32.    To the best of my knowledge and belief, all Lee County Detention Center personnel, medical or corrections, followed the physicians' instructions with respect to the Plaintiff and the treatment of his finger.

33.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

LINDA STEWART

**SWORN TO** and **SUBSCRIBED** before me this _11_ day of July 2007.

Corey O Welch

NOTARY PUBLIC
My Commission Expires: _01-30-2011_

MY COMMISSION EXPIRES _01-30-2011_

# EXHIBIT  H

# Affidavit of Kelley Griffith

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

JAMES E. SLAUGHTER,      )
                      )

     Plaintiff,        )
                      )

V.                    )  CIVIL ACTION NO. 3:07-cv-366-MHT
                      )

RONALD W. HILYER, et al.,   )
                      )

     Defendants.     )

## AFFIDAVIT OF KELLEY GRIFFITH

STATE OF ALABAMA     )
                      )

COUNTY OF LEE      )

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Kelley Griffith, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Kelley Griffith. I am over the age of nineteen and competent to make this affidavit. I have been employed as a Correctional Nurse as a full-time employee of the Lee County Detention Facility since February of 2006. I am an L.P.N. and have been licensed for over nine years, having served as a critical care nurse in Hospitals and doctor's offices. Also, before working at the Lee County Detention Center, I worked as a nurse at the Mt. Meigs Youth Correctional Facility for approximately six months. I am a Certified Correctional Health Professional by the National Commission on Correctional Health Care.

2.      I familiar with the Plaintiff, James Slaughter, due only to his incarceration in the Lee County Detention Facility.

H

3.        I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures by anyone else at the Lee County Detention Center.

4.        I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Also, while Plaintiff was incarcerated in the Lee County Detention Center, I followed all orders issued by doctors for the care and treatment of Plaintiff's finger. I know of no other employee or corrections officer of the Detention Center or medical professional treating Plaintiff who did not follow doctors' orders or follow the policy and procedures of the Lee County Detention Center.

5.        As a Detention Facility nurse, I have neither duty nor authority with regard to any non-medical issues. My sole duty and authority is with regard to medical care of inmates.

6.        It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Facility are entitled to a level of health care comparable to that available to citizens in the surrounding community, which will ensure their physical and emotional well-being.

7.        The Lee County Detention Center Policy and Procedures Manual states the policy regarding Health Care Services in Section 11. According to Title 11.01, Lee County Detention Center Policy and Procedures Manual, all medical services at the Lee County Detention Center are to be delivered by a "licensed health care provider." According to Title 11.01, ¶ 2, Lee County Detention Center Policy and Procedures Manual, "No health care personnel or Detention Center officer or other employee of the

Sheriff's Department will ever summarily or arbitrarily deny an inmate's reasonable request for medical services." I follow these procedures with respect to every inmate that sees me for treatment, and I followed them with respect to Plaintiff and the treatment of his finger.

8.          Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.

9.          Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.

10.          It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Facility to request health care services at any time. A nurse is present at the Detention Center and is available to assist inmates five days a week during normal business hours. A nurse is on-call at other times during the week. The contract physician, Dr. McFarland, is responsible for referring an inmate to a specialist, should such specialized treatment be necessary. For treatment other than emergency treatment at a local hospital, a nurse may not refer an inmate to a specialist without Dr. McFarland's evaluation of the inmate.

11.          Two methods may be utilized by inmates incarcerated in the Lee County Detention Facility in order to secure health care services:

> a.     Verbal Request:   An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.

> b.     Written Request:   An inmate in need of any type of medical attention may complete an Inmate Request Form seeking medical attention and forward it to any member of the Detention Center staff.

12.          Requests for medical treatment will be accepted by members of the

Detention Facility staff at any time.

13.     When a request for medical treatment is made to a member of the Detention Facility staff, the staff member receiving the request will notify the shift supervisor of the inmate's request. It is the shift supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner. Any doubt as to whether an actual need exists for medical treatment will be resolved in favor of the inmate and medical treatment will be offered.

14.     Medical requests of an emergency nature are to be handled immediately.

15.     Lee County Sheriff's Office policy requires that inmates be informed of the methods by which they may obtain medical treatment during the booking process.

16.     The Detention Facility nurses, under the direction of the Detention Facility Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Facility.

17.     All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Facility official. Should the physician request, a Detention Facility officer will be present for any and all examinations the treating physician deems appropriate.

18.     To clarify the Plaintiff's present condition and contrary to the implication in his Complaint that Nurse Stewart canceled his second operation, Plaintiff has received a second operation on his finger and now has a prosthetic knuckle. He is undergoing physical therapy with Dr. Ronald W. Hilyer, an Orthopedic Surgeon. Plaintiff's second surgery occurred on April 20, 2007. We do not tell inmates of such appointments ahead

of time for security reasons; therefore, until the day before he was to go for the surgery, Plaintiff was not supposed to know when he would have the second operation.

19.    Obtaining an appointment for any type of treatment, particularly surgery, outside the Detention Center is difficult for several reasons. First, the administration of the Detention Center must schedule such appointments to ensure security is maintained, e.g., a corrections officer must go with the inmate and there must be no conflicts with other scheduled events and unscheduled incidents occurring at the Detention Center. Also, the n urses must coordinate the scheduling of any treatment outside the Detention Center with the Doctor's office and the hospital. If for any reason, rescheduling of such treatment is required, we have to begin the appointment setting and coordination process all over again.

20.    IN the case of the surgery on Plaintiff's finger, we had to reschedule both his first and his second surgery. Although his second surgery was originally scheduled for March 30, 2007, a conflict arose with another activity occurring in the Detention Center, and we had to begin the process of rescheduling Plaintiff for surgery. I did so, and Plaintiff's new date for the second surgery was April 20, 2007. Plaintiff's second surgery was never canceled.

21.    I do not know how Plaintiff would have known about the March 30th date for his surgery. However, I do know that we had a problem with this particular inmate, James Slaughter, discovering the dates of his appointments. When that occurs, we have to reschedule the appointment. If an inmate has enough lead time in knowing about his temporary release for a doctor's appointment, particularly if he has a contact outside the Detention Center feeding him information, he could potentially set up an escape attempt.

It could put a corrections officer at risk. We thought perhaps that Mr. Slaughter had a relative working at Dr. Hilyer's office who was feeding him information, and I contacted Dr. Hilyer's office by phone to inform the head nurse of that office of the problem.

22.    There are several facts that indicate Plaintiff did not take seriously the treatment and physical therapy he was given to perform regarding his finger. Dr. Hilyer had prescribed Ultram for pain for Plaintiff, and when he complained that his finger still hurt, we would offer to combine the Ultram with Tylenol. Plaintiff's reply was: "What f___in' good would that do?" Nurses at the Detention Center are not permitted to prescribe anything other than over-the-counter pain medication. No matter what we did for Plaintiff his normal attitude and comments to the nurses were abusive, sometimes physically threatening, and profane, i.e., he normally called us "f___in' bitches."

23.    Plaintiff's finger was slightly tilted (approximately 20 degree angle) *because* it had been broken, and it was still somewhat tilted even after his surgery. Both Dr. McFarland and I told Plaintiff that after a finger gets broken, it does not look the same. Once, when Plaintiff complained about the tilt to his finger, I asked if he had been doing his physical therapy, and he replied, "No."

24.    Plaintiff has asked me for tape to tape his pinky finger to the finger next to it because it hurt. I refused to give him the tape because such self-splinting of his finger would prevent him from accomplishing his physical therapy, which requires movement of the finger. physical therapy can be painful because of the movement needed to rehabilitate an injured part of the body. Plaintiff appeared to want a painless solution to his finger problem.

25.    Plaintiff has now received a prosthetic knuckle surgery and must undergo physical therapy to restore the use of his finger. There is no guarantee that the surgeries will allow Plaintiff to recover full use of his finger. In fact, it is possible Plaintiff's bones in his finger will have to be fused. I have heard of people with this type of broken finger having to get it amputated.. The Lee County Detention Center also aids and encourages Plaintiff in his rehabilitation, but rehabilitation requires Plaintiff to exercise his finger in a disciplined and consistent manner and his following Dr. Hilyer's instructions, like squeezing his foam ball and other hand exercises.

26.    To the best of my knowledge and belief, all Lee County Detention Center personnel, medical or corrections, followed the physicians' instructions with respect to the Plaintiff and the treatment of his finger.

27.    I swear, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements are made by drawing from my personal knowledge of the situation.

GRIFFITH, Kelley H. LPN

SWORN TO and SUBSCRIBED before me this _7_ day of July 2007.

NOTARY PUBLIC
My Commission Expires: 1/9/2011



# EXHIBIT  I

# Plaintiff's Jail Medical Records



### The Orthopaedic Clinic

☐ James R. Whatley, M.D.
☒ Ronald W. Hillyer, M.D.
☐ David W. Scott, M.D.
☐ Frazier K. Jones, M.D.
☐ Christopher D. Adams, M.D.
☐ Todd M. Sheils, M.D.

18 Medical Arts Center
121 North 20th Street
Opelika, Alabama 36801-5457
(334) 749-8303
1-800-327-6519

762-A East Glenn Avenue
Auburn, Alabama 36830
(334) 501-2290

I

**MEDICAL ARTS** *Pharmacy*
121-20th ST. Ph. (334) 745-5756 OPELIKA, ALA. 36801

**TAX RECEIPT**

**MEDICAL ARTS** *Pharmacy*
h ST. Ph. (334) 745-5756 OPELIKA, ALA. 36801

**TAX RECEIPT**

717862       Dr DR RONALD W HILLYER
MES SLAUGHTER----LCSO
CO DETENTION CTR                12/20/2006
g: TRAMADOL 50-MG TABS MK   Qty: 24
C: 00406-7171-05   Mfg: MALLINKRT PHARM
e:              $14.50
arged to LEE COUNTY SHERIFF DEPT   #217182

nature: |||||||||||||||||||||
              4000001666640

Rx 715001       Dr DR RONALD W HILLYER
JAMES SLAUGHTER----LCSO
LEE CO DETENTION CTR                11/03/2006
Drug: HYDROCODONE/APAP 5/500 TABS QT   Qty: 24
NDC: 00603-3881-32   Mfg: QUALITEST
Price              $14.70
Charged to LEE COUNTY SHERIFF DEPT   #217182

Signature: |||||||||||||||||||||
              4000001603230

**MEDICAL ARTS** *Pharmacy*
20th ST. Ph. (334) 745-5756 OPELIKA, ALA. 36801

**INSURANCE RECEIPT**

**MEDICAL ARTS** *Pharmacy*
121-20th S h. (334) 745-5756 OPELIKA, ALA. 36801

**TAX RECEIPT**

26103       Dr DR RONALD W HILLYER
ES SLAUGHTER----LCSO
CO DETENTION CTR                04/20/2007
: HYDROCODONE/APAP 5/500 TABS QT   Qty: 24
: 00603-3881-28   Mfg: QUALITEST
for: LORTAB 5MG/500MG TABS
              $14.70
ged to LEE COUNTY SHERIFF DEPT   #217182

ture: |||||||||||||||||||||
              4000001840970

Rx 724090       Dr DR RONALD W HILLYER
JAMES SLAUGHTER----LCSO
LEE CO DETENTION CTR                03/21/2007
Drug: TRAMADOL 50-MG TABS MK   Qty: 24
NDC: 00406-7171-05   Mfg: MALLINKRT PHARM
Price              $14.50
Charged to LEE COUNTY SHERIFF DEPT   #217182

Signature: |||||||||||||||||||||
              4000001797400

**MEDICAL ARTS** *Pharmacy*
121-20th ST. Ph. (334) 745-5756 OPELIKA, ALA. 36801

**TAX RECEIPT**

Rx 716107       Dr DR RONALD W HILLYER
JAMES SLAUGHTER----LCSO
LEE CO DETENTION CTR                11/22/2006
Drug: TRAMADOL 50-MG TABS MK   Qty: 24
NDC: 00406-7171-05   Mfg: MALLINKRT PHARM
Price              $14.50
Charged to LEE COUNTY SHERIFF DEPT   #217182

Signature: |||||||||||||||||||||
              4000001627420

Your next Appointment

☐ Monday ☐ Tuesday ☒ Wednesday ☐ Thursday ☐ Friday

Date _____June 70_____

Time _____1:50_____

☒ Opelika     ☐ Auburn

<u>PART 1</u>    To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: _Slaughter, James_

2. Date of Examination: _05/30/07_

3. Time of Examination: _15 30_

4. Reason treatment was needed: _See Dr. Hillyer & PT_

_____

5. Did Inmate request treatment? ✓ Yes___ No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? ✓ Yes___ No

7. If yes, to what location? _Dr. Hillyer RSD 190_

8. Was inmate treated at the jail? ✓ Yes___ No

9. Who examined the inmate? _Dr. McFarland w___

10. Corrections Staff Signature and title: _Stewart (Jail)_

---

<u>PART 2</u>    To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _____

2. Prognosis: _____

3. Is additional treatment needed? ✓ Yes___ No If so, please specify if other than

   medication: _____

   _____

4. Medication prescribed: _____

   _____

5. Special instructions for administration: _Work on Mobilization_

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders;

   other): _Return 3 wk._

_5/30/07_              _435 pm_  _6/11/_  _RW Hillyer_
Date                   Time            Health Care Provider Signature/ Title

_6/7/07 Nxt Monday @ 1600  RSD #18  PT_
_1t appt._

L_ _OUNTY SHERIFF'S DEPARTME_ _
_RD OF MEDICAL EXAMINATIO_

**PART 1**     To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: _Slaughter, James_

2. Date of Examination: _5/16/07_

3. Time of Examination: _3:10 pm_

4. Reason treatment was needed: _Flu_

_____

5. Did Inmate request treatment? ___Yes __✓__ No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? __✓__Yes ___No

7. If yes, to what location? _Dr. Hillyer @ Ortho Clinic_

8. Was inmate treated at the jail? __✓__Yes ___No

9. Who examined the inmate? _Dr. McFarland_

10. Corrections Staff Signature and title: _[signature]_

_____

**PART 2**     To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _S/P Prosthesis (R) 5th meta-carpal_

2. Prognosis: _Fair_

3. Is additional treatment needed? __✓__Yes ___No If so, please specify if other than

   medication: _OT for motion_

   _____

4. Medication prescribed: _None_

   _____

5. Special instructions for administration: _OT for motion_

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders;

   other): _follow up 2 wks_

_5/16/07_          _4 pm_          _[signature]_
Date               Time            Health Care Provider Signature/ Title

_noted [signature]_

# THE COUNTY SHERIFF'S DEPARTMENT
## RECORD OF MEDICAL EXAMINATION

**PART 1**    To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: Slaughter James

2. Date of Examination: 5/2/07

3. Time of Examination: 3:30pm

4. Reason treatment was needed: re cast / follow up from last week

5. Did Inmate request treatment? ___ Yes ✓ No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? ✓ Yes ___ No

7. If yes, to what location? Dr. Hillyer

8. Was inmate treated at the jail? ✓ Yes ___ No

9. Who examined the inmate? Dr. McFarland

10. Corrections Staff Signature and title: _____

---

**PART 2**    To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _____

2. Prognosis: Fair

3. Is additional treatment needed? ✓ Yes ___ No If so, please specify if other than medication: Casting

4. Medication prescribed: Septra DS / Keflex

5. Special instructions for administration: _____

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders; other): _____

5/2/07 _____ _____
Date         Time         Health Care Provider Signature/ Title

PART 1        To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: _Slaughter, Jamus_

2. Date of Examination: _4/23/07_

3. Time of Examination: _1500_

4. Reason treatment was needed: _J-3 c/o ↑ Large pain day_
_The Tyll finger Swollen 3 days post Dr Surg._

5. Did Inmate request treatment? _✓_Yes___No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? _✓_Yes___No

7. If yes, to what location? _Dr. Hellgun's Office_

8. Was inmate treated at the jail? _✓_Yes___No

9. Who examined the inmate? _Michael_

10. Corrections Staff Signature and title: _Stewart In CCHP_

PART 2        To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _____

2. Prognosis: _Fair_

3. Is additional treatment needed? ___Yes___No If so, please specify if other than

medication: _____

_____

4. Medication prescribed: _____

_____

5. Special instructions for administration: _____

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders;

other): _Re Cast Return 1 wk_

_4/23/07_        _3:45_        _____
Date                Time            Health Care Provider Signature/ Title

## EAST ALABAMA MEDICAL CENTER
### Discharge Instructions Following General Orthopedic Surgery

1. You may have some nausea or vomiting a few times after leaving the hospital. We recommend you resume eating slowly with mild, bland food. Report any persistant nausea and vomiting to your doctor.

2. You may increase your activity as tolerated.

3. Keep your dressings dry for _____ hours.

4. You may remove the dressings in _____ hours and take a shower.

*Do Not Remove Per Dr's Orders Chart*

5. Please keep arm/hand or leg/foot elevated above heart level for first 24 hours after surgery.

6. Wiggle fingers or toes on the surgical site for 1 minute at least 10 times a day for the first 24 hours after surgery.

7. You may apply ice bag to your surgery site for the first 24 hours.

8. No heavy lifting.

9. Call your surgeon for any excessive drainage/bleeding, foul smelling drainage, nausea or vomiting, severe pain not relieved by your pain medication, or fever greater than 101°.

10. Return to work according to your surgeon's instructions.

11. Follow any verbal instructions given to you or your responsible person.

12. You may experience occasional dizziness or become drowsy for the 24 hours after you have received medication or anesthesia. Therefore, you **should not drive** or drink alcoholic beverages.

13. You may feel tired, have a sore throat, neck discomfort, or minor muscle stiffness. Please rest and call your surgeon if you have any questions.

14. If you receive general anesthesia, it is important that you cough and deep breathe at least every two (2) hours while awake for two (2) days.

---

**I have received written instructions and verbalized understanding of the discharge instructions for my surgical procedure.**

Patient: _____    Date: _____

Patient given a copy [ ] _____

Nurse Educator: _____    4/20/07

Responsible Driver: _____    Date: 4/20/07

Discharge Nurse: _____BCDDI_____

Surgeon's Name and Phone #: ___749-8303___

Appointment Date and Time: 4/25/07 @ 0840

Opelika Office

07109-00169          862537
SLAUGHTER, JAMES E
LOC:OS   DOB:10/06/63   M43Y
HILLYER, RONALD W          36801
Adm:04/20/07

Copyright© 1999 VHI

**HAND CARE - 7 Edema Reduction (Retrograde Massage)**

A. Enclose tip of finger with either hand and slide toward wrist.

B. For larger areas, massage inward the body in one direction only.

Repeat _____ times.
Do _____ sessions per day.



**FINGER - 36 DIP Flexion (Active Blocked)**

Hold _____ finger firmly at the middle so that only the tip joint can bend.

Hold _____ seconds.

Repeat _____ times.
Do _____ sessions per day.



**FINGER - 41 Abduction / Adduction (Active)**

With hand flat on table, spread all fingers apart, then bring them together as close as possible.

Repeat _____ times.
Do _____ sessions per day.



---

**HAND CARE - 12 Scar Tissue Massage**

Place pad of fingertip on scar area. Apply steady downward pressure while moving in circular fashion. Use another finger on top to assist. Repeat until entire scar has been covered.

Repeat _____ times. Do _____ sessions per day.



**FINGER - 16 PIP Flexion (Active Blocked)**

Hold large knuckle straight using other hand. Bend middle joint of _____ finger as far as possible.

Hold _____ seconds.

Repeat _____ times.
Do _____ sessions per day.

**THUMB - 29 Opposition (Active)**

Touch tip of thumb to nail tip of each finger in turn, making an "O" shape.

Repeat _____ times. Do _____ sessions per day.



---

**FINGER - 37 MP/PIP/DIP Composite Flexion (Passive Stretch)**

Use other hand to bend _____ finger at all three joints.

Hold _____ seconds.

Repeat _____ times.
Do _____ sessions per day.

**FINGER - 34 Flexor Tendon Gliding (Active Full Fist)**

Straighten all fingers, then make a fist, bending all joints.

Repeat _____ times. Do _____ sessions per day.



**FINGER - 54 Grip Strengthening (Resistive Putty)**

Squeeze putty using thumb and all fingers.

Repeat _____ times.
Do _____ sessions per day.

PART 1    To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: _Slaughter, James_

2. Date of Examination: _4/20/07_

3. Time of Examination: _1000  AM_

4. Reason treatment was needed: _Out pt. Surg ī D. Hiley_

5. Did Inmate request treatment? ✓ Yes ___ No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? ✓ Yes ___ No

7. If yes, to what location? _EAMC  Out patient Surg._

8. Was inmate treated at the jail? ✓ Yes ___ No

9. Who examined the inmate? _D. Feb  McFarlan P ns_

10. Corrections Staff Signature and title: _____

PART 2    To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _arthroplasty Rt 5th MCP_

2. Prognosis: _____

3. Is additional treatment needed? X Yes ___ No If so, please specify if other than

medication: _Follow-up appointment 4/25/07 at 0840_

4. Medication prescribed: _lortab ī every 4 hours._

5. Special instructions for administration: _See sheet_

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders;

other): _Rest x 24 hours_

_4/20/07_        _1340_        _Barrington RN_
Date              Time         Health Care Provider Signature/ Title

## EAMC Medication Form

Fold this form and keep it in your wallet                    Date Form Started: 04/20/07

| Name: SLAUGHTER, JAMES E | Address: |
|---|---|
| Phone Number: | |
| Birthdate: 10/06/63 | |
| Emergency Contact / Phone Number: | |

**Immunization Record**

| Tetanus: | Flu Vaccine: | Other: |
|---|---|---|
| Pneumonia Vaccine: | Hepatitus Vaccine: | |

**Allergic To / Describe Reaction:**

*If any medications you are currently taking are not listed below, notify your nurse.*
*This includes prescription, over-the-counter, herbals, and medications taken as needed.*

| <u>Date</u> | <u>Name of Medication</u> | <u>Directions</u> | <u>EDUC</u> |
|---|---|---|---|
| 04/20/07 | NO HOME MEDS | , , | |
| 04/20/07 | Lortab 5/500 | 1 tab(s), By Mouth, As Needed | |

# Pain Management Information

**The Purpose of this Information Sheet is to help you:**

- Learn why pain control is important for your recovery and comfort
- Learn what you can do to help treat your pain.

**What Is Pain ?**   Pain is a feeling that tells you something may be wrong in your body.  Pain may be just a nuisance, like a mild headache.  At other times, such as after an operation or procedure, pain doesn't go away.  Nurses, doctors and other caregivers will ask about your pain.  They want you to be comfortable and they want to know if something is wrong.  Be sure to tell your doctor, nurses or caregiver when you have pain.

## Why is Pain Control Important?
With effective pain control, you can eat, sleep and perform daily activities to improve your condition.

## Pain Control Can Help You
1. Maintain Comfort
2. Get your strength back quicker
3. Actively participate in treatments
4. Get well faster
5. Return to normal activities sooner

**What you can do to control Pain?**  Everyone experiences pain differently.  Tell your caregiver how you feel.  Rate your pain from 0 (NO PAIN) to 10 (WORST PAIN).  **Use the pain scale below:**



0- No Pain    1-2 Mild    3-4 Moderate    5-6 Bad    7-8 Severe    9-10 Worst

**DRUG TREATMENT:**   Pain medicine may be given as a pill, shot or in your vein.  You should take pain medication as ordered by your doctor on a regular schedule or at the first sign of pain. Pain is easier to control when it is mild. The goal is to **manage** pain.   It is important to let your doctor know how much and what kind of pain you are having so you will receive the medication that is best for you.

**Pain medications may include:**
- Medications like aspirin, acetaminophen or ibuprofen, reduce swelling and soreness to help relieve mild to moderate pain. These medicines may decrease the need for a stronger medication.
- Medications like morphine and codeine, are often used after surgery or for moderate to severe pain. Some people worry about taking these type medications. You do not need to be afraid to take these agents to treat pain.
- Local anesthetics may used at the site of pain or be given through a small tube in your back to block the nerves that transport pain signals.
- Antidepressants or anticonvulsants can be used to help with tingling or burning pain. Antianxiety drugs may be used to treat muscle spasms and pain.  Steroids decrease swelling to help relieve pain.

**NON-DRUG TREATMENT:**      There are many non-drug pain treatments that may relieve your pain or help your pain medication work better.  Ask about the ones you think might help you.
- Relaxation: deep breathing exercises; imagery;  massage; music or relaxation tapes
- Physical agents: hot or cold packs, massage, pressure or TENs (transcutaneous electrical nerve stimulation) can help with pain. They may act to block the nerves that transport pain signals or alter the flow of blood to the affected area.

**Remember, you are the key to good pain control. Talk with your doctor, nurse or pharmacist to determine if medicine, non-drug treatments or a combination will best control your pain.**

EDU0002-0802-1-1

Please give this document to the patient or a family member.

Case 3:07-cv-00366-MHT-TFM    Document 12-4    Filed 07/11/2008    Page 4 of 5

NAME: PUGH, AUGUSTUS JAMES E
ACCT: 07109-00169
HIM: 862537

# East Alabama Medical Center
# Patient's Rights & Responsibilities

**East Alabama Medical Center, its physicians, nurses and support staff assure you (the patient) the right:**

1. to treatment without discrimination as to race, color, religion, sex, national origin or source of payment, except for fiscal capability;

1. to considerate and respectful care;

2. to be involved in care planning and treatment, to request treatment, to refuse treatment to the extent permitted by law, and to be informed of the medical consequences of your action;

3. to formulate advance directives, e.g., living will, and to have the hospital and doctors who provide care comply with these directives.

4. to know the name and function of any person providing treatment to you;

5. to obtain complete current information about your care, in terms that can be easily understood. In cases where it is not medically advisable to give you such information, the information will be made available to an appropriate person on your behalf;

6. to privacy to the extent consistent with providing adequate medical care to you, including discreet discussion of your case and examination by appropriate health care personnel;

7. to receive care in a safe setting and to be free from all forms of abuse or harassment;

8. to privacy and confidentiality of all records pertaining to your treatment and to access information contained in your record within a reasonable time frame;

9. to be free from any form of restraint that is not medically necessary to improve your well-being;

10. to appropriate assessment and management of your pain;

11. to examine and receive an explanation of your bill, regardless of the source of payment;

12. to request a transfer to another room if another patient or visitor in the room is unreasonably disturbing;

13. to consult with additional specialists at your own request and expense;

14. to voice grievances and recommend changes in policies and services to EAMC's staff without fear of reprisal.

15. to file unresolved grievances with the Alabama Quality Assurance Foundation (1-800-760-4550) or with the State Department of Public Health (1-334-206-5123).

East Alabama Medical Center requests the cooperation of its patients to ensure individualized, quality patient care. We encourage you to participate in the course of your treatment by making your needs and concerns known to the professionals rendering care and treatment. Before you consent to treatment, be sure to ask any questions you may have about your diagnosis, treatment, or procedure proposed, the risks, if any, and the anticipated outcome. We believe an informed patient is a secure patient.

**It is your (the patient's) responsibility:**

1. to provide the physicians and hospital personnel with accurate information about present symptoms, past illnesses, hospitalizations, medications, and other matters related to your health;

2. to follow both the treatment plan recommended by your physician and the hospital's rules and regulations affecting your care and conduct, including instructions of nurses and other health professionals as they carry out your physician's orders;

3. to accept responsibility for your actions should you refuse treatment or should you choose not to follow your physician's orders;

4. to be considerate of other patients, by observing no-smoking regulations, controlling the noise of television and radios, and observing the visiting hours while limiting the number of your visitors to two at a time;

5. to be respectful of the hospital personnel who are dedicated to caring for you;

6. to refrain from taking supplies, linens or equipment from East Alabama Medical Center;

7. to promptly pay your bills, provide insurance information, and direct any questions you may have about your hospital bill to Patient Accounting.

**If, during the course of your stay at East Alabama Medical Center, there is a problem or concern you or your family wishes to share regarding care, treatment, services, or patient safety, simply speak up and it will be investigated and addressed. You can report your problem or concern by the following ways:**
- **call the Complaint Line at 528-3281**
- **speak to a nurse supervisor**
- **call the Bed Capacity Center at  528-4490**
- **go to our web site at www.eamc.org**

_____ / ___ / ___ / _____        **Surgery Date:** _____
  Month     Day  Year  Time

1. You will be called **the day before your surgery** after 1:00 pm and be given the time for you to be at the hospital. If you have not received a telephone message from the hospital by 7:00 pm, please call **Toll Free 1-888-622-3262 before 9:00pm**. If your surgery is on Monday, we will call you on Friday afternoon.
2. <u>DO NOT</u> eat or drink anything, including water, gum, or food, after midnight prior to surgery or the morning of surgery, unless otherwise directed by your surgeon.
3. If you take medications every morning for blood pressure, Parkinson Disease, heart, thyroid, seizures, acid reflux or breathing, please take only these the morning of your surgery with a sip of water. <u>DO NOT</u> take insulin or oral diabetic medicine unless instructed to do so by your surgeon. Bring all medications in their bottles (including insulin) to the hospital with you.
4. ☐ Bathe or shower the night before and/or the morning of your surgery using an antibacterial soap such as Dial or Zest.
   ☐ Use the surgical scrub brush provided to you by the registration nurse at the time of your presurgical registration session at East Alabama Medical Center. Follow the written preoperative bathing instructions the night before your surgery using the scrub brush provided to you. (This brush contains Chlorahexidine. Do not use if you have known allergies to this product.)
5. Do not wear makeup, false eyelashes, rings, jewelry, wigs, body piercings, lotions and creams. You may use deodorant. You will be required to remove dentures, partials, hearing aides and contacts prior to surgery. Contact lens wearers please bring case and solution.
6. Leave all valuables at home. We cannot be responsible for loss. **Please bring co-pay if one is due and has not been paid.**
7. Dress in loose-fitting clothing and low-heeled shoes.
   - **Orthopedic patients must remove all nail polish if having hand/arm or foot/leg surgery.**
8. For infants, bring at least 2 bottles, with nipples, of formula or favorite liquid. You may also bring a special toy, blanket, pacifier, or sippy cup.
9. If you are to be admitted to hospital and want a private room, tell the admission nurse.
10. You must arrange to have a responsible person to drive you home. This person is <u>**required**</u> to stay in the surgical waiting area to talk with your surgeon and receive discharge instructions for you. Please arrange to have a responsible adult stay with you the first 24 hours after your surgery if you are going home the day of surgery.
11. If you have any questions concerning your surgery, call your surgeon.

**I have received written instructions and verbalized understanding of pre-op instruction.**

_____        _____
Nurse's Signature        Patient's Signature / Significant Other

☐ **Copy given to patient**

**USEFUL TELEPHONE NUMBERS:** Surgical Care Unit    **334/528-2007**  6am – 5pm
                               The Surgery Center  **334/528-4430**  6am – 5pm

**EAST ALABAMA MEDICAL CENTER**
**PRE-OPERATIVE SURGERY INSTRUCTIONS**
**THE SURGERY CENTER/SURGICAL CARE UNIT**
   **23 Hour Observation / AM Admits**
EDU0027-0206-1-1

Patient Identification

## EAST ALABAMA MEDICAL CENTER
### Discharge Instructions Following General Orthopedic Surgery

1. You may have some nausea or vomiting a few times after leaving the hospital. We recommend you resume eating slowly with mild, bland food. Report any persistant nausea and vomiting to your doctor.

2. You may increase your activity as tolerated.

3. Keep your dressings dry for _____ hours.

4. You may remove the dressings in _____ hours and take a shower.

5. Please keep arm/hand or leg/foot elevated above heart level for first 24 hours after surgery.

6. Wiggle fingers or toes on the surgical site for 1 minute at least 10 times a day for the first 24 hours after surgery.

7. You may apply ice bag to your surgery site for the first 24 hours.

8. No heavy lifting.

9. Call your surgeon for any excessive drainage/bleeding, foul smelling drainage, nausea or vomiting, severe pain not relieved by your pain medication, or fever greater than 101°.

10. Return to work according to your surgeon's instructions.

11. Follow any verbal instructions given to you or your responsible person.

12. You may experience occasional dizziness or become drowsy for the 24 hours after you have received medication or anesthesia. Therefore, you **should not drive** or drink alcoholic beverages.

13. You may feel tired, have a sore throat, neck discomfort, or minor muscle stiffness. Please rest and call your surgeon if you have any questions.

14. If you receive general anesthesia, it is important that you cough and deep breathe at least every two (2) hours while awake for two (2) days.

*(handwritten: Do Not Remove Per Drs Orders Chart)*

**I have received written instructions and verbalized understanding of the discharge instructions for my surgical procedure.**

| | |
|---|---|
| Patient: | Date: |
| Patient given a copy: | |
| Nurse Educator: | 11/20/07 |
| Responsible Driver: | Date: 11/20/07 |
| Discharge Nurse: BCDD | |
| Surgeon's Name and Phone #: 749-8303 | |
| Appointment Date and Time: 4/20/07 @ 0840 Opelika Office | |

07109-00169          862537
SLAUGHTER, JAMES E
LOC:OS  DOB:10/06/63  M43Y
HILLYER, RONALD W
Adm:04/20/07          36801

# LEE COUNTY DETENTION CENTER
## MEDICAL CHARGE FORM
### (FORM #33)

INMATE NAME _Slaughter, Sam_

DATE OF BIRTH _____     RACE/SEX _____

SOCIAL SECURITY# _____     CELL _E-1_

## ***SERVICES & FEES***

☐ SICK CALL                          $10.00
☐ DOCTOR VISIT                       $10.00
☐ DENTIST VISIT                      $10.00
☑ PRESCRIPTION _Mental_              $3.00
☐ FOLLOW-UP VISIT _Dr. Guy_          N/A

TOTAL OF MEDICAL SERVICES     $ _3.00_
RENDERED

# MEDICAL VERIFICATION SECTION

Authorized Nursing Staff Signature & Date _____ 4/20/7

Inmate Signature & Date _____

## Inmate Account Payable Clerk Signature & Date

☐ PLEASE CHECK IF INMATE IS INDIGENT TO PAY THE ABOVE CHARGES.

☐ PLEASE CHECK IF INMATE IS ABLE TO PAY THE ABOVE CHARGES.

FORM: LCS-DC33 (9/02)

**East Alabama Medical Center**
2000 Pepperell Parkway
Opelika, Alabama 36801

| | |
|---|---|
| **SLAUGHTER, JAMES E** | Admit Date/Time: 4/20/2007 10:22:00 |
| MRN: 0000862537 | Discharge Date/Time: 4/20/2007 23:59:00 |
| Financial #: 0710900169 | Location: OS |
| DOB: 10/6/1963    Age: 43 years   Sex:Male | Patient Type: OPS |
| | Attending Dr.: **HILLYER, RONALD W** |

## Operative Report

Operative Report

**PATIENT NAME:**                    Slaughter, James E.

**DATE OF PROCEDURE:**                04/20/2007

**OPERATIVE PROCEDURE:**              Ascension prosthesis right fifth metacarpal phalangeal joint.

**SURGEON:**                         Ronald W Hillyer, MD

**FIRST ASSISTANT:**                 Scott Benson, PA

**FIRST ASSISTANT IN ROOM TIME:**    1133

**FIRST ASSISTANT OUT ROOM TIME:**   1253

**FIRST ASSISTANT OPERATIVE DUTIES:** The patient was placed supine on the operating table, and after adequate anesthesia was induced, the tourniquet was placed on the right upper extremity. The right arm was prepped and draped in sterile fashion. The arm was exsanguinated and tourniquet pressure was elevated. The surgeon then made a skin incision over the MCP joint of the right fifth finger. Dissection was taken down to the joint. Two right angle retractors were placed by the first assistant and held by the surgeon. Used an osteotome and the ascension guide to make his proximal and distal templated cuts.  The surgeon then broached proximally and distally. Trial components were placed to confirm appropriate sizes.  The final prosthesis was then placed. The capsule was repaired by the surgeon with 2-0 PDS. The skin was closed with 4-0 nylon. A sterile dressing was applied. The patient was placed in an ulnar gutter cast, and the patient was returned to the hospital stretcher in stable condition.

**DICTATED BY:** Scott Benson, PA

| | |
|---|---|
| DP: | Ronald W Hillyer, MD |
| TR: | crc |
| DD: | 04/20/2007 4:18 P |
| DT: | 04/20/2007 4:47 P |

JUN-21-2007 11:23 From:EAMC 3345281598 To:334 737 3669 P.3??

Case 3:07-cv-00366-MHT-TFM Document 12-4 Filed 07/11/2007 Page 19 of 45

**East Alabama Medical Center**

Due: 879631
Job# 000054460
cc: Scott Benson

Electronically Signed By: RONALD W HILLYER
On 04/23/07 06:43

DD: 04/20/07 TD: 16:18

CC: MORRIS SCOTT BENSON

Operative Report

**PATIENT NAME:** Slaughter, James E.

**DATE OF OPERATION:** 04/20/2007

**PREOPERATIVE DIAGNOSIS:** Chronic dislocation metacarpophalangeal joint right 5th finger.

**POSTOPERATIVE DIAGNOSIS:** Chronic dislocation metacarpophalangeal joint right 5th finger.

**PROCEDURE PERFORMED:** Ascension prosthesis right 5th finger.

**SURGEON:** Ronald W. Hillyer, MD

**ASSISTANT:** Scott Benson, PA

**SUMMARY:** The patient was placed on the operating table in the supine position. General anesthesia was performed by anesthesia as the patient as uncooperative with brachial block. Right arm was prepped and draped in a sterile manner. The tourniquet was applied to the right proximal arm. After exsanguination, the tourniquet was inflated. A Bruner incision was made over the dorsum of the metacarpophalangeal joint of the little finger. Incision was carried through the skin and subcutaneous tissue. Extensor tendon was retracted. The joint was cleared. It was noted that there was a significant amount of shortening with the proximal phalanx going beneath the metacarpal. The metacarpal head was removed to expose the proximal end of the proximal phalanx then both were tailor made for Ascension prosthesis. It was elected to use the proximal interphalangeal prosthesis as the fitting was better. Good flexion and extension of the metacarpophalangeal joint was noted, had stiffness in the proximal interphalangeal joint when the finger was exercised in order to try to gain mobility there. The extensor mechanism was imbricated in order to tighten the joint capsule. Skin was closed with interrupted #4-0 nylon. The skin was closed with interrupted #4-0 nylon. The patient tolerated the procedure well and left the operating room in good condition.

DP: Ronald W Hillyer, MD
TR: sgn
DD: 04/20/2007 12:31 P
DT: 04/20/2007 12:58 P

Print Date/Time: 6/21/2007 8:11 AM

MRN: 0000862517
Financial #: 0710900169

**SLAUGHTER, JAMES E**

Page 2 of 3

**East Alabama Medical Center**

Doc: 879513
Job#  000054376
cc:

Electronically Signed By: RONALD W HILLYER
                On 04/20/07 13:43

DD: 04/20/07  TD: 12:31

MRN:        0000862537
Financial #: 0710900169
              **SLAUGHTER, JAMES E**

# NOTES

NAME _Slaughter, James_    SS# _23X-66-6973_

DOB: _10/6/63_    AGE: _43_    SEX: _M_    RACE _B_

DRUG ALLERGIES: _Ø_    TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _Out pt Surg._

_in Am_

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT: _Hospital Out pt Surg. Calley_

_Want Over Medical H/P_

_instructs 9 wm J-3_

_time 1000 Am_

PLAN: _Inform nurse J.3 Still_ _____

_Cust on will know in am_

_4/23/07 J.3 C/o that Jejri nose purple under dry tape_
_not to be removed J.3 he Capillary refill also but Jng_
_slow Love on total cyst c Dr Halley 4/25/07_ _____
_office Inform Barber L/D to Call Back_ _____.

REFER TO: ___ A PHYSICIAN ___ MENTAL HEALTH ___ DENTAL ___

SIGNATURE _____ TITLE _Lpn_ DATE _4/19/__ TIME _____
_@ 1300 Barbara J Dr Halley office Call See J-3_
_in office today @ 1500_ _____

# NOTES

NAME Slaughter, James        SS# 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

DOB: 10/6/63    AGE: 43    SEX: m    RACE B

DRUG ALLERGIES: none        TETNUS:

NATURE OF PROBLEM OR REQUEST: F/u after visit
c̄ Dr. Hillyer yesterday

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT:

PLAN:

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____    TITLE MD    DATE 3/23/-7    TIME 6 9 24

JOHN H McFARLAND MD
AM8104894
AL 11404

4/5/07 rescheduled Surg for
Friday 4/20/07

**PART 1**    To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: _Slaughter, James_

2. Date of Examination: _3/21/07_

3. Time of Examination: _1350_

4. Reason treatment was needed: _Re- Eval. Finger from_

_Surg._

5. Did Inmate request treatment? ✓ Yes___No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? ✓ Yes___No

7. If yes, to what location? _Dr. Hillyer's Office_

8. Was inmate treated at the jail? ✓ Yes___No

9. Who examined the inmate? _Dr. John McFarlay_

10. Corrections Staff Signature and title: _____

**PART 2**    To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _History + Physical done today_

2. Prognosis: _Guarded_

3. Is additional treatment needed? ✓ Yes___No If so, please specify if other than

medication: _____

_____

4. Medication prescribed: _Ultram 50 mg q 4 h prn pain_

5. Special instructions for administration: _need Fusion MCP (R) 5th_ _ascension vs Swanson prosthesis_

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders;

other): _Wear flitter splint_

_3/21/07_ _____ _W Hillyer_
Date         Time         Health Care Provider Signature/ Title

_3/21/07 43pm Notified Major Torbert_

# MEDICATION SHEET - ADMINISTRATION RECORD

MAR 0 0 2007

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Decorel Cold Tabs ii Bid x 7 days 3-1-07 | 0900 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | 1 | | 2 | | 3 | 3 | 4 | 4 | 5 | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |
| | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 21 | 22 | 22 |
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |
| | 23 | 23 | 24 | 24 | 25 | 25 | 26 | 26 | 27 | 27 | 28 | 28 | 29 | 29 | 30 | 30 | 31 | 31 | | | | |
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |

STARTING FOR ____ THROUGH ____

Physician  M.D. Protocol

. Physician

ergies

Telephone No.
Alt. Telephone
Rehabilitative Potential
Medical Record No.

agnosis

| Medicaid Number | Medicare Number | Approved By Doctor: By Stewart Lpn / Wheeler | Date 3-1-07 |
|---|---|---|---|
| | | D.O.B. | Sex F | Room 52 | Patient Code | Admission Date |

RESIDENT  Slaughter, James

I hereby authorize the Lee County Sheriff's Office to use, disclose and/or obtain my health information as follows (check all that apply):

| ( ) use the following health information maintained by Lee County Sheriff's Office. | ( ) disclose the following health Information to: *LEE COUNTY DETENTION CENTER* P.O. BOX 2407 OPELIKA, AL 36803 | ( ) obtain the following health information from: _Dr Helgui_ |

Specific description of the health information to be used/disclosed/obtained (include dates of service, type of service, etc) : _LEE COUNTY DETENTION CENTER_ _P.O. BOX 2407_ _all ing from_ _OPELIKA, AL 36803_ _Dgin Stay_

This health information is used/disclosed/obtained for the purpose (if Authorization requested by the patient put: "At the request of the individual"): _Cont Trp I Dr McFarland_ _Jail mate refercal_

I understand that this health information may include information regarding drugs and alcohol, human immunodeficiency virus test results, and psychotherapy notes.

If the disclosure is for marketing purposes, will the Lee County Sheriff's Office directly or indirectly receive remuneration for the disclosure of health information? Yes ___ No ___ N/A ___.

By providing this Authorization, I understand as follows:

I understand that this Authorization is voluntary. I may refuse to sign this Authorization and my treatment and/or payment obligations will not be affected.

1. I understand that this Authorization is voluntary. I may refuse to sign this Authorization and my treatment and/or payment obligations will not be affected.
2. I understand that the health information to be released may be subject to re-disclosure by the recipient of the health information and no longer protected by the Federal Privacy Rules.
3. I understand that I may revoke this Authorization at any time by notifying the Lee County Sheriff's Office in writing, but if I do, it will not have any effect on uses or disclosures prior to the receipt of the revocation.
4. I understand that I will receive a copy of this Authorization form after I sign it.
5. I understand that this Authorization will expire on ___/___/___(MM/DD/YR) or upon the following event (if for research put "None" or "End of the research study"):_____If an expiration date is not chosen, this authorization will cease to be valid 90 days from the date of signature.

_____    2 - 28 - 07
Signature of Patient or Patient Representative    Date

_____ _on CCA_
Printed Name of Patient's Representative (if applicable)

_____
Representative's Relationship to Patient (if applicable)

**LEE COUNTY SHERIFF'S OFFICE**

**PATIENT AUTHORIZATION FOR USE AND/OR DISCLOSURE OF PROTECTED HEALTH INFORMATION**

**PATIENT INFORMATION**

PATIENT NAME: _Hallgui Slaughter, Jam_

SOCIAL SECURITY NO. _234 - 66 - 6913_

DATE OF BIRTH _10/6/63_

# NOTES

NAME *Slaughter, James*   SS# *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*

DOB: *10/6/63*   AGE: *43*   SEX: *M*   RACE *B*

DRUG ALLERGIES: *Ø*   TETNUS: _____

NATURE OF PROBLEM OR REQUEST: *C/o Rt hand Ø*
*Better after Surg c̄ Dr. Hillyer new*
*Xray*

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT:

2/28/07    **Lee County Detention Center**    **Slaughter, James**    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

**Assessment:** This 43 y/o black male says that he may have done something more to his right hand. He's not sure what he's done but now "it's not good for anything but pain". On exam the 5th metacarpal is without tenderness. There is some callous around the 5th metacarpal phalangeal joint. The 5th digit is deviated away from and rotated away from the other fingers. When he makes a fist that finger is up over the top of the 4th & 3rd fingers. There is no redness or warmth. There is nothing that looks acute about it.

**Impression:** Status post right hand injury.

**Plan:** We'll have him go back to Dr. Hillyer for follow up.

PLAN: *touch to Dr. Younger for re-evaluation*   *appt 3/14/07 @ 3:20 pm*

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE *M* DATE *2/28/07* TIME *10:19*

JOHN H MCFARLAND MD
AM8104894
AL 11404

1

Lee County Detention Cen'
# INMATE REQUEST SLIP

| | **LOCATION** |
| --- | --- |

Name _JAMES Slaughter_ Date _____

☐ Telephone Call    ☑ Doctor    ☐ Dentist    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☐ Other

Briefly Outline Your Request. <u>Give To Jailer</u>

_I would like To Recieve 7 days of medication For my Cold and Sore Throat_

<u>Do Not Write Below This Line</u> - For Reply Only

_[handwritten reply] Decone Fort Cold tab X 7 days days & give all witting eyes drop Congestion_

_(Inmate Education)_

_Send a Change & Nurse_

Approved _____    Denied _____    Collect Call_____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To
Those The Request is Directed.

☐ ...    ☐ Chief Deputy    ☐ Sheriff

# MEDICATION SHEET - ADMINISTRATION RECORD

FEB 0 0 2007

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deconel Cold tabs ꞇ BiD x 7days 2/24/07 | 8:00 2:00 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

REORDER FROM INTEGRAL SOLUTIONS GROUP 800-235-0767

SPECIAL A-55

18297

| | 1 | 1 | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |
| | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 21 | 22 | 22 |
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |
| | 23 | 23 | 24 | 24 | 25 | 25 | 26 | 26 | 27 | 27 | 28 | 28 | 29 | 29 | 30 | 30 | 31 | 31 | | | | |
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |

| STARTING FOR | | | | | THROUGH | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Physician | M. Gtatawa | | | | Telephone No. | | | Medical Record No. | |
| Alt. Physician | | | | | Alt. Telephone | | | | |
| Allergies | | | | | Rehabilitative Potential | | | | |

| Diagnosis | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Medicaid Number | | Medicare Number | | Approved By Doctor: | Stewart | Title: | | Date: 2/24/07 |
| | | | | By: | | | | |
| | | | | D.O.B. | Sex | Room # 7-2 | Patient Code | Admission Date |
| RESIDENT | Slaughter, Ernest | | | | | | | |

Lee County Detention Cen.
# INMATE REQUEST SLIP

7 - 2

**LOCATION**

Name _James Slaughter_ Date _____

☐ Telephone Call    ☑ Doctor    ☐ Dentist    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☐ Other

Briefly Outline Your Request. <u>Give To Jailer</u>

_Hand_

---

<u>Do Not Write Below This Line</u> - For Reply Only

2/22/07 You are down
to See our m.) you
hid assessing ?? ??

Nurse Stewart

---

Approved _____ Denied _____ Collect Call _____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To
Those The Request is Directed

Lee County Detention Cente[r]

# INMATE REQUEST SL P

F-2

Name _Slaughter James_ Date _2/1?/07_ **LOCATION**

☐ Telephone Call    ☐ Doctor    ☐ Dentist    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☐ Other

Briefly Outline Your Request. <u>Give To Jailer</u>

_Wants another x-ray_
_of hand_

<u>Do Not Write Below This Line</u> - For Reply Only

_Dr Hollyer did not think another X-ray_
_was needed. I would be happy to see_
_Mr Slaughter again. Keep up the hand_
_exercise_

JOHN H MCFARLAND MD
AM8104894
AL 11404

Approved _____ Denied _____ Collect Call_____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To
Those The Request is Directed.

Lee County Detention Center

# INMATE REQUEST SLIP

E-1

Name _Slaughter, James_    Date _1/12/07_    LOCATION

☐ Telephone Call    ☐ Doctor    ☐ Dentist    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☐ Other

Briefly Outline Your Request.  Give To Jailer

requests something for indigestion

Do Not Write Below This Line - For Reply Only

1/12/07 O9DA Tums *given*

Approved _____ Denied _____ Collect Call _____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To

## LEE COUNTY SHERIFF'S DEPARTMENT
## RECORD OF MEDICAL EXAMINATION
### (FORM #11)

**PART 1:**     To be completed by Corrections Staff.    (Please print clearly)

1.  Inmate's name: _Slaughter, James_

2.  Date: _1/9/07_

3.  Time: _1000_

4.  Reason treatment was needed: _PT Post-op Surg. Fingr (pinky) / Dr. Kelly_

5.  Did Inmate request treatment? _Yes_ (If yes, place request form in Inmate's file if in writing)

6.  Was inmate transported from the jail? _Yes_

7.  If yes, to what location? _Dr. Kelly office + PT Dept_

8.  Was inmate treated at the jail? _Yes_

9.  Who examined the inmate? _Dr. McFarland_

10. Corrections Officer's name _Steve A. Welch_  Signature: _Lt. Welch_

**PART 2:**     To be completed by person examining inmate. (Please print clearly)

1.  Type of treatment/ examination: _Hand Evaluation_

2.  Prognosis: _Good_

3.  Is additional treatment needed? _NO_  If so, please specify if other than medication:

4.  Medication prescribed: _____

5.  Special instructions for administration: _ROM exercises, AAROM to strengthen intrinsics. Buddy taping into pronation + adduction to improve finger position for function & to protect finger from reinjury._

6.  Other special instructions (restrictions of diet, activity, work, etc; observation orders; other): _Avoid passive abduction._
    - _Wear buddy tape QD as instructed._
    - _Use foam ball for scar mobilization & desensitization_

    _____ MS OTR/LT
Health Care Provider (Please print and give title, Re: M.D., R.N., D.D.S., etc.)

_01/09/2007_               _____       _____
Date                        Time          Signature

Lee County Detention Center
# INMATE REQUEST SLIP

Name _Slaughter, James_ Date _1/2/07_ LOCATION _E-1_

☐ Telephone Call    ☐ Doctor    ☐ Dentist    ☐ Time Sheet

☐ Special Visit    ☑ Personal Problem    ☐ Other

Briefly Outline Your Request. _Give To Jailer_

Motrin for hand pain

Do Not Write Below This Line - For Reply Only

1/2/07 Motrin 400mg po given 0815

Approved _____ Denied _____ Collect Call_____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To
Those The Request is Directed

LEE COUNTY SHERIFF'S DEPARTMENT
RECORD OF MEDICAL EXAMINATION

PART 1    To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: _Slaughter, James_

2. Date of Examination: _12/20/06_

3. Time of Examination: _0945_

4. Reason treatment was needed: _Follow-up c̄ family_

5. Did Inmate request treatment? ✓ Yes ___ No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? ✓ Yes ___ No

7. If yes, to what location? _Dr. Hillyer's Office_

8. Was inmate treated at the jail? ✓ Yes ___ No

9. Who examined the inmate? _Dr. P. McFarland NS_

10. Corrections Staff Signature and title: _Stewart_

---

PART 2    To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _S/P Dislocated ® MCP Edema_

2. Prognosis: _Fair → Poor_

3. Is additional treatment needed? ✓ Yes ___ No If so, please specify if other than
medication: _Physical or Occupational
Hand Surgery_

4. Medication prescribed: _Ultram_
_PT Jan. 9th @ 1000 Same BCF_

5. Special instructions for administration: _____

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders;
other): _Minimal Use ® wrist_

_12/20/06_
Date          Time          Health Care Provider Signature/Title

# NOTES

NAME _Slaughter, James_ SS# _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_

DOB: _10/6/63_  AGE: _43_  SEX: _M_  RACE: _B_

DRUG ALLERGIES: _∅_ _____ TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _F/u from Dr. Hillyer_
_C/o Ultram not helping_

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT:

**12/13/06**    **Lee County Detention Center**    **James Slaughter**    **#234666973**

This 33 YOBM still hurts in his right hand after his surgery. Dr. Hillyer took the pin out and has him buddy-taped. He is encouraged to move his fingers but he doesn't want to move it. Dr. Hillyer is to follow up with an x-ray next week. He says the Ultram doesn't help.

**Physical Exam:** He is resistant to move his wrist, MCPJ, or even the fourth and fifth interphalangeal joints. There doesn't seem to be any signs of infection.

**Impression:** Post surgical changes.

**Plan:** I have encouraged him to move it. We can put him on some Naprosyn.

PLAN:

_Naprosyn 500 Bid x 20_
_f/u Dr. Hillyer_

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _John H McFarland MD_  TITLE _____  DATE _12-13-06_  TIME _0935_
AM810 4894   _1/3/07  Called + asked_
AL 11404



The
**Orthopaedic
Clinic**

# M107041                            James Slaughter                            12/20/06

## CLINIC CHART NOTE

**PROBLEM:** Status post dislocation of the right MCP joint.

**SUBJECTIVE:** James returns. He continues to have rotational deformity of the little finger with hypersensitivity of the little finger.

**PLAN:** Initiate therapy for range of motion type exercises. We would like to recheck him back in a month and see how he is progressing.

Ronald Hillyer, M.D.
To expedite delivery, faxed documents are sent prior to physician review.
RH/ds/2787987

# LEE COUNTY DETENTION CENTER
# MEDICAL CHARGE FORM
### (FORM #33)

INMATE NAME _Slaughter, James_

DATE OF BIRTH _____     RACE/SEX _____

SOCIAL SECURITY# _____     CELL ___E-1___

## ***SERVICES & FEES***

☐ SICK CALL                    $10.00
☐ DOCTOR VISIT                 $10.00
☐ DENTIST VISIT                $10.00
☑ PRESCRIPTION                 $3.00     Naprosyn
☐ FOLLOW-UP VISIT              N/A

TOTAL OF MEDICAL SERVICES     $ 3.00
RENDERED

# MEDICAL VERIFICATION SECTION

Authorized Nursing Staff Signature & Date ___B. Griffin, LPN  12/13/06___

Inmate Signature & Date ___Copay___

## Inmate Account Payable Clerk Signature & Date

_____

☐ PLEASE CHECK IF INMATE IS INDIGENT TO PAY THE ABOVE CHARGES.

☐ PLEASE CHECK IF INMATE IS ABLE TO PAY THE ABOVE CHARGES.

FORM: LCS-DC33 (9/02)



The
**Orthopaedic
Clinic**

# M107041                           James Slaughter                           12/06/06

## CLINIC CHART NOTE

**PROBLEM:** Status post dislocated MCP joint of the little finger.

**OBJECTIVE:** He continues to have some tenderness and tightness.

**PLAN:** Plan will be to remove the pin today and see him back in two weeks and start him
working with mobilization.

Ronald Hillyer, M.D.
To expedite delivery, faxed documents are sent prior to physician review.
RH/md/2734972

# LEE COUNTY SHERIFF'S DEPARTMENT
## RECORD OF MEDICAL EXAMINATION

<u>PART 1</u>    To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: _Slaughter, James_

2. Date of Examination: _12/06/06_

3. Time of Examination: _1600_

4. Reason treatment was needed: _Follow-up c̄ pin_
_Surg._

5. Did Inmate request treatment? ✓ Yes ___ No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? ✓ Yes ___ No

7. If yes, to what location? _Dr. Hellyer Office_

8. Was inmate treated at the jail? ✓ Yes ___ No

9. Who examined the inmate? _Dr. John McFarland_

10. Corrections Staff Signature and title: _____

---

<u>PART 2</u>    To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _Pin Removal, Buddy tape 4 & 5 finger R hand_

2. Prognosis: _____

3. Is additional treatment needed? ✓ Yes ___ No If so, please specify if other than
medication: _Buddy tape 4th & 5th finger together_
_Encourage Movement of finger_

4. Medication prescribed: _Ultram 1 tab every 4-6 hrs for pain_
_Apt. 12/20/06 @ 0945_

5. Special instructions for administration: _Encourage Range of Motion_

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders;

other): _Return 2 wks_

_Dec. 6, 2006_    _4:10_                        _____
Date                Time                 Health Care Provider Signature/ Title

# MEDICATION SHEET - ADMINISTRATION RECORD

DEC 2006

P & L FORMS #3021 (for A03 print programs)

| Medications | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ultram 50 mg ī PO BID #24  12/1/06 | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Ultram 50 mg ī BID  12/6/06 #24 | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Naprosyn 500 mg ī PO BID #20  12/13/06 | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Ultram ī PO BID #24  12/20/06 | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | 1 | 1 | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | J.S. | SC | | | | .S |

| | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 21 | 22 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | refused | | | | | | | | | | | | | | | | | | | | | J.S. |
| PM | | | J.S. | SS | | | | | | | | | | | | | | | CP | | | |

| | 23 | 23 | 24 | 24 | 25 | 25 | 26 | 26 | 27 | 27 | 28 | 28 | 29 | 29 | 30 | 30 | 31 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | |
| PM | | | J.S. | | | | | | | | | | | | | | | |

Charting For _____ Through DEC 2006

Physician _____ 
Alt. Phys. McFarland Hillyer

Telephone No. _____
Alt. Telephone _____
Rehabilitative Potential _____

Medical Record No. _____

Allergies _____
Diagnosis _____

Admission Date _____

Medicaid Number _____   Medicare Number _____

Complete Entries Checked: By: _____   Title: LPN   Date: 12/1/06

Resident Slaughter James   Birth Date _____   Resident Code _____   Room No. F-1   Bed _____   Facility Code _____



The
**Orthopaedic**
**Clinic**

# M107041                                   James Slaughter                                   11/22/06

## CLINIC CHART NOTE

**PROBLEM:** Status post Kaplan dislocation.

**SUBJECTIVE:** The pin has migrated.

**PLAN:** The plan will be to him in a dorsal splint with cutout for his pin. Also write a prescription for some Ultram. See him back in two weeks and will plan on removing the pin at that point. We will get x-rays prior to pin removal.

Ronald Hillyer, M.D.
To expedite delivery, faxed documents are sent prior to physician review.
RH/sm/2698647

JEFF COUNTY SHERIFF'S DEPARTMENT
RECORD OF MEDICAL EXAMINATION

<u>PART 1</u>     To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: _Slaughter, James_

2. Date of Examination: _11/22/06_

3. Time of Examination: _0930_

4. Reason treatment was needed: _F/u c̄ Pinky Surg._

5. Did Inmate request treatment? ✓ Yes___ No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? ✓ Yes___ No

7. If yes, to what location? _Dr. Hillyer's Office_

8. Was inmate treated at the jail? ✓ Yes___ No

9. Who examined the inmate? _Dr. John McFarland MD_

10. Corrections Staff Signature and title: _Stewart_

<u>PART 2</u>     To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _Post-op follow-up_

2. Prognosis: _Good_

3. Is additional treatment needed? ✓ Yes___ No If so, please specify if other than

    medication: _Ultram_

4. Medication prescribed: _Ultram 50-3_

    _Glucophage_

5. Special instructions for administration: _Ultram ↑ Any_

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders;

    other): _____

_2 Wks_
_appt._
_12/6/06_
_c̄ y/m_

Date _11/22/06_     Time _____     Health Care Provider Signature/ Title



The
# Orthopaedic Clinic

\# M107041                          James Slaughter                          11/13/06

## CLINIC CHART NOTE

**PROBLEM:** Status post chronic Caplan's, dislocation of MCP joint.

**SUBJECTIVE:** He continues to have persistent difficulty with the finger.

**OBJECTIVE:** Position is flexed.

**PLAN:** Plan will be to see him back in a week for pin removal. We removed his sutures today.


Ronald Hillyer, M.D.
To expedite delivery, faxed documents are sent prior to physician review.
RH/md/2671076

PART 1    To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: _Slaughter, James_

2. Date of Examination: _11 / 13 / 06_

3. Time of Examination: _10 4 5_

4. Reason treatment was needed: _7/u = Finger Sug_

5. Did Inmate request treatment? ✓ Yes ___ No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? ✓ Yes ___ No

7. If yes, to what location? _Dr Hillyer's Office_

8. Was inmate treated at the jail? ✓ Yes ___ No

9. Who examined the inmate? _Dr. J. McFarley_

10. Corrections Staff Signature and title: _Stewart Co /_

---

PART 2    To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _System Spit_

2. Prognosis: _____

3. Is additional treatment needed? ✓ Yes ___ No If so, please specify if other than

medication: _Ret. w.d. week for p/w Removal_

4. Medication prescribed: _11/22/06 @ 0941_

5. Special instructions for administration: _Warm gutter Splint_

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders;

other): _____

_11/13/06_    _____    _Rw Hillyer_
Date          Time        Health Care Provider Signature/ Title

# Bureau    Clinical Laboratories-Montgomery

PO BOX 244018, MONTGOMERY AL 36124-4018
Phone:(334) 260-3400  FAX:(334) 274-9800

Page:    1

Patient:

**Provider:**

TKD JUSTICE CENTER
PO BOX 2407
OPELIKA, AL, 36801-0000
(000) 000-0000,
UNKNOWN DOCTOR

| | | |
|---|---|---|
| Accession | **4045496** | ID: |
| Requisition #: | 4045496 | |
| Service Area: | | Collected: |
| CHR #: | | Received: |
| | | Reported: |

ID:    **1075890**

**Slaughter,James,Everett**

| | |
|---|---|
| D.O.B.: | **10/ 6/1963** |
| Sex: | **M    MALE** |
| Phone: | **(000) 000-0000** |
| SSN: | **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** |
| Status: | **Final Report** |

Collected:  11/15/2006 @
Received:  11/17/2006 @ 10:08 AM
Reported:  11/20/2006 @  3:29 PM

| Test Name | Result | Units | Normal Range | Notes |
|---|---|---|---|---|

*Serology Results*

VDRL, STS Qualitative        Non-Reactive

| | | | | | |
|---|---|---|---|---|---|
| Date Printed: | 11/20/2006 | 3:29 PM  >> | PH - Panic High | > | AH - Abnormal High |
| Completed Between:11/20/2006 | - | 11/20/2006 << | PL - Panic Low | < | AL - Abnormal Low |

~   A  - Abnormal
δ    Delta Check Failed

*** Final Page ***
All Results Included

# EXHIBIT I
Part 2
## Plaintiff's Jail Medical Records

ALABAMA DEPARTMENT OF PUBLIC HEALTH
BUREAU OF CLINICAL LABORATORIES

| | | | |
|---|---|---|---|
| HIV SEROLOY | 86701 | | |
| WESTERN BLOT | 86689 | | |

I.D. NUMBER **917556**

*PLEASE USE A BLACK PEN*

**Patient's Last Name**                     **Patient's First Name**                     **MI**

**Address**
Slaughter, James Everett
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
10/06/1963     B/M

Apt.

**City**     GLE     **State**     **Zip**

**Phone**

**Counselor (Initials)**

**Date Collected** /1 / 1 / 3 1 / 5 6

**EIA**
Results: Indicated by Marked
- ● Negative
- ○ Not Done
- ○ Positive

**WESTERN BLOT**
- ○ Negative
- ○ Indeterminate
- ○ Positive
- ○ Not Done

| | RACE | | | | SEX | | DOB (mmddyyyy) |
|---|---|---|---|---|---|---|---|
| W | B | H | A | I | U | M | F |
| ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |

**ANALYST INITIALS**

**DATE REPORTED**  / 2 0 / 2 0 0 6

LEE COUNTY DETENTION CENTER

**Provider**     P.O. BOX 2407
**Address**     OPELIKA, AL 36803
**City**     **State**     **Zip**

**SITE CODE**     **CNTY**

- ☐ Birmingham     ☐ Mobile
- ☐ Decatur     ☑ Montgomery
- ☐ Dothan

**County Health Dept. CHR Number**

**Social Security Number**

**Has Patient Had a Previous Positive or Indeterminate Western Blot?**
- ● No     ○ Yes     ○ Unknown

**Medicaid Number**

**Provider  Number**

**Date** ☐☐ / ☐☐ / ☐☐☐☐

**PATIENT SHOULD HAVE A
TUBERCULIN SKIN TEST
IF HIV POSITIVE**

1997321024

**REPORT COPY**
Return to provider

ADPH-CL-109 / REV 01-01



The
**Orthopaedic**
**Clinic**

# M107041                          James Slaughter                          11/09/06

### CLINIC CHART NOTE

**PROBLEM:** Chronic dislocation of the MCP joint fifth finger.

**SUBJECTIVE:** Dr. Hillyer did an operation with reduction and pinning. He is here for followup.

**OBJECTIVE:** Wound looks good, no evidence of infection.

**IMAGING:** X-rays show the MCP joint in satisfactory position.

**ASSESSMENT:** Chronic dislocation of metacarpophalangeal.

**PLAN:** Redress. Return next week to see Dr. Hillyer.


James Whatley, Jr., M.D.
To expedite delivery, faxed documents are sent prior to physician review.
JW/dm/2663264

LEE COUNTY SHERIFF'S DEPARTMENT
RECORD OF MEDICAL EXAMINATION

<u>PART 1</u>   To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: _Slaughter, James_

2. Date of Examination: _11/9/06_

3. Time of Examination: _1330_

4. Reason treatment was needed: _Follow-up c̄ Rt Finger Sug._

5. Did Inmate request treatment? ✓Yes___No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? ✓Yes___No

7. If yes, to what location? _Dr. Whatley_

8. Was inmate treated at the jail? ✓Yes___No

9. Who examined the inmate? _Dr. J. McFarland RN_

10. Corrections Staff Signature and title: _____

---

<u>PART 2</u>   To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: _Surgery follow up_

2. Prognosis: _Fair_

3. Is additional treatment needed? ✓Yes___No If so, please specify if other than

medication: _____

_____

4. Medication prescribed: _____

_____

5. Special instructions for administration: _____

6. Other special instructions (restrictions of diet, activity, work, etc; observations orders;

other): _____

_11/9/06_ ___ _2:20PM_ ___ _MWhatley_
Date _____ Time _____ Health Care Provider Signature/ Title

**NOTES**

NAME _Slaughter, James_ SS# _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_

DOB: _10/6/63_ AGE: _42_ SEX: _M_ RACE _B_

DRUG ALLERGIES: _none_ TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _F/u after surg on Friday ; √ up_

---

**11/07/06    Lee County Detention Center    James Slaughter    #234666973**

This 42 YOBM had surgery on Friday, four days ago. He had to have his dressing changed yesterday because he got it wet in the shower. He says it is doing well.

**Physical Exam:** He feels a little bit tight in the pectoralis muscle and left thigh muscle. There is no point tenderness in any of those areas.

**Impression:** Post-op doing well.

**Plan:** Naprosyn 500 mg b.i.d. for five days. Follow up with orthopedics, Dr. Hillyer and Dr. Jim Whatley.

SUBJECTIVE: _temp._

OBJECTIVE: BP _98_ P _____ R _____ T _____ O2 _____

ASSESSMENT:

11/9/06 Surgery for chronic disloc ℗ 8ᵃᵇ
OCR wound clean — no infection
See Dr Hillyer next week    749-8303

_[signature]_

PLAN: Naprosyn 500 Bid × 5ᵈ
f/u c̄ Ortho · Dr Hillyer / DrJwum

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE _MD_ DATE _11-7-06_ TIME _1:19_

JOHN H McFARLAND MD
AM8104894
AL 11404

1

# NOTES

NAME _Slaughter, James_    SS# _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_

DOB: _10|6|63_    AGE: _42_    SEX: _M_    RACE _B_

DRUG ALLERGIES: _none_    TETNUS:

NATURE OF PROBLEM OR REQUEST: _Dressing to (R) hand_
_got wet in shower_

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT: Called Dr. Hillyer's office - left msg c̄ his nurse Barbara for dressing instructions. Took old bandages off. Re-applied xeroform dressing, 4x4 dry gauze + re-wrapped c̄ Ace wrap. Call recvd back p̄ change made from Barbara, "yes, this is fine." Make F/U Apt for thurs or Friday. msg left c̄ Apt clerk "Nicky" for call back.

PLAN: Δ'd dressing as needed. May shower + Δ dressing again later c̄ only dry gauze. Awaiting call back. Will have dressing Δ's set up for later

REFER TO: _PA/PHYSICIAN_  MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE ( LPN )  DATE 11/6/06 TIME 2:38pm

Thurs Dr. Whatley @ 1:30pm Apt _____

# NOTES

NAME _Slaughter, James_   SS# _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_

DOB: _10/6/63_   AGE: _42_   SEX: _M_   RACE: _B_

DRUG ALLERGIES: _Ø_ _____ TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _Discharge instruction_

_& V dys._

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT: _Went over all Discharge instructions & V dys on R Leg it is, dry & intact good Capillary refill I/m Leg Ø C/o tel. Lortab well_

PLAN: _Boy given per own dry dres Show under stoop instruct ____ Remain in E-1 Medical Cell Call mon / Tue for follow up Crpt._

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE _Y_ DATE _11/11/06_ TIME _10 00_

_11/6/06_
_F/u Apt made for Monday 11/13/06 @ 10⁴⁰ Am c Dr. Hillyer @ ortho Clin_

## East Alabama Medical Center

2000 Pepperell Parkway
Opelika, Alabama 36801

**SLAUGHTER, JAMES E**
MRN:         0000862537
Financial #:  0629800407
DOB:         10/6/1963  Age:  43 years  Sex: Male

Admit Date/Time:     11/3/2006 8:29:00 AM
Discharge Date/Time: 11/3/2006 11:59:00 PM
Location:            OS
Patient Type:        OPS
Chart Copy to DR:    **Hillyer MD, Ronald W**

# Operative Report

Operative Report
PATIENT NAME:  Slaughter, James E

**DATE OF PROCEDURE:** 11/03/2006

**OPERATIVE PROCEDURE:** Open reduction internal fixation right fifth finger.

**SURGEON:**  Dr. Ronald Hillyer.

**FIRST ASSISTANT:** Scott Benson, PA-C

**FIRST ASSISTANT TIME IN:**   10:06

**FIRST ASSISTANT TIME OUT:**      10:29

**FIRST ASSISTANT OPERATIVE DUTIES AND RESPONSIBILITIES:** The patient was brought to the operating room, after adequate anesthesia was induced, a tourniquet was placed on the right upper extremity. The right arm was prepped in a sterile fashion by the circulating nurse. Sterile drapes were then applied. An Esmarch was used to exsanguinate the arm and tourniquet pressure was elevated to 250. Fluoroscopy was then brought in and under the guidance of fluoroscopy reduction of the right fifth finger fracture was checked for alignment. A 4.5 guide pin was placed distally to proximally across the fracture site. When adequate reduction had been obtained as examined under fluoroscopy the pin was out. Pin ball was placed on the tip of the pin. The patient was placed in a sterile dressing and a short arm gutter cast. Tourniquet pressure was deflated and the patient was returned to the hospital stretcher in stable condition.

Dictated by: Scott Benson, PA-C

Job 000003514

DP:    Ronald W Hillyer, MD
TR:    sgn
DD:    11/16/2006 3:28 P
DT:    11/16/2006 3:58 P

MRN:         0000862537
Financial #: 0629800407
**SLAUGHTER, JAMES E**

# East Alabama Medical Center

      823367
Doc:    000003514
Job#:
cc:    Scott Benson

Electronically Signed By: Ronald W Hillyer
          On 11/17/06 10:53

DD: 11/16/06   TD: 15:28

CC: MORRIS SCOTT BENSON

MRN:    0000862537
Financial #: 0629800407
      **SLAUGHTER, JAMES E**

# East Alabama Medical Center

2000 Pepperell Parkway
Opelika, Alabama 36801

**SLAUGHTER, JAMES E**
MRN:          0000862537
Financial #:   0629800407
DOB:          10/6/1963  Age:   43 years  Sex: Male

Admit Date/Time:     11/3/2006 8:29:00 AM
Discharge Date/Time: 11/3/2006 11:59:00 PM
Location:            OS
Patient Type:        OPS
Chart Copy to DR:    Hillyer MD, Ronald W

## Operative Report

Operative Report

| | |
|---|---|
| **PATIENT NAME:** | Slaughter, James E |
| **DATE OF OPERATION:** | 11/03/2006. |
| **PREOPERATIVE DIAGNOSIS:** | Chronic dislocation metacarpophalangeal joint right little finger. |
| **POSTOPERATIVE DIAGNOSIS:** | Chronic dislocation metacarpophalangeal joint right little finger. |
| **PROCEDURE PERFORMED:** | Open reduction internal fixation dislocated metacarpophalangeal |

joint right little finger.

| | |
|---|---|
| **SURGEON:** | Ronald W. Hillyer, MD. |
| **ASSISTANT:** | Scott Benson, PA |

**SUMMARY:**                The patient was placed on the operating table in the supine
position. General anesthesia was performed by Anesthesia. The right arm was prepped and draped in a sterile
manner. The tourniquet was applied to the right proximal arm. After attempts at closed reduction was
unsuccessful it was felt that this was a Kaplan's dislocation. A volar incision was made going through the skin
and subcutaneous tissue. The flexor tendons were noted to be on top of the metatarsal heads. These were
retracted. The capsule was released in order to get the proximal phalanx articulating with the metacarpal.
After this was accomplished a pin was placed into flexion and secured using one 0.062 pin. The wound was
irrigated. The skin was closed with 4-0 Nylon. The patient tolerated the procedure well and left the operating
room in good condition.

JOB ID NUMBER:   597842

DP:    Ronald W Hillyer, MD
TR:    bjb
DD:    11/03/2006 10:35 A
DT:    11/03/2006 10:59 A

Print Date/Time: 11/10/2006 7:11 PM
Page 1 of 2

MRN:         0000862537
Financial #: 0629800407
**SLAUGHTER, JAMES E**

# East Alabama Medical Center

818769
Doc:    000597842
Job#:
cc:

Electronically Signed By:  Ronald W Hillyer
                On 11/10/06 10:22

DD: 11/03/06  TD: 10:35

MRN:       0000862537
Financial #: 0629800407
            **SLAUGHTER, JAMES E**

PART 1     To be completed by Corrections Staff (please print clearly)

1. Inmate's Name: Slaughter, James

2. Date of Examination: 11/3/06

3. Time of Examination: 8:15 AM

4. Reason treatment was needed: Surgery to (R) ring finger (5th)

5. Did Inmate request treatment? ✓ Yes ___ No (If yes, place request form in Inmate's file)

6. Was inmate transported from the jail? ✓ Yes ___ No

7. If yes, to what location? CAMC Surg dept Dr. Hilyer

8. Was inmate treated at the jail? ✓ Yes ___ No

9. Who examined the inmate? Dr. McFarland

10. Corrections Staff Signature and title: Kelly Griffin LPN

---

PART 2     To be completed by person examining inmate (Please print clearly)

1. Type of treatment/examination: Surgery — ORIF MCP little

2. Prognosis: Generally - good (poor (R) Hd)

3. Is additional treatment needed? ✓ Yes ___ No If so, please specify if other than medication: Lortab 5 for pain Clinic # 4

4. Medication prescribed: Lortab 5

5. Special instructions for administration: Keep clean/dry/elevated

6. Other special instructions (restrictions of diet, activity, work, etc. observations orders; other): No use (R) Hd

Date 11/3/06     Time ___     Health Care Provider Signature/ Title

# MEDICATION SHEET - ADMINISTRATION RECORD

November 2006

P & L FORMS #3021 (for A03 print programs)

| Medications | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lortab 5/500 mg i PO BID #24 11/3/06 | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Naprosyn 500 mg #10 i BID 11/7/06 | 0800 | | | | | | | | | | | | Complete | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Tramadol 50 mg #24 i BID 11/22/06 | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | 1 | 1 | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | J.S. | | | | | | J.S. | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | |

| | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 21 | 22 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | DT | | | | | | | | | | | | | | | | | |

| | 23 | 23 | 24 | 24 | 25 | 25 | 26 | 26 | 27 | 27 | 28 | 28 | 29 | 29 | 30 | 30 | 31 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | S.S. | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | |

Charting For ____ Through NOV 2006

Physician Dr. Hillyer

Alt. Phys.

Telephone No.

Alt. Telephone

Medical Record No.

Allergies:

Rehabilitative Potential

Diagnosis

Admission Date

Medicaid Number | Medicare Number | Complete Entries Checked: By: ____ Title: ____ Date: 11/3/06

Resident Slaughter James | Birth Date | Resident Code | Room No. | Bed | Facility Code

# NOTES

NAME _Slaughter, James_    SS# _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_

DOB: _10/6/63_    AGE: _42_    SEX: _M_    RACE _B_

DRUG ALLERGIES: _∅_    TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _Call from Hospital_
_Nurse wants medical History._

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT: Went over Medical History for surgury next week. Instructions = for him to take a shower the night before + morning of with Hibacleanse scrub ® hand c̄ Hibacleanse. No deoderant under ® arm

PLAN:

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE _LPN_ DATE _10/30/05_ TIME _10ᵒᵒA_

11/2/05 call from Hosp - surg dept - Be @ Hosp @.
08ᵒᵒ Am Friday _____

## EAST ALABAMA MEDICAL CENTER
### Discharge Instructions Following General Orthopedic Surgery

1. You may have some nausea or vomiting a few times after leaving the hospital. We recommend you resume eating slowly with mild, bland food. Report any persistant nausea and vomiting to your doctor.

2. You may increase your activity as tolerated.

3. Keep your dressings dry for———————hours. *and clean.*

4. ~~You may remove the dressings in————————hours and take a shower.~~

5. Please keep arm/hand or leg/foot elevated above heart level for first 24 hours after surgery.

6. Wiggle fingers or toes on the surgical site for 1 minute at least 10 times a day for the first 24 hours after surgery.

7. You may apply ice bag to your surgery site for the first 24 hours.

8. No heavy lifting.

9. Call your surgeon for any excessive drainage/bleeding, foul smelling drainage, nausea or vomiting, severe pain not relieved by your pain medication, or fever greater than 101°.

10. Return to work according to your surgeon's instructions.

11. Follow any verbal instructions given to you or your responsible person.

12. You may experience occasional dizziness or become drowsy for the 24 hours after you have received medication or anesthesia. Therefore, you **should not drive** or drink alcoholic beverages.

13. You may feel tired, have a sore throat, neck discomfort, or minor muscle stiffness. Please rest and call your surgeon if you have any questions.

14. If you receive general anesthesia, it is important that you cough and deep breathe at least every two (2) hours while awake for two (2) days. *Lortab 1 at 11:45*

**I have received written instructions and verbalized understanding of the discharge instructions for my surgical procedure.**

Patient: _Marie Registration_        Date: _10/26/06_

Patient given a copy ☑
Nurse Educator: _Tammy Moran, LPN_

Responsible Driver: _____        Date: _____

Discharge Nurse: _____

Surgeon's Name and Phone #: _____

Appointment Date and Time: _____

06298-00407          862537
SLAUGHTER,JAMES E
LOC:OS  DOB:10/06/63   M43Y
HILLYER,RONALD W
Adm:11/03/06          36830

EDU0030-0902-1-1

# NOTES

NAME *Slaughter, James*     SS# *234 66 6973*

DOB: *10/6/63*     AGE: *42*     SEX: *M*     RACE *B*

DRUG ALLERGIES: *Ø*     TETNUS: _____

NATURE OF PROBLEM OR REQUEST: *F/u c̄ finger*

_____

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT:

**10/25/06     Lee County Detention Center     James Slaughter     #234666973**
This 42 YOBM is here for follow up of his right middle finger infection.
**Physical Exam:** It is all clear on examination.
**Impression:** Healed paronychia right middle finger.
**Plan:** We will have him reschedule his right fifth metacarpal surgery. Recheck prn.

PLAN:

*ok for surgery*

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE *MD* DATE *10/25/06* TIME *0931*

JOHN H MCFARLAND MD
AMB 104894
AL 11404

*10/25/06  surgery scheduled for  11/3/06 @ EAMC c̄ Dr Hillyer*

**ALABAMA DEPARTMENT OF PUBLIC HEALTH**
MANTOUX TUBERCULIN SKIN TEST REPORT

Patient Name: Slaughter, James Ever
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
Address: – 10/06/1963                        B/M

Sex: ☑ M                                     County: Lee
Hispanic: ☐ Yes ☐ No                         Social Security No: _____
                                             Phone No: _____
                                             Birth Date: _____
Reason Tested:                               ☐ PI ☐ O    Month    Day    Year
☐ Health Care Worker                         Specify
☐ Medical Risk            ☐ Student
☐ Shelter                 ☐ Occupational                 ☐ Homeless
                          ☐ Foreign Born                 ☑ Jail/Prison
Contact: ☐ Yes    ☐ No                                   ☐ Not at Risk
                          Facility Name   LC30
**Risk Factor Category (Check One)** A ☐    B ☑ C ☐    (See Reverse Side)

Date Tested: 10/18/06        Date Read: 10/21/06
         Month  Day  Year              Month  Day  Year    Result ___ mm
(For Two-Step Method Only)
Second Test Date: _____      Date Read: _____
         Month Day Year                Month  Day  Year    Result: ___ mm

Race codes: W-White; B-Black; AI-American Indian; A-Asian; AN-Alaskan Native;
H/PI-Hawaiian/Pacific Islander; O-Other
All results must be recorded in millimeters (mm) of induration.

ADPH-TB-26/Rev. 2-06 (BS)

## NOTES

NAME _Slaughter, Jam,_     SS# _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_

DOB: _10/6/63_     AGE: _42_     SEX: _M_     RACE _B_

DRUG ALLERGIES: _Ø_     TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _F/u c s-cal._

_R finger_

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT:

_14_

**10/17/06     Lee County Detention Center     James Slaughter     #234666973**
This 42 YOBM is here for follow up of his infected right middle finger.
**Physical Exam:** It looks good, it just hasn't healed over. There is no odor or drainage.
**Impression:** Healing paronychia right middle finger.
**Plan:** We will give him another week before scheduling his orthopedic surgery. I would like to see him next week again. He is to continue to wash it. He says it is still uncomfortable. It doesn't look like there isn't any active infection just hasn't healed over. Recheck next week.

_Will rcv next week O2 + schedule surgey for 1w - Informed Barbara By Ou mae_

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _T mo_     TITLE _MA_     DATE _12-17-06_     TIME _0925_
_McFarland_

1

# NOTES

NAME _Slaughter, James_    SS# _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_

DOB: _10/6/63_    AGE: _43_    SEX: _M_    RACE: _B_

DRUG ALLERGIES: _0_    TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _fell 5hts passed_
_out_

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _120/?_ P _80_ R _18_ T _____ O2 _96%_

ASSESSMENT: _fell per Sgt Tabb I'm pass_
_out didn't hit his head didn't lose consciousness_
_V/S Stable_

_See Sgt Tabb rport_

PLAN: _Say you hurt a disc of MP in_
_acute pain from IAD of injury_

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE _LPN_ DATE _10/11/6_ TIME _1430_

1

# NOTES

NAME _Slaughter, James_    SS# _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_

DOB: _10/6/63_    AGE: _43_    SEX: _M_    RACE _B_

DRUG ALLERGIES: _Ø_    TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _C/o Middle finger_

_infection Pos. Surg. Thru / Fri_

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

**10/11/06    Lee County Detention Center    James Slaughter    #234666973**

This 42 YOBM was seen by Dr. Shields at the Orthopedic Clinic and referred to Dr. Hillyer (hand surgeon). Unfortunately, he has developed an infection of his right middle finger in the two days since he saw the orthopedic doctor.

**Physical Exam:** Today he has an impressive paronychia around the base of the right middle fingernail.

**Impression:** Paronychia right middle finger.

**Plan:** I cleaned it with isopropyl alcohol and incise and drained it using an 18-guage needle as mini-scalpel. There was a foul E. coli smell; gray-green pus came out under pressure. I deroofed the abscess and dressed him in a gauze dressing. He is to change it and wash it with soap and water three times a day. The nurse will check him in a couple of days. I will recheck him in a week. He is not able to have surgery until this is all cleared up. I will put him on Septra DS b.i.d. for one week and Naprosyn 500 mg b.i.d. for five days.

PLAN: _I & D Paronychia (R) middle finger  (E. coli smell)_
_Septra DS BID x 1wk_
_Naprosyn 500 BID x 5d_
_no Surgery x 1wk - rech by me_

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____    TITLE _MD_    DATE _10/11/06_    TIME _0932_

JOHN H McFARLAND MD    _Called Dr. Hillyer Office @_
AM8104894    _749-8303  Message to Barbara, then_
AL11404    _Help Surg you can now inject..._

Lee County Detention Center

# INMATE REQUEST SLIP

F-2
**LOCATION**

Name _James Slaughter_    Date _10-10-06_

☐ Telephone Call    ☑ Doctor    ☐ Dentist    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☐ Other

---

Briefly Outline Your Request.  Give To Jailer

---

To Medical:
Please Nurse, I James
am in very badly Pain in my hand.
The pain is slowly traveling up my
arm, its swelling more and more.
Its hurting so bad I don't know what
to do. Please nurse, give me medical assitant
as soon as possible,
Please nurse. James
Slaughter

Do Not Write Below This Line - For Reply Only

10/10/06 ti Motrin given
Keep your hand elevated,
ice glove given

Nurse Stewart

Approved _____ Denied _____ Collect Call _____



The Orthopaedic Clinic

# M107041                    James Slaughter                        10/09/06

## CLINIC CHART NOTE

P:  Chronic dislocation MCP joint right hand.

S:  James had a dislocation in the county jail.  Was supposed to come to the clinic for follow-up; he did not come to the clinic.  This happened earlier in the year.

X-rays taken show a chronically displaced MCP joint.

P:  Our plan will be to do an open reduction, as closed reduction was unsuccessful.  We will plan to do this on Friday.


Ronald Hillyer, M.D.
To expedite delivery, faxed documents are sent prior to physician review.
RH/lp/2575225

# LEE COUNTY SHERIFF'S DEPARTMENT
## RECORD OF MEDICAL EXAMINATION
### (FORM #11)

A D I

## PART 1:    To be completed by Corrections Staff.   (Please print clearly)

1. Inmate's name: _Slaughter, James_

2. Date: _10/9/06_

3. Time: _0815_

4. Reason treatment was needed: ✔ _Lt hand  I/m got out_
_+ returned 2 wks later nothing Dr._

5. Did Inmate request treatment? _yes_ (If yes, place request form in Inmate's file if in writing)

6. Was inmate transported from the jail? _yes_

7. If yes, to what location? _Dr Shields Office Bld 19_

8. Was inmate treated at the jail? _yes_

9. Who examined the inmate? _Dr. Polk  McFarland rn_

10. Corrections Officer's name: _____ Signature: _____

## PART 2:    To be completed by person examining inmate. (Please print clearly)

1. Type of treatment/ examination: _____

2. Prognosis: _____

3. Is additional treatment needed? _____ If so, please specify if other than medication:
_____

4. Medication prescribed: _____

5. Special instructions for administration: _____

6. Other special instructions (restrictions of diet, activity, work, etc; observation orders; other):
_To have long arm Dr Kelly,_
_for Office 9/23_

_____
Health Care Provider (Please print and give title, Re. M.D., R.N., D.D.S., etc.)

_____   _____   _____
Date         Time         Signature

NOTES

NAME *Slaughter, James*    SS# 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

DOB: 10/6/63    AGE: 42    SEX: M    RACE: B

DRUG ALLERGIES: Ø    TETNUS: _____

NATURE OF PROBLEM OR REQUEST: C/o *Hand Ø Better*
*made not help*

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT:

**10/03/06    Lee County Detention Center    James Slaughter    #234666973**
This 42 YOBM still has problems with that right hand, it is uncomfortable most of the time. His
injury date was 08/12/06, about six weeks ago. He got discharged from the jail and didn't keep
his appointment with Dr. Shields. We will try to remake that appointment.

PLAN: *Will arrange for appt c Dr. Shields @*
*Ortho Clinic mfl Ant 1/2 #18*

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____    TITLE MD    DATE 10-3-06    TIME 1100
JOHN H McFARLAND MD
AMB104894
AL 11404

Lee County Detention Center

# INMATE REQUEST SLIP

*F-2*
**LOCATION**

Name _James Slaughter_     Date _10/9/06_

☐ Telephone Call     ☑ Doctor     ☐ Dentist     ☐ Time Sheet

☐ Special Visit     ☐ Personal Problem     ☐ Other

Briefly Outline Your Request.  <u>Give To Jailer</u>

My hANd is swelling with Fluid And it's hurting Really BAd I would like to get something FoR the PAiN And have the FiNgER DRAiNd

THANks FoR YouR Time!

<u>Do Not Write Below This Line</u> - For Reply Only

10/10/06 You Saw The OrthO m Yesterday you Are down To See m in Am + Makin quene

_Nurse Stewart_

Approved _____     Denied _____     Collect Call _____

# MEDICATION SHEET - ADMINISTRATION RECORD

*Oct. 2006*

P & L FORMS #3021 (for A03 print programs)

| Medications | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Naprosyn 500mg #30 10/01/06 T Bid | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Septra DS #14 T Bid 10/11/06 | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Naprosyn 500mg #10 T Bid 10/11/06 | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | 1 | 1 | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5. | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |

| | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 21 | 22 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | J.S. | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |

| | 23 | 23 | 24 | 24 | 25 | 25 | 26 | 26 | 27 | 27 | 28 | 28 | 29 | 29 | 30 | 30 | 31 | 31 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | |

| Charting For | | Through | |
|---|---|---|---|
| Physician | DR. McFarland | Telephone No. | Medical Record No. |
| Alt. Phys. | | Alt. Telephone | |
| Allergies | | Rehabilitative Potential | |
| Diagnosis | | | Admission Date |

| Medicaid Number | Medicare Number | Complete Entries Checked: By: L. Stewart / Scroggins    Title: L.P.N.    Date: 10/01/06 |
|---|---|---|
| Resident | Slaughter, James | Birth Date    Resident Code    Room No. F-H    Bed    Facility Code |

# NOTES

NAME *Slaughter, James*    SS# 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

DOB: 10/06/63    AGE: 42    SEX: M    RACE: B

DRUG ALLERGIES: Ø    TETNUS: _____

NATURE OF PROBLEM OR REQUEST: *got out for 2 wks*
*Ø Tx To finger Back request*
*Tx*

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT:

---

09/19/06    **Lee County Detention Center**    **James Slaughter**    **#234666973**
This 42 YOBM has had a dislocation of the right fifth metacarpophalangeal joint. It happened when he was a hit by a bat more than a month ago. He was to have an orthopedic appointment but he was released from here before that could happen and he didn't follow up himself. He was out for two or three weeks, now he is back. It has been more than a month since his injury.
**Physical Exam:** He has an obvious dislocation. We used Marcaine 0.25% to do a digital block. Even after the digital block I am unable to reduce it. It apparently has too much scarring. He has good flexion and extension allowing for decreased distance of his flexor tendons. It was uncomfortable for him to be examined and for the attempted reduction.
**Impression:** _____
**Plan:** I will put him on some Naprosyn 500 mg b.i.d. #30. He knows to follow up with an orthopedic doctor on his release from the jail. Recheck prn.

PLAN: _____
*digital block .25%*
*Naprosyn 500 mg BID #30*

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE MD DATE 9-19-06 TIME 0916
*(M (Fazikin))*

# MEDICATION SHEET - ADMINISTRATION RECORD    Sept. 2006

P & L FORMS #3021 (for A03 print programs)

| Medications | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Naprosyn 500 #30 T.i.d. 9/19/06 | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | 1 | 1 | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |

| | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 21 | 22 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |

| | 23 | 23 | 24 | 24 | 25 | 25 | 26 | 26 | 27 | 27 | 28 | 28 | 29 | 29 | 30 | 30 | 31 | 31 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | Refused | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | |

Charting For _____ Through _____

| Physician | Mc Farland | Telephone No. | | Medical Record No. |
|---|---|---|---|---|
| Alt. Phys. | | Alt. Telephone | | |
| Allergies | | Rehabilitative Potential | | |
| Diagnosis | | | | Admission Date |

| Medicaid Number | Medicare Number | Complete Entries Checked: By: | Steward | Title: PN | Date 9/19/06 |
|---|---|---|---|---|---|
| Resident | Slaughter, Ann | Birth Date | Resident Code | Room No. | Bed | Facility Code |

# NOTES

NAME *Slaughter, James*   SS# *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*

DOB: *10/06/63*   AGE: *43*   SEX: *M*   RACE: *B*

DRUG ALLERGIES: *Ø*   TETNUS: _____

NATURE OF PROBLEM OR REQUEST: *I/m out x 2 wks didn't see md about finger*

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 *99%*

ASSESSMENT: *I/m was in our jail 2 wks ago & refer to ortho clinic for Rt finger injury I/m got our refurral of appt. I/m did not keep it you he's returned to jail ō som c/o*

PLAN: *Will see our md fp our 3 wks old did nothing in it on our side our md will addres*

REFER TO: (PA/PHYSICIAN)   MENTAL HEALTH_____   DENTAL_____

SIGNATURE *Stewart*   TITLE *4*   DATE *09/13/06*   TIME _____

# LEE COUNTY SHERIFF'S DEPARTMENT
## RECORD OF MEDICAL EXAMINATION
### (FORM #11)

**PART 1:**          To be completed by Corrections Staff.   (Please print clearly)

1. Inmate's name: _Slaughter, James_

2. Date: _8/8/00_

3. Time: _10:30 AM_

4. Reason treatment was needed: _Complete posterior lateral dislocation of 5th metacarpel_

5. Did Inmate request treatment? _Yes_ (If yes, place request form in Inmate's file if in writing)

6. Was inmate transported from the jail? _Yes_

7. If yes, to what location? _Dr. Shields Ortho Clinic_

8. Was inmate treated at the jail? _Yes_

9. Who examined the inmate? _Dr. McFarland_

10. Corrections Officer's name: _____   Signature: _____

---

**PART 2:**          To be completed by person examining inmate. (Please print clearly)

1. Type of treatment/ examination: _____

2. Prognosis: _____

3. Is additional treatment needed? _____ If so, please specify if other than medication:

_8/18/6_

4. Medication prescribed: _____

5. Special instructions for administration: _I/m_

6. Other special instructions (restrictions of diet, activity, work, etc; observation orders; other):

_____

Health Care Provider (Please print and give title, Re. M.D., R.N., D.D.S., etc.)

Date _____   Time _____   Signature _____

**NOTES**

NAME _Slaughter, James_    SS# _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_

DOB: _10/06/63_    AGE: _42_    SEX: _M_    RACE _B_

DRUG ALLERGIES: _∅_    TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _____

_____

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

**HEALTH CARE DOCUMENTATION**

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT: report back from x-ray "complete posterior lateral dislocation of 5th metacarpel."

PLAN: called Dr. McFarland- ordered for Apt c̄ ortho Clinic

8/18/06 on arrival to work today I'm ___ ___ ortho-clinic ___

REFER TO: ____ (PA/PHYSICIAN)    MENTAL HEALTH ____    DENTAL ____

SIGNATURE ____    TITLE (LPN)    DATE 8/18/06 TIME 10⁰⁰AM

## SOUTHERN RADIOLOGY SERVICES, LLC
## X-RAY REPORT

| | | | |
|---|---|---|---|
| **DATE** | **LAST NAME** | **FIRST NAME** | **MI** |
| 8/16/2006 | SLAUGHTER | JAMES | |
| **D.O.B.** | **SEX** | **FACILITY** | |
| 10/6/1963 | | LEE COUNTY JAIL | |
| **ORDERING PHYSICIAN** | | **X-RAY NO.** | |
| MCFARLAND | | mt10377 | |

### RIGHT HAND, THREE VIEWS

**HISTORY:** Pain.

**FINDINGS:** There is complete posterolateral dislocation of the 5th metacarpophalangeal joint. No other fracture or subluxations are identified. Bone mineral density appears appropriate for age.

**IMPRESSION:** Complete posterolateral dislocation of the 5th metacarpophalangeal joint.

### ** DICTATED BUT NOT REVIEWED**

_____

John Waldo, M.D./pag

tt:     8/17/2006 9:08:59 AM
td:    8/16/2006 4:55:00 PM

# SOUTHERN RADIOLOGY SERVICES, LLC
# X-RAY REPORT

**DATE**          **LAST NAME**       **FIRST NAME**          MI
8/16/2006       SLAUGHTER          JAMES
**D.O.B.**         **SEX**                **FACILITY**
10/6/1963                              LEE COUNTY JAIL
**ORDERING PHYSICIAN**                   **X-RAY NO.**
MCFARLAND                              mt10377

## RIGHT HAND, THREE VIEWS

**HISTORY:** Pain.

**FINDINGS:** There is complete posterolateral dislocation of the 5th metacarpophalangeal joint. No other fracture or subluxations are identified. Bone mineral density appears appropriate for age.

**IMPRESSION:** Complete posterolateral dislocation of the 5th metacarpophalangeal joint.

## ** DICTATED BUT NOT REVIEWED**

_____

John Waldo, M.D./pag

tt:    8/17/2006 9:08:59 AM
td:    8/16/2006 4:55:00 PM

# SOUTHERN RADIOLOGY SERVICES, LLC

ALABAMA / MISSISSIPPI
1-800-845-8183

Mcnt-4

## PLEASE PRINT

PATIENT: Slaughter, James

| | |
|---|---|
| Last | First |

DOB: 10-6-63   SEX: (M) F   ROOM #: _____   CODE

FACILITY: Lee Co. Jail

PHONE: (334) 737-3591   FAX: (334) 737-3574

SS# 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

MEDICARE #: _____   CODE

MEDICAID #: _____   CODE

INSURANCE: _____   CODE

INSURANCE #: _____   PRE CERTIFICATION #

### RESPONSIBLE PARTY INFORMATION
(MUST BE COMPLETED FOR ALL PATIENTS)

NAME: _____   PHONE #: ( )

ADDRESS: ~~LEE COUNTY DETENTION CENTER~~
CITY: ~~P.O. BOX 2407~~   STATE: _____   ZIP: _____
~~OPELIKA, AL 36803~~

PATIENT SIGNATURE: _____

Patient's or Authorized Person's Signature. I authorized the release of any medical or other information necessary to process this claim. I request payment of government/insurance benefits be made to the provider performing services.

☐ Patient Unable to Sign

Check to Indicate Patient Status:
☐ Medicare Part A Patient (Skilled)
☐ 3rd Party (Non-Skilled)
☐ VA Patient
☐ Employee

## EXAMS REQUESTED: Please Mark Each Clearly
### X-RAY EXAMS

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 74000 | Abdomen, 1 View | | | 73520 | Hip, Min 2 Views w/Pelvis | L  R | 73590 | Tibia/Fibula, 2 Views | L  R |
| 73600 | Ankle, 2 Views (AP 7 LAT) | L  R | | 73510 | Hip, Comp Min 2 Views | L  R | 73100 | Wrist, 2 Views | L  R |
| 73610 | Ankle, Comp Min 3 Views | L  R | | 73060 | Humerus, Min 2 Views | L  R | 73110 | Wrist, Min 3 Views | L  R |
| 73650 | Calcaneus (Heel), 2 Views | L  R | | 73560 | Knee, 2 Views | L  R | | OTHER _____ | |
| 71010 | Chest, 1 View (AP) | | | 73562 | Knee, 3 Views (inc OBLQ) | L  R | | OTHER EXAMS | L  R |
| | | | | 70160 | Nasal Bones, Comp Min 3 Views | | | | |
| 71111 | Chest With Ribs, 4 Views | | | 72170 | Pelvis, 1 View | | | | |
| 73000 | Clavicle, Complete | L  R | | 71100 | Ribs, 2 Views | L  R | 93000 | EKG    Pacemaker: Y  N | |
| 73070 | ELbow, 2 Views | L  R | | 72220 | Sacrum/Coccyx, Min 2 Views | | 95819 | EEG | |
| 73080 | Elbow, Comp 3 Views | L  R | | 73030 | Shoulder, Min 2 Views | L  R | | | |
| 73550 | Femur, 2 Views | L  R | | 70210 | Sinuses, Less Than 3 Views | | | | |
| 73620 | Foot, 2 Views | L  R | | | | | | | |
| 73630 | Foot, Comp Min 3 Views | L  R | | 70250 | Skull, Less Than 4 Views | | | | |
| 73090 | Forearm, 2 Views | L  R | | 72040 | Spine, Cervical 2 Views | | | | |
| 73120 | Hand, 2 Views | L  (R) | | 72100 | Spine, Lumbosacral 2 Views | | | | |
| ✓ 73130 | Hand, Min 3 Views | L  (R) | | 72070 | Spine, Thoracic 2 Views | | | | |

## DIAGNOSIS/SYMPTOM(S): Please Mark ALL that apply

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 787.3 | Abdomen Distention (Flatulence) | | 496 | COPD, Chronic Obstructive Pulm. Dis. | | 560.9 | Obstruction, Intestinal |
| 787.5 | Abnormal Bowel Sounds | | 786.2 | Coughing | | | Pain in _____ |
| 413.0 | Angina | | | Dislocation of _____ | | 485 | Pneumonia, Confirmed |
| | Arthritis of _____ | | 780.4 | Dizziness | | 514 | Pneumonia, Probable |
| 429.2 | ASCVD, Arteriosclerotic cardiovas. Dis. | | 787.2 | Dysphagia (Difficulty Swallowing) | | 795.5 | Positive Mantoux, PPD |
| 427.31 | Atrial Fibrillation | | 782.3 | Edema (Swelling) | | 518.4 | Pulmonary Edema, NOS |
| 507.0 | Aspiration | | 492.0 | Emphysema | | 515 | Pulmonary Fibrosis |
| 427.89 | Bradycardia | | 780.6 | Febrile (Feverish) | | 786.7 | Rales in Chest |
| | Bruise of _____ | | ✓ | Possible Fracture of (R) Hand | | 786.09 | Shortness of Breath |
| 466.0 | Bronchitis, NOS | | 560.39 | Impaction | | 780.2 | Syncope & Collapse |
| | Carcinoma of _____ | | 518.3 | Infiltrate, Lung | | 785.0 | Tachycardia |
| 429.3 | Cardiomegaly | | 410.92 | Myocardial Infarction | | 011.90 | Tuberculosis |
| 786.50 | Chest Pain, Unspecified | | 787.01 | Nausea and Vomiting | | 519.8 | URI (Chronic) |
| 514 | Congestion, Chest | | | | | | OTHER _____ |
| 428.0 | Congestive Heart Failure | | | | | | |

PHYSICIAN'S SIGNATURE: _____

Because of physical psychological and/or age limitations, this patient would find it difficult to receive this/these procedure(s) at a fixed site. I certify that this/these procedure(s) is/are medically necessary for the proper treatment of this patient.

RADIOLOGIST: _____

PRELIMINARY REPORT:

NURSE'S SIGNATURE: _____

ORDERING PHYSICIAN: _____   CODE

PHONE #: (334) 737-3591

FAX: (334) 737-3574

X-RAY #: _____   TECH: KSt

DATE: 8-16-06   #VIEWS: 2

ARRIVE TIME: 10:45   Q0092 # 1

DEPART TIME: _____   # PTS SEEN 1

_____ AM

_____ PM

NOTES

NAME: _Slaughter, James_ SS# _23X - 66 - 6973_

DOB: _10/06/63_  AGE: _43_  SEX: _m_  RACE: _B_

DRUG ALLERGIES: _Ø_ TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _✓ Rt hand got hit_
_c̄ Ball Bat on Streets_

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE:        BP_____  P_____  R_____  T_____  O2_____

ASSESSMENT:


08/15/06    **Lee County Detention Center**    **James Slaughter**    **#234666973**
This 42 YOBM says he was "hit with a bat" on Saturday three days ago.
**Physical Exam:** His right hand looks more like a boxer's fracture with tenderness and deformity
of the fifth metacarpal. He has impressive clubbing that he says is the same as his grandfather.
**Impression:** _____.
**Plan:** We will see about making an x-ray of that right hand. He is encouraged to elevate it. He
can have Motrin or Tylenol prn. Recheck next week.


PLAN:

_x-ray ® hand —_
_elevate_
_motrin / tylenol prn / rc s next week_

REFER TO:_____ PA/PHYSICIAN_____ MENTAL HEALTH_____ DENTAL_____

SIGNATURE ~~JOHN H MCFARLAND MD~~ TITLE _MD_  DATE _8/15/06_ TIME _1007_
AM8104894
AL11404    _Appt ⟶ 1030am    8/18/06    Ortho Clinic_
_M. Shields    RGCW_

**NOTES**

NAME Slaughter, James    SS# 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

DOB: 10/6/63    AGE: 42    SEX: m    RACE B

DRUG ALLERGIES: Ø    TETNUS:

NATURE OF PROBLEM OR REQUEST: hit on (R) hand c̄
baseball bat - very swollen

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

HEALTH CARE DOCUMENTATION

SUBJECTIVE: to cell D-6 c̄ o/c. Aaron

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT: states he was hit w/ a baseball bat prior to incarceration numerous times to side (ulnar) of (R) hand. swelling noted. unable to bend or flex fingers. unable to make a fist.

PLAN: Ice pack, see M.D. in AM

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE LPN DATE 8/4/06 TIME 4:30 pm

BOOKING# - 060004318                                     STATUS  - IN JAIL
                                                         FACILITY- COUNTY JAIL

INMATE    - SLAUGHTER JAMES EVERETT
ALIAS     -                               DOB     - 10/06/1963  AGE:  43
ALIAS     -                               PLCE\BIR- TUSKEGEE                ST - AL
ADDRESS   - 964 HOLMES AVE                RACE    - B            SEX- M
CITY      - AUBURN              ST-AL      HEIGHT  - 5`11"
ZIP       - 36830                         WEIGHT  - 160
HOME PH   - 334 502 3066                  HAIR    - BLK
M. STATUS-                                EYES    - BRO
RELIGION  - BAPT                          COMPLEX -
GANG AFF  - N/A
SCARS/TAT- SCAR ON NOSE
ENEMIES   - N/A
REMARKS   -
------------------------------------------------------------------------------
SSN       - 234 66 6973                   SID     -
DLN ST    -      DLN-                      LOCID   - 32147


-- MORE --   F10=CURRENT HOUSING AGENCY  F12=INMATES CHARGES        ESC TO QUI

Case 3:07-cv-00366-MHT-TFM   Document 12-5   Filed 07/13/2007   Page 38 of 46

```
=============================================================================
BOOKING#  -  060005845                            FACILITY- COUNTY JAIL

INMATE    - SLAUGHTER JAMES EVERETT
ALIAS     -                          DOB      - 10/06/1963  AGE:  42
ALIAS     -                          PLCE\BIR- TUSKEGEE            ST - AL
ADDRESS   - 964 HOLMES AVE           RACE     - B        SEX- M
CITY      - AUBURN          ST-AL    HEIGHT   - 5`11"
ZIP       - 36830                    WEIGHT   - 160
HOME PH   - 334 502 3066             HAIR     - BLK
M. STATUS-                           EYES     - BRO
RELIGION - BAPT                      COMPLEX  -
GANG AFF - N/A
SCARS/TAT- SCAR ON NOSE
ENEMIES  - N/A
REMARKS  -
-----------------------------------------------------------------------------
SSN      - 234 66 6973               SID      -
DLN ST   -        DLN-               LOCID    - 32147


-- MORE --   F10=CURRENT HOUSING AGENCY  F12=INMATES CHARGES     ESC TO QUIT
```

# LEE COUNTY DETENTION CENTER
# MEDICAL CHARGE FORM
## (FORM #33)

INMATE NAME _Slaughter, James_

DATE OF BIRTH _____    RACE/SEX _____

SOCIAL SECURITY# _____    CELL _E. 1_

## ***SERVICES & FEES***

☐ SICK CALL                $10.00
☐ DOCTOR VISIT             $10.00
☐ DENTIST VISIT            $10.00
☒ PRESCRIPTION             $3.00   _Lorlab_
☒ FOLLOW-UP VISIT _Surgery_   N/A

TOTAL OF MEDICAL SERVICES      $ _3.00_
RENDERED

# MEDICAL VERIFICATION SECTION

Authorized Nursing Staff Signature & Date _K Wilson_   _11/3/06_

Inmate Signature & Date _copay_

## Inmate Account Payable Clerk Signature & Date

☐ PLEASE CHECK IF INMATE IS INDIGENT TO PAY THE ABOVE CHARGES.

☐ PLEASE CHECK IF INMATE IS ABLE TO PAY THE ABOVE CHARGES.

FORM: LCS-DC33 (9/02)

# LEE COUNTY DETENTION CENTER
# MEDICAL CHARGE FORM
### (FORM #33)

**INMATE NAME** _Slaughter, James_

**DATE OF BIRTH** _____    **RACE/SEX** _____

**SOCIAL SECURITY#** _____    **CELL** _7-y_

## ***SERVICES & FEES***

- ☐ SICK CALL                    $10.00
- ☑ DOCTOR VISIT                 $10.00
- ☐ DENTIST VISIT                $10.00
- ☑ PRESCRIPTION                 $3.00
- ☐ FOLLOW-UP VISIT              N/A

**TOTAL OF MEDICAL SERVICES**   $ _16.00_
**RENDERED**

# MEDICAL VERIFICATION SECTION

**Authorized Nursing Staff Signature & Date** _____ 10/11/06

**Inmate Signature & Date** _____

## Inmate Account Payable Clerk Signature & Date

_____

☐ PLEASE CHECK IF INMATE IS INDIGENT TO PAY THE ABOVE CHARGES.

☐ PLEASE CHECK IF INMATE IS ABLE TO PAY THE ABOVE CHARGES.

FORM: LCS-DC33 (9/02)

# LEE COUNTY DETENTION CENTER
# MEDICAL CHARGE FORM
## (FORM #33)

INMATE NAME _Slaughter, Jerm_

DATE OF BIRTH _____    RACE/SEX _____

SOCIAL SECURITY# _____    CELL _7- 4_

## ***SERVICES & FEES***

☐ SICK CALL                    $10.00
☑ DOCTOR VISIT                 $10.00
☐ DENTIST VISIT                $10.00
☑ PRESCRIPTION _(refurs?)_     $3.00
☐ FOLLOW-UP VISIT              N/A

TOTAL OF MEDICAL SERVICES      $ _13._
RENDERED

# MEDICAL VERIFICATION SECTION

Authorized Nursing Staff Signature & Date _____    _8/18/06_

Inmate Signature & Date _____

## Inmate Account Payable Clerk Signature & Date

_____

☐ PLEASE CHECK IF INMATE IS INDIGENT TO PAY THE ABOVE CHARGES.

☐ PLEASE CHECK IF INMATE IS ABLE TO PAY THE ABOVE CHARGES.

MEDICAL FILE

FORM: LCS-DC33 (9/02)

# LEE COUNTY DETENTION CENTER
# MEDICAL CHARGE FORM
### (FORM #33)

INMATE NAME _Slaughter, James_

DATE OF BIRTH _____    RACE/SEX _____

SOCIAL SECURITY#_____    CELL ___E-1___

## ***SERVICES & FEES***

- ☐ SICK CALL                 $10.00
- ☐ DOCTOR VISIT           $10.00
- ☐ DENTIST VISIT           $10.00
- ☑ PRESCRIPTION  _Noprosyn_  $3.00
- ☐ FOLLOW-UP VISIT      N/A

TOTAL OF MEDICAL SERVICES     $ _3 00_
RENDERED

# MEDICAL VERIFICATION SECTION

Authorized Nursing Staff Signature & Date _Stewart  11/7/06_

Inmate Signature & Date _____

## Inmate Account Payable Clerk Signature & Date

_____

☑ PLEASE CHECK IF INMATE IS INDIGENT TO PAY THE ABOVE CHARGES.

☐ PLEASE CHECK IF INMATE IS ABLE TO PAY THE ABOVE CHARGES.

FORM: LCS-DC33 (9/02)

# LEE COUNTY DETENTION CENTER
# MEDICAL CHARGE FORM
### (FORM #33)

INMATE NAME _Slaughter, James_

DATE OF BIRTH _____      RACE/SEX _____

SOCIAL SECURITY# _____      CELL _7-2_

## ***SERVICES & FEES***

☑ SICK CALL   _Cold, Inf_      $10.00
☐ DOCTOR VISIT  _X 7 days._      $10.00
☐ DENTIST VISIT  _n y to tone_      $10.00
☐ PRESCRIPTION      $3.00
☐ FOLLOW-UP VISIT      N/A

TOTAL OF MEDICAL SERVICES      $ _10.00_
RENDERED

---

# MEDICAL VERIFICATION SECTION

Authorized Nursing Staff Signature & Date _____  2/24/7

Inmate Signature & Date _____

## Inmate Account Payable Clerk Signature & Date

_____

☐ PLEASE CHECK IF INMATE IS INDIGENT TO PAY THE ABOVE CHARGES.

☐ PLEASE CHECK IF INMATE IS ABLE TO PAY THE ABOVE CHARGES.

# LEE COUNTY DETENTION CENTER
## MEDICAL CHARGE FORM
### (FORM #33)

**INMATE NAME** Slaughter, James

**DATE OF BIRTH** _____    **RACE/SEX** _____

**SOCIAL SECURITY#** _____    **CELL** F-2

## ***SERVICES & FEES***

- ☐ **SICK CALL**     $10.00
- ☒ **DOCTOR VISIT**     $10.00   Dr. Hillyer
- ☐ **DENTIST VISIT**     $10.00
- ☒ **PRESCRIPTION**     $3.00   ultram
- ☐ **FOLLOW-UP VISIT**     N/A

**TOTAL OF MEDICAL SERVICES RENDERED**   $ 13.00

---

# MEDICAL VERIFICATION SECTION

Authorized Nursing Staff Signature & Date _____ 3/2/07

Inmate Signature & Date _____

## Inmate Account Payable Clerk Signature & Date

_____

☐ **PLEASE CHECK IF INMATE IS INDIGENT TO PAY THE ABOVE CHARGES.**

☐ **PLEASE CHECK IF INMATE IS ABLE TO PAY THE ABOVE CHARGES.**

FORM: LCS-DC33 (9/02)

# MEDICATION SHEET - ADMINISTRATION RECORD



| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Ultram 50mg
i tab BID #24
3/21/07

|  | 1 | 1 | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| PM |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

|  | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 21 | 22 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| PM |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

|  | 23 | 23 | 24 | 24 | 25 | 25 | 26 | 26 | 27 | 27 | 28 | 28 | 29 | 29 | 30 | 30 | 31 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| PM |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

STARTING FOR _____ THROUGH _____ March 07

Physician: Hillyer

Telephone No.

R. Physician

Alt. Telephone

Medical Record No.

Allergies

Rehabilitative Potential

Diagnosis

Medicaid Number | Medicare Number | Approved By Doctor: By: | Title: LPN | Date: 3/21/07

RESIDENT: Slaughter, James | D.O.B. | Sex | Room # | Patient Code | Admission Date

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Ultram 50mg
ī PO BID #24
3/31/07   4/1/07

0800
2100

Complete

| | 1 | 1 | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |
| | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 21 | 22 | 22 |
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |
| | 23 | 23 | 24 | 24 | 25 | 25 | 26 | 26 | 27 | 27 | 28 | 28 | 29 | 29 | 30 | 30 | 31 | 31 | | | | |
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |

STARTING FOR                    THROUGH   April 07
Physician        Hillyer
Alt. Physician
Allergies

Telephone No.
Alt Telephone
Rehabilitative
Potential

Medical Record No.

Diagnosis

| Medicaid Number | Medicare Number | Approved By Doctor: By: | | Title: LPN | Date: 4/1/07 |
|---|---|---|---|---|---|

RESIDENT    Slaughter, James

D.O.B.        Sex    Room # R-2    Patient Code    Admission Date